**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

DEC 0 9 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| **ALBERT PULLEN  ET AL.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| | § | |
| **v.** | § | **C. A. NO. B-02-206** |
| | § | |
| **FARMERS GROUP, INC.,** | § | |
| **FARMERS UNDERWRITERS** | § | |
| **ASSOCIATION, FIRE UNDERWRITERS** | § | |
| **ASSOCIATION, FARMERS INSURANCE** | § | |
| **EXCHANGE, FIRE INSURANCE** | § | |
| **EXCHANGE, AND JOSE GUTIERREZ,** | § | |
| | § | |
| **Defendants.** | § | |

# OPPOSITION TO PLAINTIFFS' MOTION
## FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT

Of Counsel:
RODRIGUEZ, COLVIN & CHANEY, L.L.P.

<div style="margin-left:40%">

Eduardo Roberto Rodriguez
State Bar No. 17144000
Federal I.D. No. 1944
Robert Patrick Rodriguez
State Bar No. 24002861
Federal I.D. No. 22949
1201 East Van Buren
Brownsville, Texas 78520  and/or
P.O. Box 2155
Brownsville, Texas 78522
Telephone: 956.542.7441
Telecopier: 956.541.217

</div>

Of Counsel:
FULBRIGHT & JAWORSKI L.L.P.

Layne E. Kruse
State Bar No. 11742550
Federal I.D. No. 2383
Richard N. Carrell
State Bar No. 03871000
Federal I.D. No. 4473
Gerard G. Pecht
State Bar No. 15701800
Federal I.D. No. 4784
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: 713-651-5151
Telecopier: 713-651-5246

# TABLE OF CONTENTS

**Page**

I.      Summary of Argument ...................................................................................... 1

II.     Background ...................................................................................................... 2

    A.      Prior Pending Litigation ........................................................................ 2

    B.      The Pullens File Their Suit .................................................................... 5

III.    Argument and Authorities ................................................................................ 6

    A.      28 U.S.C. 1447(e) Governs Joinder of Additional Non-Diverse Defendants
            After Removal, Not Rule 15 ................................................................... 6

    B.      A Request for Amendment of a Pleading Under 28 U.S.C. § 1447(e) Must
            be Closely Scrutinized. .......................................................................... 7

    C.      Leave to Amend is not Appropriate Under Governing Fifth Circuit Law ............ 8

        1.      The primary purpose of the Pullens' proposed amendment is to
                destroy diversity jurisdiction ....................................................... 9

        2.      Plaintiffs failed to exercise the required diligence .................................. 11

        3.      Plaintiffs will suffer no prejudice ......................................................... 12

            a.      Plaintiffs' interests are otherwise protected ................................. 12

            b.      Plaintiffs lack standing. ............................................................ 12

            c.      Plaintiffs fail to meet the pleading standards for any claim
                    against new defendants ............................................................. 14

        4.      Equitable factors .............................................................................. 15

    D.      Summary ............................................................................................... 16

i

# TABLE OF AUTHORITIES

## CASES

*Alcantara v. Prudential Life Ins. Co. of American,*
    75 F. Supp. 2d 563 (E.D. Tex. 1999) ....................................................... 7-8, 12

*Bevels v. Am-State Ins. Co.,*
    100 F. Supp. 2d 1309 (M.D. Ala. 2000) ........................................................ 16

*In re Bridgestone/Firestone, Inc., ATX, ATX II,*
    129 F. Supp. 2d 1202 (S.D. Ind. 2001) ..................................................8, 10, 16

*Cavallini v. State Farm Mutual Auto Ins. Co.,*
    44 F.3d 256 (5th Cir. 1995) ......................................................................... 15

*Ehrhardt v. Electrical & Instrumentation Unlimited of La.,*
    137 F. Supp. 2d 765 (E.D. Tex. 2001) .................................................. 6-*passim*

*Frith v. Guardian Life Ins. Co. of Am.,*
    9 F. Supp. 2d 734 (S.D. Tex. 1998) .............................................................. 15

*Gladstone Realtors v. Village of Bellwood,*
    441 U.S. 91 (1979) ...................................................................................... 13

*Haas v. Pitsburgh Nat'l Bank,*
    526 F.2d 1083 (3d Cir. 1975) ...................................................................... 13

*Hensgens v. Deere & Co.,*
    833 F.2d at 1179, 1182 (5th Cir. 1987) ........................................................ 7-8

*Hernandez Castellanos v. Bridgestone Corp.,*
    215 F. Supp. 2d 862 (S.D. Tex. 2002) ............................................................ 7

*Jerido v. American General Life and Accident Co.,*
    127 F. Supp. 2d 1322 (M.D. Ala. 2001) .................................................8, 10, 16

*LeDuc v. Bujacke,*
    777 F. Supp. 10 (E.D. Mo. 1991) .................................................................. 11

*Lewis v. State Farm Lloyds,*
    205 F. Supp. 2d 706 (S.D. Tex. 2002) ..................................................... 7-8, 11

*McCaulley v. Purdue Pharma, L.P.,*
    172 F. Supp. 2d 803 (W.D. Va. 2001) ................................................ 8, *passim*

*Perry v. Hartford Ins. Co. of the Midwest,*
    196 F. Supp. 2d 447 (E.D. Tex. 2002) ............................................. 6, 8, 11-12

ii

*Ramos v. Patrician Equities Corp.*,
    765 F. Supp. 1196 (S.D.N.Y. 1991); ........................................................... 13

*Simon v. Eastern Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976) ....................................................................................... 14

*Smith v. Arkansas Louisiana Gas Co.*,
    157 F.R.D. 34 (E.D. Tex. 1994) ............................................................... 8, 12

*Templeton v. Nelloyd Lines*,
    901 F.2d 1273 (5th Cir. 1990) ...................................................................... 6

*U.S. ex rel. Russell v. EPIC Healthcare Management Group*,
    193 F.3d 304 (5th Cir. 1999) ...................................................................... 15

*Valley Forge Christian College v. American United for Separation of Church of State, Inc.*,
    454 U.S. 464 (1982) ..................................................................................... 13

*Warth v. Seldin*,
    422 U.S. 490 (1975) ..................................................................................... 13

*Williams v. WMX Technologies, Inc.*,
    112 F.3d 175 (5th Cir. 1997) ...................................................................... 15

## RULES & STATUTES

Fed. R. Civ. P. 9(b) ......................................................................................... 15

Fed. R. Civ. P. 15 ........................................................................................ 2, 6-7

Tex. Ins. Code Ann. art. 21.21 ...................................................................... 3-5

28 U.S.C. § 1447(e) ............................................................................. 2, 6-7, 16

United States District Court
Southern District of Texas
FILED

DEC 0 9 2002

Michael N. Milby
Clerk of Court

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| ALBERT PULLEN  ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| | § | |
| v. | § | C. A. NO. B-02-206 |
| | § | |
| FARMERS GROUP, INC., | § | |
| FARMERS UNDERWRITERS | § | |
| ASSOCIATION, FIRE UNDERWRITERS | § | |
| ASSOCIATION, FARMERS INSURANCE | § | |
| EXCHANGE, FIRE INSURANCE | § | |
| EXCHANGE, AND JOSE GUTIERREZ, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
## FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT

Defendants, Farmers Group, Inc., Farmers Underwriters Association, Fire Underwriters Association, Farmers Insurance Exchange, Fire Insurance Exchange and Jose Gutierrez (collectively "Defendants"), file this their Opposition to Plaintiffs' Motion for Leave to File Fourth Amended Complaint (the "Motion for Leave") (Dkt. No. 5).

### I. SUMMARY OF ARGUMENT

After filing three amended pleadings, named plaintiffs Albert and Zonia Pullen (the "Pullens") ask the Court to allow yet another amendment.  The purpose of this amendment is as obvious as it is improper – to thwart Defendants' invocation of the Court's removal jurisdiction. The Court has jurisdiction based on diversity of citizenship between the Pullens and the lawfully

joined Defendants.[1]  It is no mere coincidence that three of the defendants that the Pullens seek to add are non-diverse.

The proposed amendment cannot survive the close scrutiny that is required under the applicable legal rule, which is 28 U.S.C. § 1447(e), not Fed. R. Civ. P. 15, as the Pullens erroneously suggest.  Analyzed under that framework, it is apparent that the primary purpose of the amendment is to destroy jurisdiction and that the proposed amendment was not made diligently.  Moreover, the Pullens will suffer no prejudice from denial of their Motion for Leave, and the balance of the equities favors refusal of the amendment.  The Pullens' Motion for Leave should be denied.

## II. BACKGROUND

### A.    Prior Pending Litigation

A complete understanding of why the Pullens' Motion for Leave should be denied requires a brief description of the context in which the Pullens filed their suit, in particular, the prior pending suits that raised the same issues about credit scoring that the Pullens belatedly seek to raise in this suit.  The most of important of these suits is the one filed by the Attorney General of Texas, on behalf of the State of Texas and the Texas Commissioner of Insurance.[2]  In addition, three private lawsuits – one filed by Gilberto Villanueva, Jr., and the other two filed by Michael Paladino – also address the identical issues.

---

[1] In Defendants' Opposition to Motion to Remand, filed contemporaneously herewith, Defendants elaborate on the existence of diversity, which the Pullens only half-heartedly contest.  Defendants incorporate their Opposition to Motion to Remand for all purposes as if fully set forth herein.

[2] *State of Texas and The Texas Commissioner of Insurance v. Farmers Group, Inc., Farmers Underwriters Association, Fire Underwriters Association, Farmers Insurance Exchange, and Fire Insurance Exchange*, C.A. No. GV 202501, in the 261st Judicial District Court of Travis County, Texas.  Exhibit A to this Opposition is a true and correct copy of the State's Verified Petition and Application for Permanent Injunction.

The lawsuit filed by the State was instituted on August 5, 2002, and seeks, among other things, to recover for Texas insureds alleged overpayments of premiums due in part to credit scoring. The State alleges that Farmers improperly used and failed to disclose to Texas insureds a credit scoring system to determine premiums charged by the Exchanges.[3] The State claims violations of the TEX. INS. CODE art. 21.21-8 and 21.21 as well as Section 17.46 of the TEX. BUS. & COMM. CODE (the "DTPA"). Specifically, the State's relevant claims include the following:

- Farmers' failure to adequately disclose that it uses credit history in calculating premiums and its failure to disclose when the use of credit history results in an increase in premiums constitute misleading, deceptive acts or practices in the business of insurance under TEX. INS. CODE art. 21.21 § 4(2) and violates § 17.46 of the DTPA.

- Farmers' failure to adequately disclose that switching policyholders from Farmers Insurance Exchange into Fire Insurance Exchange resulted in a higher premium for those policyholders constitutes misleading, deceptive acts or practices in the business of insurance under TEX. INS. CODE art. 21.21 § 4(2) and violates § 17.46 of the DTPA.

- Farmers' failure to adequately disclose its management-fee arrangement constitutes misleading, deceptive acts or practices in the business of insurance under TEX. INS. CODE art. 21.21 § 4(2) and violates § 17.46 of the DTPA.

On November 30, 2002, the State announced that it had reached a comprehensive settlement agreement with Farmers. The settlement was valued at approximately $100 million that would accrue to the benefit of Farmers' policyholders.[4] The settlement agreement included issues related to automobile insurance policies as well. The Texas Department of Insurance web site includes a summary explanation of the settlement terms. *See* News Release, "State of Texas, Farmers Insurance Reach Agreement," dated November 30, 2002, which is *available at:*

---

[3] The "Exchanges" are defined by the State as including Farmers Insurance Exchange and Fire Insurance Exchange. The Exchanges are the companies with which the State alleges the policyholders contracted.

[4] Court approval of this settlement with entry of a final judgment will fully resolve the disputes between Farmers and its policyholders, and at the appropriate time, Farmers will ask this Court to dismiss this case and others that would undermine the negotiated relief achieved by the State on policyholders' behalf.

<www.tdi.state.tx.us/commish/nr11302a.html. For purposes of evaluating the Pullens' desire to amend to include auto insurance claims related to credit scoring, it is important to note that the State has negotiated both prospective and retrospective relief for auto insureds. With respect to the provision of the settlement dealing with "Prospective Consumer Relief," Farmers agreed to provide "Credit Scoring disclosures acceptable to [the Attorney General] (homeowner and auto)." With respect to "Consumer Restitution," Farmers agreed to provide "[r]efunds for incorrect credit scores and payment of credit reports, for homeowner and auto customers whose credit scores were incorrect due to errors on credit reports, which they were unable to correct due to inadequate notice by Farmers."

In addition, Villanueva and Paladino have already filed their putative class actions on behalf of automobile insurers against the three non-diverse defendants that Pullen now seeks to add. On May 9, 2000, Villanueva initiated his litigation with respect to credit scoring and its allegedly adverse effects on the premiums Texas insureds pay for automobile coverage. Villanueva alleges that these practices violate TEX. INS. CODE ANN. art. 21.21-8. Villanueva sued three of the same entities that the Pullens now belatedly seek to join: Texas Farmers Insurance Company, Mid-Century Insurance Company of Texas and Farmers Texas County Mutual Insurance Company.[5]

Also prior to the State's litigation, Michael Paladino filed *two* separate class actions dealing with "credit scoring" in January of 2002. One of these actions deals with the use of credit history in the provision of homeowners insurance;[6] the other action deals with the use of

---

[5] *Gilberto Villanueva, Jr., individually and on behalf of all others similarly situated, v. Texas Farmers Insurance Company, Mid-Century Insurance Company of Texas, and Farmers Texas County mutual Insurance Company*, C.A. No. GN 0-01247, in the 53rd Judicial District Court of Travis County, Texas. Exhibit B to this Opposition is a true and correct copy of Villanueva's Third Amended Class Action Petition.

[6] *Michael Paladino, individually and on behalf of all others similarly situated v. Farmers Insurance Exchange and Fire Insurance Exchange*, C.A. No. GN 200208, in the 261st District Court of Travis County, Texas. Paladino

credit history in the provision of automobile insurance.[7]  In his homeowners case, Paladino alleges he is the class representative for all Texas insureds purportedly injured by credit scoring with respect to their homeowners policies, and he alleges analogously with respect to automobile policies.  In both cases, Paladino claims that Farmers' credit scoring practices violate TEX. INS. CODE art. 21.21-8 and that Farmers Group's failure to adequately disclose its management-fee arrangement constitutes misleading, deceptive acts or practices in the business of insurance in violation of TEX. INS. CODE art. 21.21 and Section 17.46 of the DTPA.

**B.    The Pullens File Their Suit**

On September 23, 2002, the Pullens filed – but did not serve on Defendants – their Original Class Action Petition in state court.  The petition blatantly copied allegations from the suit filed the previous month by the State of Texas and the Texas Commissioner of Insurance; indeed, the Pullens did not even bother to alter the description of the parties, which alleged that service was appropriate through the Texas Secretary of State for certain defendants "because this suit is being brought by the State of Texas."

The Pullens, like the State, allege improper use and the failure to disclose the effect of an insurance policy pricing model utilizing credit scoring.  The Pullens' claim that these actions constitute violations of Section 17.46 of the DTPA and art. 21.21 of the Texas Insurance Code.[8]

The Pullens amended their original petition three times prior to removal:

---

amended his class action petition to add Farmers Group, Inc., Farmers Underwriters Association, and Fire Underwriters Association as defendants.  Exhibit C is a true and correct copy of Paladino's Second Amended Class Action Petition.

[7] *Michael Paladino, individually and on behalf of all others similarly situated v. Mid-Century Insurance Company of Texas, Texas Farmers Insurance Company, Farmers Texas County Mutual Insurance Company, and Farmers Group, Inc.*, C.A. No. GN200207, in the 250th Judicial District Court of Travis County, Texas.  Exhibit D is a true and correct copy of Paladino's First Amended Class Action Petition.

[8] The Pullens also sue for breach of contract and breach of duty of good faith and fair dealing.

- On September 25, 2002, a First Amended Class Action Petition was filed in the State Court Action, deleting the apparently inadvertent allegation that the suit was "brought by the State of Texas."

- On September 26, 2002, a second amendment was filed, adding insurance agent Jose Gutierrez as a defendant in a Second Amended Class Action Petition in the State Court Action.

- On October 1, 2002, yet a Third Amended Class Action Petition was filed, adding the allegation that Defendants used insureds' credit history as a means to switch policyholders into unregulated companies that charged higher premiums without full disclosure. The adjective "homeowner" was also deleted.

On October 25, 2002, Defendants removed this case from the state district court in Cameron County, Texas.[9] On November 19, 2002, the Pullens filed a Motion to Remand (Dkt. No. 6) and also filed a Motion for Leave to File Fourth Amended Complaint. Their proposed Fourth Amended Class Action Petition adds four defendants who are involved in the automobile insurance business. But, the Pullens themselves have no connection with these companies; instead, they rely on conclusory affidavits from two putative class members as the basis for adding these new defendants.[10]

## III. ARGUMENT AND AUTHORITIES

### A.    28 U.S.C. 1447(e) Governs Joinder of Additional Non-Diverse Defendants After Removal, Not Rule 15.

The Pullens improperly assert the application of Fed. R. Civ. P. 15. This case, however, is governed by 28 U.S.C. § 1447(e). *See Templeton v. Nelloyd Lines,* 901 F.2d 1273, 1275-76 (5th Cir. 1990) (citing *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987)); *Perry v. Hartford Ins. Co. of the Midwest,* 196 F. Supp. 2d 447, 449 (E.D. Tex. 2002); *Ehrhardt v. Electrical & Instrumentation Unlimited of La.,* 137 F. Supp. 2d 765, 766 (E.D. Tex. 2001). The

---

[9] C.A. No. 2002-09-3703-A, in the 107th Judicial District Court of Cameron County, Texas (the "State Court Action").

[10] *See* Dkt. No. 6, Exhibits B, G, J, affidavits and documents of automobile policyholders, Connie Garza and Laura Pitchford.

Pullens briefly acknowledge this in their Motion to Remand, but do not discuss it in their Motion for Leave, relying instead solely on Federal Rule 15. As the Southern District has recently recognized, however, cases discussing liberal amendment policies outside the removal context "are not pertinent." *Hernandez Castellanos v. Bridgestone Corp.,* 215 F. Supp. 2d 862, 867 (S.D. Tex. 2002).

"Once a case has been properly removed . . . it is well-settled that there is very little that a plaintiff can do that will defeat federal subject matter jurisdiction and force a remand to state court." *Ehrhardt,* 137 F. Supp. 2d at 766. Section 1447(e) is the vehicle by which such an amendment might be obtained. *See id.* Section 1447(e) specifies:

> If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.

28 U.S.C. § 1447(e).

## B.   A Request for Amendment of a Pleading Under 28 U.S.C. § 1447(e) Must be Closely Scrutinized.

In *Hensgens,* the Fifth Circuit "instructed courts to carefully scrutinize post-removal requests to add non diverse parties because such decisions ultimately determine the continuance of a court's jurisdiction and have the potential to deprive defendants of a federal forum." *Lewis v. State Farm Lloyds,* 205 F. Supp. 2d 706, 709 (S.D. Tex. 2002) (citing *Hensgens,* 833 F.2d at 1182). A court, faced with an amended pleading naming a new non-diverse defendant in a removed case, should scrutinize that amendment more closely than an ordinary amendment. *Ehrhardt,* 137 F. Supp. 2d at 766 (citing *Hensgens,* 833 F.2d at 1182); *Alcantara v. Prudential Life Ins. Co. of American,* 75 F. Supp. 2d 563, 565 (E.D. Tex. 1999); *Smith v. Arkansas Louisiana Gas Co.,* 157 F.R.D. 34, 35-36 (E.D. Tex. 1994).

In addition, "it is important for the court to carefully examine a plaintiff's attempt to join a nondiverse defendant after removal, especially where the plaintiff seeks amendment before any discovery is taken." *McCaulley v. Purdue Pharma, L.P.*, 172 F. Supp. 2d 803, 806 (W.D. Va. 2001). In other words, where it is apparent that plaintiff is merely adding names to destroy jurisdiction, which is apparent from the lack of discovery here, close scrutiny of the Motion for Leave is certainly required.

**C.     Leave to Amend is not Appropriate Under Governing Fifth Circuit Law.**

In evaluating a motion for leave to amend to add additional non-diverse defendants in a removed action, the Fifth Circuit has held that a court should consider the following factors:

- Whether the primary purpose of the amendment is to defeat federal jurisdiction;
- Whether the plaintiff has been diligent in requesting the amendment;
- Whether the plaintiff will be prejudiced if the amendment is denied; and
- Any other factors bearing on the equities.

*Hensgens*, 833 F.2d at 1182; *Perry*, 196 F. Supp. 2d at 449; *Alcantara*, 75 F. Supp. 2d at 565; *Ehrhardt*, 137 F. Supp. 2d at 766; *Smith*, 157 F.R.D. at 35-36; *Lewis*, 205 F. Supp. at 709; *see also In re Bridgestone/Firestone, Inc.*, *ATX, ATX II*, 129 F. Supp. 2d 1202, 1205 (S.D. Ind. 2001); *Jerido v. American General Life and Accident Co.*, 127 F. Supp. 2d 1322, 1325 (M.D. Ala. 2001). "On balance, these factors determine whether the amendment should be allowed." *Perry*, 196 F. Supp. 2d at 449 (citing *O'Connor v. Automobile Ins. Co. of Hartford*, 846 F. Supp. 39, 41 (E.D. Tex. 1994)). *Accord Smith*, 157 F.R.D. at 36. Analysis of these factors makes plain that the Pullens' motion should be denied.

       **1.     The primary purpose of the Pullens' proposed amendment is to destroy diversity jurisdiction.**

When a proposed pleading amendment is made to destroy diversity, the amendment should not be allowed. As one leading authority explains:

> If [the Court] determines that the amendment was asserted in bad faith, as, for example, *when plaintiff attempts to destroy the federal court's removal jurisdiction over the case* by altering the complaint so that the case will be remanded, the court may not allow the amendment.

C. WRIGHT & A. MILLER, 6 FEDERAL PRACTICE AND PROCEDURE § 1487, at p. 647-51 (West 1990) (emphasis added).

Because the facts here demonstrate that the Pullens' post-removal motion to add new defendants is a transparent attempt to destroy diversity, the Motion for Leave should be denied. The Motion for Leave was made less than a month after the removal and includes no explanation of why the three additional parties defendant were not named in the original petition but should now be added. Certainly, it is not because the Pullens were unaware of the identity of these additional parties. Indeed, the *Villanueva* class plaintiff filed suit against three of these same defendants in May of 2000, more than two and a half years before the Pullens first filed suit on September 23, 2002,[11] and the *Paladino* class plaintiff did likewise in January of 2002. The fourth proposed defendant (which, in any event, is diverse) is clearly shown on one of the plaintiff class members' own documents – Texas Homeowners Policy, Reciprocal Policy Conditions.[12]

The Pullens give no explanation whatsoever for their belated request to add these additional defendants, other than the conclusory assertion that they are "necessary."[13] Where a plaintiff fails to offer "so much as a single sentence of explanation" for why the new party was

---

[11] *See also* Exhibit B to Motion for Leave, a plaintiffs' document clearly listing three proposed additional defendants.

[12] *See also* Exhibit A to Motion for Leave clearly listing the forth proposed defendant – Mid-Century Company.

[13] *See generally* Motion for Leave.

not named in the original petition, the Court may "infer that [Plaintiffs] seek to add [the new defendants] in order to defeat diversity jurisdiction, which weighs against permitting [amendment]." *In re Bridgestone/Firestone, Inc.*, 129 F. Supp. 2d at 1205; *see also Jerido,* 127 F. Supp. 2d at 1325 (plaintiff offered no explanation as to why plaintiff sought to add the new defendant – supporting the interpretation that the aim was to destroy federal jurisdiction). As the Western District of Virginia has noted in similar circumstances, "[t]he timing raises a red flag that the plaintiff may be forum shopping." *McCaulley*, 172 F. Supp. 2d at 806.

In addition, the proposed Fourth Amended Class Action Complaint includes no factual, liability or damages allegations particular to these new defendants. The proposed amended complaint does little more than add the new defendants to the case style and first paragraph of the pleading. In the Motion for Leave, the Pullens make the bare assertion that the new defendants are "part of the scheme and practice" alleged in the lawsuit. Yet, the Fourth Amended Class Action Complaint reveals no factual basis for such a statement and makes no claim based on this allegation. Accordingly, there is ample reason for the Court to infer improper motive. *See, e.g., McCaulley,* 172 F. Supp. 2d at 806 (motion to amend denied where plaintiff did little more than shuffle paragraphs in the new complaint).

Federal courts in Texas have consistently viewed motions to add nondiverse defendants filed shortly after the time of removal as being made in bad faith. In *Ehrhardt,* for example, the Court found a motion for leave to amend to add a nondiverse defendant and drop a federal claim filed a month after removal to "further the inference" that the plaintiff's purpose was to defeat federal court jurisdiction. *Ehrhardt,* 137 F. Supp. 2d at 766-67; *see also Lewis*, 205 F. Supp. 2d at 709 ("Plaintiffs offer no clue as to why the Non-Diverse Defendants did not become necessary…until after…removal."). Here, as in other cases, "the temporal proximity of the

petition for removal and the request for joinder of the nondiverse party at least suggests an attempt to defeat this Court's diversity jurisdiction over the action." *See, e.g., LeDuc v. Bujacke,* 777 F. Supp. 10, 12 (E.D. Mo. 1991).

### 2.    Plaintiffs failed to exercise the required diligence.

The second factor courts consider in evaluating post-removal pleading amendments that would destroy jurisdiction is whether the plaintiff exercised diligence in asserting the amendment. Here, there can be no dispute that the Pullens have not been diligent in requesting the amendment. Joinder could have easily been requested much earlier in this proceeding, if the goal had been to asset a "true" claim. None of the Pullens' three prior amendments required leave of Court, yet by their own inattention to detail the Pullens failed to add the Defendants that Villanueva and Paladino each had named in their suits filed well before the Pullens filed their action based on the same claims. In addition, these proposed defendants' identities were clearly shown on the face of plaintiff class members' own policies.

The Pullens could have more prudently pled at a time prior to removal. In *Perry,* the court found that a plaintiff who waited until almost two months after the defendant removed the case to federal court to add a nondiverse defendant was not diligent in requesting its amendment. *Perry,* 196 F. Supp. 2d 447. Similarly, in *Ehrhardt,* suit was filed on October 24, 2000, the case was removed on December 5, 2000, and the plaintiff moved to amend a month after the removal. The Court refused to allow the plaintiff to add non-diverse defendants because joinder could have been attempted earlier in the proceedings. *Ehrhardt,* 137 F. Supp. 2d at 767; *see also McCaulley,* 172 F. Supp. 2d at 809 (noting that plaintiff's attorneys had "every opportunity to learn of" the proposed new defendant, but waited "until after the notice of removal" to request the amendment).

### 3.    Plaintiffs will suffer no prejudice.

The third factor the Fifth Circuit has instructed courts to consider in evaluating post-removal pleading amendments is whether the plaintiff will be prejudiced by denial of the amendment. Where there is no prejudice to the plaintiffs, the Court should refuse to permit amendment. *See, e.g., Ehrhardt,* 137 F. Supp. 2d at 766-67; *Smith,* 157 F.R.D. at 35-36; *Alcantara,* 75 F. Supp. 2d at 566; *Perry,* 196 F. Supp. 2d at 449-50. The Pullens and the class they purport to represent will suffer no prejudice by this Court's refusal to allow the requested amendment because: (a) the Pullens' and the putative class members' interests are otherwise protected; (b) the Pullens have no standing as to the proposed new defendants; and, (c) the Pullens' proposed amendment does not satisfy the pleading requirements of the Federal Rules.

### a.    Plaintiffs' interests are otherwise protected.

The Pullens' claims are duplicative of previously filed claims in other pending suits. Every member of the *Pullen* class, including the Pullens themselves, is a member of the proposed classes in prior pending litigation against Farmers related entities. Most importantly, their interests have been actively pursued by the State of Texas in its litigation on behalf of policyholders. Because the *Pullen* case is a later-filed compilation of the *State of Texas, Paladino* and *Villanueva* matters, the class the Pullens claim to represent will be protected.

### b.    Plaintiffs lacks standing.

"If the proposed change clearly is frivolous or advances a claim . . . that is legally insufficient on its face, the court may deny leave to amend." 6 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1487, at p. 637. Where a plaintiff's claims against a proposed additional defendant do not rise above the merely "arguable," that fact has been sufficient to convince a court that the plaintiffs were "scrambling for a [nondiverse] resident to sue." *See McCaulley,* 172 F. Supp.2d at 810. ("A court need not at this juncture decide the ultimate merits of the claims against the new defendant.").

The law of standing mandates dismissal of claims "in which the plaintiff has failed to make out a case or controversy between himself and the named defendant." *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99 (1979). Central to the concept of standing is that a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Valley Forge Christian College v. American United for Separation of Church of State, Inc.,* 454 U.S. 464, 474 (1982). The requirement that a litigant have standing is jurisdictional and, to establish standing, a plaintiff must show an "injury in fact" that is "fairly traceable to the defendant's allegedly unlawful conduct" and that "the injury will be redressed by a favorable decision by the court." *Warth v. Seldin,* 422 U.S. 490, 498-99 (1975). The pleaded facts must establish the plaintiff's standing as to each defendant. *Ramos v. Patrician Equities Corp.,* 765 F. Supp. 1196, 1199 (S.D.N.Y. 1991); *see also Haas v. Pitsburgh Nat'l Bank,* 526 F.2d 1083, 1086 (3d Cir. 1975) (dismissal of claims against banks with whom class representative had no credit card).

Neither in their pleadings nor in Mr. Pullen's affidavit have the Pullens, the named plaintiffs, averred that they had *any* relationship with *any* of the newly added defendants, contractual or otherwise, which would provide the legal foundation for their causes of action. In fact, Mr. Pullen's affidavit executed on November 14, 2002[14] does not even reference the four proposed additional defendants. They obviously have no relationship with the Pullens.[15] Instead, the Pullens rely on affidavits from putative class members. These affiants attest to *their* relationship with the newly added defendants, but such a derivative standing theory has been authoritatively rejected by the United States Supreme Court:

---

[14] Dkt No. 6, Exhibit A to Motion to Remand.

> That a suit may be a class action, however, adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.

*Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 40 n.20 (1976) (quoting *Warth,* 422 U.S. at 502). Thus, a named plaintiff must establish that he personally has standing to sue each defendant, without reference to the claims or standing of the class members he seeks to represent. The Pullens have utterly failed to do so, and thus cannot establish standing to sue the proposed defendants. As a result, the Pullens cannot possibly be prejudiced by being denied leave to add these defendants to their petition.

### c.    Plaintiffs fail to meet the pleading standards for any claim against new defendants.

The Pullens also would suffer no prejudice from denial of their motion because their proposed amendment does not satisfy the pleading requirements of the federal rules. Their global allegations as against all defendants include no indicia of which allegedly improper acts or omissions were committed by which defendant. All the fact allegations in the proposed Fourth Amended Class Action Complaint refer to all "Defendants." The Pullens' allegations concerning violations of law and various breaches all refer to "Defendants" generally. The Pullens' damages allegations also refer generally to "Defendants'" conduct.

In *Cavallini v. State Farm Mutual Auto Ins. Co.,* 44 F.3d 256, 261 (5th Cir. 1995), where the pleadings were similar to those before this Court, the Fifth Circuit affirmed a finding that the plaintiffs failed to state a claim against a fraudulently joined insurance agent. The plaintiffs in *Cavallini* claimed they were damaged because the insurer failed to pay policy benefits and also

---

[15] Indeed, the Pullens have homeowners coverage with Farmers Insurance Exchange, a previously named diverse defendant. *See* Exhibit E, Affidavit of Layne E. Kruse authenticating a Farmers Insurance Exchange Declarations Page for the Pullens' homeowners coverage.

sought exemplary damages. Cavallini based these allegations on global statements. For example, Cavallini pled "[b]ecause of the gross misrepresentations made by the Defendants, and their respective failure to deal in good faith." *Id.* Cavallini's prayer for relief was also generic, referring to "Defendants, jointly and severally." *Id.*

Moreover, courts have recognized that "[c]laims alleging violations of the Texas Insurance Code and the DTPA . . . are subject to the requirements of Rule 9(b)." *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998). As a result, the Pullens must plead their claims with the particularity required by Rule 9(b).

> Pleading fraud with particularity in this circuit requires "time, place and contents of the false representations; as well as the identity of the person making the misrepresentation and what [that person] obtained thereby."

*Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997); *U.S. ex rel. Russell v. EPIC Healthcare Management Group*, 193 F.3d 304, 308 (5th Cir. 1999). The Pullens' generic references to "Defendants" fall far short of the mark. As the court stated in *Cavallini*, "no more need be said."

### 4. Equitable factors

The equities also favor Defendants. In considering the equities, the Court should note that no equities were argued in the Motion for Leave. Where a plaintiff sets forth no equities, there is further reason to deny a requested amendment. *See, e.g., Ehrhardt*, 137 F. Supp. 2d at 767 ("Plaintiff has demonstrated no other fairness concerns, and the Court can find none on its own."). More important, however,

> [t]he key concept here is that the parties do not start out on an equal footing.... This is because of the diverse defendant's right to choose between a state or federal forum. Giving diverse defendants the option of choosing the federal forum is the very purpose of the removal statutes...just as plaintiffs have the right to choose to sue in state court when complete diversity does not exist, non-resident defendants have the right to remove to federal court when there is diversity.

30371666.8                                            -15-

*Bevels v. Am-State Ins. Co.*, 100 F. Supp. 2d 1309, 1313 (M.D. Ala. 2000) (citing *Hensgens*, 833 F.2d at 1181). Where, "in balancing the equities, the parties are not on equal footing," a court should "give consideration to the Defendant's right to choose the federal forum." *Jerido*, 127 F. Supp. 2d at 1326.

"Cases examining questions of joinder and remand emphasize that defendants have 'a significant interest in proceeding in a federal instead of an out of state forum.'" *In re Bridgestone/Firestone, Inc., ATX, ATX II*, 129 F. Supp. 2d at 1206 (the option of choosing the federal forum is the very purpose of the removal statutes). In the opinion of one court where the equities were similar to those in the instant case, the court found the defendants should not lose their federal forum, in which they had a present right. *McCaulley*, 172 F. Supp. 2d at 810 (finding the plaintiffs' motive evident, their delay avoidable, and their interests protected).

## D.    Summary

The Pullens have not satisfied the requirements of 28 U.S.C. § 1447(e) to permit them to amend their petition. The real reason the Pullens suddenly decided to add these parties against which they have no claim is obvious: the only "relief" they desire from these new parties is "relief" from this Court's jurisdiction. This conclusion is reiterated by the otherwise-inexplicable lack of diligence in adding these parties during any of the Pullens' three prior amendments. Because neither the Pullens nor the class will suffer any prejudice from denial of the Motion for Leave, and because the balance of the equities favors such a denial, the proposed amendment should not be allowed, and removal should be upheld. The Western District of Virginia stated it well:

> The plaintiffs' motive is evident, their delay avoidable, and their interests protected. It is the defendants who will be prejudiced should they lose their federal forum, to which they now have a right.

*McCaulley*, 172 F. Supp. 2d at 810 (footnote omitted).

## **CONCLUSION**

For the foregoing reasons, Defendants request the Court deny the Plaintiffs' Motion for Leave to File Fourth Amended Complaint and grant Defendants all such other and further relief to which they may be entitled.

Respectfully submitted,

Eduardo Roberto Rodriguez *w/ permission*
*McBostoll*

Eduardo Roberto Rodriguez
State Bar No. 17144000
Federal I.D. No. 1944
Robert Patrick Rodriguez
State Bar No. 24002861
Federal I.D. No. 22949
1201 East Van Buren
Brownsville, Texas 78520  and/or
P.O. Box 2155
Brownsville, Texas 78522
Telephone: 956.542.7441
Telecopier: 956.541.217

Of Counsel:
RODRIGUEZ, COLVIN & CHANEY, L.L.P.

Layne E. Kruse
State Bar No. 11742550
Federal I.D. No. 2383
Richard N. Carrell
State Bar No. 03871000
Federal I.D. No. 4473
Gerard G. Pecht
State Bar No. 15701800
Federal I.D. No. 4784
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: 713-651-5151
Telecopier: 713-651-5246

Of Counsel:
FULBRIGHT & JAWORSKI L.L.P.

Attorneys-in-Charge for Defendants

## CERTIFICATE OF SERVICE

This pleading was served on Plaintiffs' counsel in compliance with Rule 5 of the Federal Rules of Civil Procedure on December 9, 2002.

Eduardo Roberto Rodriguez *w/ permission*
*McBostoll*

Eduardo Roberto Rodriguez

## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ALBERT PULLEN  ET AL., | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| | § | |
| **v.** | § | **C. A. NO. B-02-206** |
| | § | |
| FARMERS GROUP, INC., | § | |
|     FARMERS UNDERWRITERS | § | |
|     ASSOCIATION, FIRE UNDERWRITERS | § | |
|     ASSOCIATION, FARMERS INSURANCE | § | |
|     EXCHANGE, FIRE INSURANCE | § | |
|     EXCHANGE, AND JOSE GUTIERREZ, | § | |
| | § | |
| **Defendants.** | § | |

## EXHIBITS TO OPPOSITION TO PLAINTIFFS' MOTION
## FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT

A.    State of Texas, et al. v. Farmers Group, Inc., et al.: Original Verified Petition

B.    *Gilberto Villanueva, Jr., et al., v. Texas Farmers Insurance Company, et al.*: Third Amended Class Action Petition

C.    *Michael Paladino, et al. v. Farmers Insurance Exchange, et al.*: Second Amended Class Action Petition

D.    *Michael Paladino, et al. v. Mid-Century Insurance Company of Texas, et al.*:  First Amended Class Action Petition

E.    Affidavit of Layne E. Kruse

**ORIGINAL**

NO. GV202 501

| | | |
|---|---|---|
| THE STATE OF TEXAS and | § | IN THE DISTRICT COURT |
| THE TEXAS COMMISSIONER OF | § | |
| INSURANCE, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | OF TRAVIS COUNTY, TEXAS |
| v. | § | |
| | § | |
| FARMERS GROUP, INC., FARMERS | § | |
| UNDERWRITERS ASSOCIATION, | § | |
| FIRE UNDERWRITERS ASSOCIATION, | § | |
| FARMERS INSURANCE EXCHANGE, | § | |
| and FIRE INSURANCE EXCHANGE, | § | |
| | § | |
| Defendants. | § | 2₵ 1st JUDICIAL DISTRICT |

## ORIGINAL VERIFIED PETITION AND
## APPLICATION FOR PERMANENT INJUNCTION

Texas Attorney General John Cornyn brings this suit in the name of the State of Texas and on behalf of the Texas Commissioner of Insurance against Farmers Group, Inc., Farmers Underwriters Association, Fire Underwriters Association, Farmers Insurance Exchange, and Fire Insurance Exchange (collectively referred to herein as "Farmers") for deceptive, misleading, and discriminatory homeowners-insurance practices that violate TEX. INS. CODE arts. 21.21 § 4(2), 21.21-6, & 21.21-8 and the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"). Farmers' illegal practices were discovered through an investigation initiated by the Attorney General's Consumer Protection Division and during an examination by the Texas Department of Insurance ("TDI") under TEX. INS. CODE art. 1.15.

### *Discovery Level*

1.      Texas intends to conduct Level 2 discovery under Texas Rule of Civil Procedure 190.3 and affirmatively pleads that it seeks injunctive relief.   2002 AUG -5   AM 9:15

**EXHIBIT A**

*Defendants*

2.      Defendant, Farmers Group, Inc., is a Nevada corporation and the parent company of both Farmers Underwriters Association, which is the attorney-in-fact of the Farmers Insurance Exchange, and Fire Underwriters Association, which is the attorney-in-fact of the Fire Insurance Exchange.  Its principal place of business is 4680 Wilshire Boulevard, Los Angeles, California 90010 and it may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because this suit is being brought by the State of Texas.

3.      Defendant, Farmers Underwriters Association, is the attorney-in-fact of the Farmers Insurance Exchange.  Its principal place of business is 4680 Wilshire Boulevard, Los Angeles, California 90010 and it may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because this suit is being brought by the State of Texas.

4.      Defendant, Fire Underwriters Association, is the attorney-in-fact of the Fire Insurance Exchange.  Its principal place of business is 4680 Wilshire Boulevard, Los Angeles, California 90010 and it may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because this suit is being brought by the State of Texas.

5.      Defendant, Farmers Insurance Exchange, is a foreign insurance carrier organized and existing under the laws of California and authorized to conduct a homeowners insurance business in this State.  Its principal place of business is 4680 Wilshire Boulevard, Los Angeles, California 90010 and it may be served with process by serving its agent for service, Gerard Galvan, Farmers Insurance Exchange, 100 Farmers Circle, Round Rock, Texas 78728.

6.      Defendant, Fire Insurance Exchange, is a foreign insurance carrier organized and

existing under the laws of California and authorized to conduct a homeowners-insurance business in this State. Its principal place of business is 4680 Wilshire Boulevard, Los Angeles, California 90010 and it may be served with process by serving its agent for service, Fred B. Werkenthin, Jackson Walker, L.L.P., 100 Congress Avenue, Suite 1100, Austin, Texas 78768, as its agent for service.

### Jurisdiction

7.      This Court has jurisdiction over this suit and all conditions precedent to this suit have been performed or have occurred.

### Venue

8.      Venue is proper in this county under TEX. INS. CODE art. 21.21 § 15(b). Specifically, the Attorney General brings this suit in Travis County to enjoin Farmers' continued use of misleading, deceptive, and discriminatory practices.

### Facts

9.      Farmers provides homeowner's insurance in Texas as a reciprocal exchange. Under this arrangement, policyholders enter indemnity contracts among themselves from losses and exchange those contracts through an interinsurance exchange. The exchange of the contracts creates the insurance for the policyholders by spreading the risk of loss amongst themselves in the same way that risks are spread in a typical insurance arrangement—typically limiting a policyholder's risk to the amount of premium paid. An exchange operates through an attorney-in-fact that manages the exchange for the policyholders. In this case, both Farmers Insurance Exchange and Fire Insurance Exchange are interinsurance exchanges (hereinafter the "Exchanges"). Farmers Underwriters Association and Fire Underwriters Association, either as wholly owned subsidiaries or d/b/a's of

Farmers Group, Inc., (collectively, those three are referred to herein as "Farmers Group") are the attorneys-in-fact of the policyholders in the Exchanges (collectively, all five entities are referred to herein as "Farmers"). Farmers Group administers the Exchanges and charges a management fee for that administration.

10.    Recently, Farmers has dramatically changed its homeowners-insurance practice in Texas. Farmers is using credit history as a significant factor in setting premiums, without disclosing the adverse impact of doing so, and is switching Texas policyholders from all-risk "HO-B" policies to stated-peril "HO-A" policies that provide much less coverage. Despite this loss of coverage, Texas policyholders have seen increased premiums allegedly due to losses suffered by the Exchanges in the past year. Thus, Farmers is now charging significantly higher premiums, but offering substantially less coverage.

11.    Although Farmers claims its losses require it to raise premiums and reduce coverage for Texas policyholders, Farmers Group is making—not losing—money! Farmers Group represents to the Securities and Exchange Commission that it makes a management fee between 12% and 13% of collected premiums for administering the Exchanges. Since Texas policyholders are paying higher premiums, Farmers Group is making more profit in management fees per policy on those higher premiums. In SEC filings, Farmers Group reported a Fiscal Year 2001 after-tax profit of $438.7 million from these management services alone. As the attorney-in-fact for the Exchanges, Farmers Group has a fiduciary duty to Farmers' policyholders in the Exchanges of utmost good faith, fair dealing, honest performance and strict accountability. Farmers, however, fails to notify policyholders in the Exchanges (a) that the decision to enter into a management-fee agreement based on percentage of premium collected benefits Farmers Group to the detriment of the Exchanges and

the policyholders; (b) what the terms of the management-fee agreement actually are; (c) any possible adverse impact on premiums the management fee creates; and (d) that Farmers Group is in fact making more money through management fees as premiums increase.

12.     Through its regulatory examination process, TDI also discovered that Farmers recently began charging Texas policyholders for catastrophes occurring in other States—resulting in a premium increase to virtually all Texas policyholders in the Farmers Group managed exchanges. Some damages from natural disasters—like tornados, severe hailstorms, and hurricanes—are covered under homeowner policies.  Traditionally, this potential catastrophe loss has been actuarially reflected in Texas by including two "loads" in the premium calculations: one to reflect potential hurricane-caused damages, and another to reflect other natural disasters.  But around September 16, 2001, Farmers added a third, substantial catastrophe load—called an "unfunded CAT load." Farmers meant this CAT load to provide for perceived shortfalls in the catastrophe loads used nationwide. But Texas experiences a disproportionate share of these natural disasters.  This unfunded CAT load now charges Texas policyholders for losses that did not occur in Texas and, because of Texas' disproportionate share of catastrophic events, charges Texas policyholders with a disproportionate share of that load—increasing Texas policyholders' premiums.  Farmers does not disclose this fact to its Texas policyholders.

13.     Farmers uses a credit scoring system to determine, in substantial part, the Exchanges' premiums.  Farmers contracts with Fair, Isaac & Co ("Fair Isaac") to obtain a credit score for each policyholder, which is called an "insurance score." Based on the Fair Isaac insurance score, Farmers places the policyholder into a Farmers Property Risk Assessment ("FPRA") category, which is between "A" and "Z." From there, Farmers assigns the policyholder to a FPRA discount category

to use in calculating the policyholder's premium. Farmers does not adequately disclose that it increases premiums or gives discounts based in part upon the policyholder's insurance score or credit history. Nor does Farmers adequately disclose to its Texas policyholders its method for calculating the FPRA; the effect that the FPRA letter score has on the policyholder's premium; the ability of the policyholder to contest or update their assigned FPRA; or that credit reports or history are used to create the FPRA. These misleading and deceptive practices violate the Texas Insurance Code and the DTPA. Further, these practices are compounded by Farmers' actuarially inconsistent use of this information.

14.    Not only is the validity of using credit history to calculate premiums in doubt, the manner in which Farmers uses credit scoring constitutes illegal discrimination. According to Farmers, policyholders' credit ratings can predict the probability of loss. Farmers' own documents, however, reveal that the premium charged policyholders in every category is higher—sometimes significantly higher—than the premium indicated by the loss history, except for those policyholders with the highest and lowest FPRA scores. Moreover, certain FPRA categories that are of essentially the same hazard, as demonstrated by their loss experience, are not assigned to the same FPRA discount category. Thus policyholders with essentially the same loss history receive different discounts. For example, policyholders placed in FPRA categories "I" and "N" receive a different discount than those in FPRA categories "H," "J," and "K." But the loss history data that Farmers provided TDI shows no actuarial basis for assigning those policyholders different premiums based on their FPRA.

15.    Like some other carriers, Farmers has been switching all of its policyholders from HO-B policies to HO-A policies. Unlike HO-B policies, the HO-A policy Farmers offers severely

limits coverage for water damage and removes mold coverage entirely. This decrease in coverage affects Texas policyholders differently depending on where they live. Rather than reflecting these geographic differences in the effect of the change from HO-B to HO-A, Farmers simply applied the same multiplier to all of Texas in calculating the change in value of each policy. This method failed to account for the fact that different geographic locations have different mold- and water-related loss histories.

16.    Moreover, when Farmers began requiring its Texas policyholders to switch to HO-A-type policies in January, 2002, the only policies being offered were in the Fire Insurance Exchange. Consequently, those Farmers Insurance Exchange policyholders renewing during the first part of the year were also switched by Farmers into Fire Insurance Exchange. Farmers, however, failed to mention to these policyholders that the premiums paid in Fire Insurance Exchange are substantially higher than those for Farmers Insurance Exchange; in fact, the overall average difference is approximately 35%. Farmers never disclosed that this double-switch resulted in another premium increase and that Texas policyholders never would have been subjected to this increase if their policies had remained with Farmers Insurance Exchange.

17.    TDI has also discovered that Farmers' use of the age of policyholders' homes in determining premium constitutes illegal discrimination. That methodology attempts to tie the probability of loss to the age of policyholders' homes. Farmers' own documents, however, reveal that the adopted premium for policyholders in the many categories is inconsistent with Farmers' loss history and discriminatory. For example, policyholders with 6-year-old homes receive a 20% discount on their premiums, while Farmers' loss analysis indicates that the discount should be 29.1%. Significantly, policyholders with 7-year-old homes receive a 15% discount on their

premiums, while Farmers' loss analysis indicates that the discount should be 28.9%. Although both

ages of home have an actuarially similar loss history, Farmers adopts different discounts.

### Causes of Action

18.    The manner in which Farmers uses credit history in determining homeowners'

premiums is discriminatory and violates TEX. INS. CODE art. 21.21-8.   Specifically, Texas

policyholders placed in FRPA categories "I" and "N" receive a different discount than those in FRPA

categories "H," "J," and "K," even though the loss-history data that Farmers provided TDI shows no

basis for assigning those policyholders different premiums based on their FRPA.

19.    The manner in which Farmers uses the age of homes in determining homeowners'

premiums is discriminatory and violates TEX. INS. CODE art. 21.21-8.  Specifically, Farmers adopts

different premiums for Texas policyholders with 4-, 5-, 6-, and 7-year-old homes even though the

loss-history data that Farmers provided TDI shows no basis for assigning those policyholders

different premiums based on their FRPA.

20.    Farmers' premiums illegally discriminate against policyholders based on geographic

location under TEX. INS. CODE art. 21.21-6.  In switching Texas policyholders from HO-B policies,

which cover water damage and mold remediation, to HO-A policies, which largely do not, Farmers

failed to use sound underwriting or actuarial principles reasonably related to actual or anticipated

loss experience.  Farmers failed to account for the change in coverage when calculating Texas

policyholders' premiums.

21.    Farmers' failure to adequately disclose that it uses both a nationwide and Texas-based

catastrophe load constitutes misleading, deceptive acts or practices in the business of insurance under

TEX. INS. CODE art. 21.21 § 4(2) and violates § 17.46 of the DTPA.

22.    Farmers' failure to adequately disclose that it uses credit history in calculating premiums and its failure to disclose when the use of credit history results in an increase in premiums constitute misleading, deceptive acts or practices in the business of insurance under TEX. INS. CODE art. 21.21 § 4(2) and violates § 17.46 of the DTPA.

23.    Farmers' failure to adequately disclose that switching Texas policyholders from Farmers Insurance Exchange into Fire Insurance Exchange resulted in a higher premium for those policyholders constitutes misleading, deceptive acts or practices in the business of insurance under TEX. INS. CODE art. 21.21 § 4(2) and violates § 17.46 of the DTPA.

24.    Farmers' failure to adequately disclose its management-fee arrangement constitutes misleading, deceptive acts or practices in the business of insurance under TEX. INS. CODE art. 21.21 § 4(2) and violates § 17.46 of the DTPA.

### *Permanent Injunction*

25.    Unless enjoined, Farmers will continue to operate in violation of the laws of this State. Farmers' discriminatory and deceptive practices injure its Texas policyholders. Accordingly, Texas requests injunctive relief under TEX. INS. CODE art. 21.21 § 15 to prohibit Farmers from:

a.    failing to disclose to Texas policyholders that it charges both a Texas-based non-hurricane catastrophe load and an "unfunded CAT load," as described above in paragraph 11;

b.    using its current Farmers Property Risk Assessment in calculating premiums in an illegally discriminatory manner;

c.    using the age of policyholders' homes in calculating premiums in an illegally discriminatory manner;

d.    failing to adequately notify Texas policyholders in writing that credit history affects their premiums and ability to renew the policy;

e.    calculating premiums for Texas policyholders in every location using the same HO-B to HO-A multiplier in an illegally discriminatory manner; and

    f.  switching Texas policyholders from Farmers Insurance Exchange to Fire Insurance Exchange without disclosing the resulting increase in premium caused by the switch.

### *Restoration*

26.    Texas asks that this Court enter an order restoring all excessive premium payments to Texans aggrieved by Farmers' practices under TEX. INS. CODE art. 21.21 § 15(d).

### *Civil Penalties*

27.    Under article 21.21 § 15 of the Texas Insurance Code, Texas seeks a civil penalty from Farmers in an amount not to exceed $10,000 per violation, for each violation of article 21.21 and the rules and regulations issued under article 21.21.

28.    Additionally, Texas seeks civil penalties of $25,000 per Texan harmed by any of Farmers' practices that the Court determines violate TEX. INS. CODE art. 21.21-8.

### *Costs and Attorneys' Fees*

29.    Under TEX. GOV'T CODE ANN. § 402.006, Texas seeks all costs incurred in this proceeding, as well as reasonable attorneys' fees, investigative costs, and court costs.

### *Jury Demand*

30.    Texas requests a trial by jury in this cause under Rule 216 of the Texas Rules of Civil Procedure. Texas is not required to prepay jury fees. *See* TEX. CIV. PRAC. & REM. CODE § 6.001.

### *Conclusion and Prayer*

For these reasons, the State of Texas and the Texas Commissioner of Insurance pray that:

    a.  Defendants be cited to appear and answer herein;

    b.  the Court grant a Permanent Injunction, after due notice and hearing, restraining and enjoining Defendants as requested in paragraph 25;

    c.  no bond be required of the State;

d.  the Court order Defendants to restore all excessive premium payments to aggrieved Texas policyholders;

e.  the State of Texas be awarded civil penalties;

f.  the Court award the State of Texas and the Texas Commissioner of Insurance all costs incurred in this proceeding along with reasonable attorneys' fees, investigative costs, and court costs; and

g.  the State of Texas and Texas Commissioner of Insurance be awarded any and all other and further relief, both general and specific, in law and in equity, to which they may be entitled.

Respectfully submitted,

JOHN CORNYN
Attorney General of Texas

HOWARD BALDWIN, JR.
First Assistant Attorney General

JEFFREY S. BOYD
Deputy Attorney General for Litigation

PAUL CARMONA
Chief, Consumer Protection Division

DAVID C. MATTAX
Chief, Financial Litigation Division

CHRISTOPHER D. LIVINGSTON
State Bar No. 24007559
Assistant Attorney General
Financial Litigation Division
JAMES R. WENZEL
State Bar No. 21179370
Assistant Attorney General
Consumer Protection Division
Insurance Practices Section
P.O. Box 12548
Austin, Texas  78711-2548
Telephone:  (512) 463-2018
Telecopier:  (512) 477-2348

*Attorneys for The State of Texas and the Texas Commissioner of Insurance*

ORIGINAL PETITION                                                   PAGE 11

## VERIFICATION

STATE OF TEXAS                    §
                                 §
COUNTY OF TRAVIS                 §

Before me, the undersigned notary, on this day , personally appeared Larry Jackson, a person whose identity is known to me.  After I administered an oath to him, upon his oath, he stated that he had read *Texas' Original Verified Petition and Application for Temporary Injunction and Permanent Injunction* and that the facts stated in paragraphs 9 through 17 are within his personal knowledge and are true and correct to the best of his knowledge and belief.

Larry Jackson

Subscribed and sworn to before me by Larry Jackson on this 5th day of August, 2002.

CATRINA YVETTE PICKENS
Notary Public, State of Texas
My Commission Expires
MARCH 8, 2005

Notary Public in and for the State of Texas

Received 11/26/2002 09:58 in 07:52 on line [6] for AM08402 Printed 11/26/2002 10:11 * Pg 12/27
11/26/2002 10:00 FAX 5122362002          JACKSON WALKER LLP                                 ☒012
DEC 03 '01 19:13 FR DAVIS & DAVIS                     TO 15122362002          P.03/23

CAUSE NO. GN0-01347

GILBERTO VILLANUEVA, JR.,                §          IN THE DISTRICT COURT OF
INDIVIDUALLY AND ON BEHALF               §
OF ALL OTHERS SIMILARLY SITUATED,        §
                                         §
*Plaintiff,*                             §
                                         §
V.                                       §          TRAVIS COUNTY, T E X A S
                                         §
TEXAS FARMERS INSURANCE,                 §
COMPANY, MID-CENTURY INSURANCE           §
COMPANY OF TEXAS, AND FARMERS            §
TEXAS COUNTY MUTUAL                      §
INSURANCE COMPANY,                       §
                                         §
*Defendants.*                            §          53ᴹ JUDICIAL DISTRICT

## PLAINTIFF'S THIRD AMENDED CLASS ACTION PETITION

Plaintiff Gilberto Villanueva, Jr., individually and on behalf of the class of similarly situated

persons defined herein, files this Third Amended Class Action Petition against Defendants Texas

Farmers Insurance Company, Mid-Century Insurance Company of Texas, Farmers Texas County

Mutual Insurance Company (hereinafter collectively referred to as "Defendants"), and would show

the Court as follows:

## I. DISCOVERY CONTROL PLAN DESIGNATION

1.       Plaintiff hereby notifies the Court and Defendants that he intends discovery in this case to be

conducted pursuant to Level 3, Tex. R. Civ. P. 190, and he will move the Court to enter a discovery

control plan pursuant to Tex. R. Civ. P. 190.4.

## II. INTRODUCTION

2.       In bringing this case as a class action, Plaintiff seeks to end the Defendants' practices of

unfairly discriminating against Texas consumers by issuing automobile insurance policies to

consumers at higher rates and different rates. Such higher and different rates result from Defendants'

**EXHIBIT B**



Received 11/26/2002 09:58 in 07:52 on line [6] for AM08402 Printed 11/26/2002  10:11 * Pg 13/27    ☒013
11/26/2002 10:00 FAX 5122362002              JACKSON WALKER LLP
DEC 03 '01 19:13 FR DAVIS & DAVIS                        TO 15122362002          P.04/23

utilization of consumers' credit history and credit score. Defendants' practices violate TEX. INS. CODE·ANN. § 21.21-8.

3.      The effect of the Defendants' use of credit history as the basis for insurance premiums serves only to artificially increase the Defendants' revenues, without a commensurate increase in the risks associated with the issuance of the insurance policies. The Defendants' increased revenues are primarily at the expense of those who can least afford the increased cost of insurance.

## III.  PARTIES

4.      Plaintiff Gilberto Villanueva, Jr. is a natural person, a citizen and resident of Dimmit County, Texas.

5.      Defendant Texas Farmers Insurance Company is a domestic insurance carrier organized and existing under the laws of the state of Texas and authorized to conduct business in Texas. Defendant Texas Farmers Insurance Company has been served with process, and has filed an answer in this lawsuit. At all times relevant hereto Defendant Texas·Farmers Insurance Company was in the business of marketing and/or selling automobile insurance to Texas consumers.

6.      Defendant Mid-Century Insurance Company of Texas is a domestic insurance carrier organized and existing under the laws of the state of Texas and authorized to conduct business in Texas. Defendant Mid-Century Insurance Company of Texas has been served with process, and has filed an answer in this lawsuit. At all times relevant hereto Defendant Mid-Century Insurance Company of Texas was in the business of marketing and/or selling automobile insurance to Texas consumers.

7.      Defendant Farmers Texas County Mutual Insurance Company is a domestic insurance carrier organized and existing under the laws of the state of Texas and authorized to conduct business in

12/03/2001 MON 19:01  [TX/RX NO 5056] ☒004

Received 11/26/2002 09:58 in 07:52 on line [6] for AM08402 Printed 11/26/2002  10:11 * Pg 14/27
11/26/2002 10:01 FAX 5122362002          JACKSON WALKER LLP                              ⓩ014
       DEC 03 '01 19:14 FR DAVIS & DAVIS                    TO 15122362002          P.05/23

Texas. Defendant Farmers Texas County Mutual Insurance Company has been served with process, and has filed an answer in this lawsuit. At all times relevant hereto Defendant Farmers Texas County Mutual Insurance Company was in the business of marketing and/or selling automobile insurance to Texas consumers.

## IV.  JURISDICTION AND VENUE

8.      The Court has jurisdiction over Defendants because Defendants are domestic insurance carriers organized and existing under the laws of the State of Texas and authorized to conduct business in Texas. The Court has jurisdiction over the controversy because the damages sought by Plaintiff, exclusive of interest and costs, exceed the minimal jurisdictional limits of this Court.

9.      Venue is proper in Travis County, Texas. Specifically, venue is mandatory in Travis County, Texas because Plaintiff's claims are based in part upon Defendants' violations of TEX. INS. CODE ANN., art. 21.21-8. Article 21.21-8, § 3(a) mandates that all claims for Art. 21.21-8 violations be brought in a district court in Travis County, Texas.

## V.  BACKGROUND FACTS

10.     Defendant Texas Farmers Insurance Company, Defendant Mid-Century Insurance Company of Texas and Defendant Farmers Texas County Mutual Insurance Company are part of an affiliated group of companies operating under the service mark "Farmers Insurance Group of Companies."[1] Defendant Texas Farmers Insurance Company, Defendant Mid-Century Insurance Company of Texas and Defendant Farmers Texas County Mutual Insurance Company have engaged in the illegal

---

[1]     The Farmers Insurance Group of Companies consists of the named defendants, Farmers Insurance Exchange, Farmers Fire Insurance Exchange, Farmers Truck Insurance Exchange, Mid-Century Insurance Company, Farmers New World Life Insurance Company, as well as other domestic stock or mutual companies whose principal businesses are related to the offer or sale of insurance products.

12/03/2001 MON 19:01  [TX/RX NO 5058] ⓩ005

Received 11/26/2002 09:58 in 07:52 on line [6] for AM08402 Printed 11/26/2002 10:11 * Pg 15/27
11/26/2002 10:01 FAX 5122362002        JACKSON WALKER LLP                          ☒015
     DEC 03 '01 19:14 FR DAVIS & DAVIS                    TO 15122362002      P.06/23

practices of unfairly discriminating against Texas consumers in the setting and charging of rates. The

unfair discrimination results from Defendants' utilization of credit information and credit scores in

the application and rating process. This class action arises out of those practices, and includes in the

class all persons who applied for automobile insurance and who, at the time of the application, met

all risk-related underwriting criteria required for insurance by Defendants, but who were (a) charged

a higher rate, (b) provided with less advantageous insurance coverage, or (c) assigned a sub-standard

rating as a result of Defendants' use of credit scores and credit information.

11.    Defendant Texas Farmers Insurance Company, Defendant Mid-Century Insurance Company

of Texas and Defendant Farmers Texas County Mutual Insurance Company have continuously and

systematically used non-risk related underwriting criteria to unfairly discriminate against consumers

in Texas in rates, policy pricing and availability of insurance. Thus, Defendant Texas Farmers

Insurance Company, Defendant Mid-Century Insurance Company of Texas and Defendant Farmers

Texas County Mutual Insurance Company have engaged in a pattern and practice of unfair

discrimination in violation TEX. INS. CODE ANN. art. 21.21-8.

12.    Unfair discrimination in premiums, policy rates or fees, and availability is prohibited by TEX.

INS. CODE ANN. art. 21.21-8. For purposes of this pleading, and the allegations contained herein,

"unfair discrimination" means the definition of "unfair discrimination" contained in TEX. INS. CODE

ANN. art. 21.21-8, § 2.

13.    Defendant Texas Farmers Insurance Company, Defendant Mid-Century Insurance Company

of Texas and Defendant Farmers Texas County Mutual Insurance Company solicit business by

advertising that they offer lower insurance rates for qualified drivers. As part of the application

process, Defendant Texas Farmers Insurance Company, Defendant Mid-Century Insurance Company

12/03/2001 MON 19:01  [TX/RX NO 5056]  ☒006

Received 11/26/2002 09:58 in 07:52 on line [6] for AM08402 Printed 11/26/2002 10:11 * Pg 16/27
11/26/2002 10:01 FAX 5122362002          JACKSON WALKER LLP                                   ☑018
DEC 03 '01 19:14 FR DAVIS & DAVIS                          TO 15122362002          P.07/23

of Texas and Defendant Farmers Texas County Mutual Insurance Company seek permission from applicants to check the credit history of the applicants. Regardless of what company initially accepts the application, after obtaining the credit score of the applicant Defendant Texas Farmers Insurance Company, Defendant Mid-Century Insurance Company of Texas and Defendant Farmers Texas County Mutual Insurance Company place applicants with poor credit scores with Defendant Farmers Texas County Mutual Insurance Company. Other consumers, with average credit scores, are denied ultra-preferred status because they do not have the highest credit scores. For applicants within Defendant Farmers Texas County Mutual Insurance Company, varying rates are charged depending on the consumers Farmers Auto Risk Assessment (FARA) score. Determination of where a consumer will be placed, and at what rate, depends primarily on credit score over all other criteria, including driving record.

14.     Defendant Texas Farmers Insurance Company, Defendant Mid-Century Insurance Company of Texas and Defendant Farmers Texas County Mutual Insurance Company know and understand that unfair discrimination as prohibited by Art. 21.21-8 results from their practice of using credit scores; nonetheless, Defendant Texas Farmers Insurance Company, Defendant Mid-Century Insurance Company of Texas and Defendant Farmers Texas County Mutual Insurance Company incorporated these criteria into their application process. There is no actuarial basis supporting Defendants' use and application of credit scores to their setting of rates for consumers, and, if such basis exists, credit scores are applied and utilized in a manner that results in unfair discrimination.

15.     Therefore, Defendant Texas Farmers Insurance Company, Defendant Mid-Century Insurance Company of Texas and Defendant Farmers Texas County Mutual Insurance Company have violated

12/03/2001 MON 19:01  [TX/RX NO 5056]  ☑007

Received 11/26/2002 09:58 in 07:52 on line [6] for AM08402 Printed 11/26/2002  10:11 * Pg 17/27
11/26/2002 10:02 FAX 5122362002          JACKSON WALKER LLP                        ☒017
     DEC 03 '01 19:15 FR DAVIS & DAVIS                    TO 15122362002          P.08/23

TEX. INS. CODE ANN., art. 21.21-8 by knowingly unfairly discriminating against Texas consumers in the setting and charging of premiums and rates.

## VI.  FACTS RELATING TO CLASS REPRESENTATIVE

16.    Mr. Villanueva applied for a personal automobile policy on April 6, 2000.  He was offered a policy with Defendant Texas Farmers Insurance Company, and paid his application fee based on the quoted rate of $72.00/month.  Approximately two weeks later, Mr. Villanueva was notified that his insurance was being cancelled because of a "risk assessment score" derived from a Trans Union Corporation Consumer Disclosure Request.  The cancellation carried the designation of the "Farmers Insurance Group."  Mr. Villanueva was subsequently notified by a Farmers Insurance Group agent that "Farmers has denied your auto coverage on standard rates. ·. You can go high rates with farmers [sic] . . . ."  Mr. Villanueva apparently had a substandard Farmers' Risk Assessment (FARA) Score, which resulted in him not meeting the criteria to qualify for insurance with Defendant Texas Farmers Insurance Company. Mr. Villanueva subsequently purchased the insurance through Defendant Farmers Texas County Mutual Insurance Company, and his monthly premiums went from $72.00 to $113.00.  After staying with Defendant Farmers Texas County Mutual Insurance Company for approximately four months, Mr. Villanueva found alternative insurance with a different company.

17.    Mr. Villanueva was damaged as a result of the unfair discrimination by Defendant Texas Farmers Insurance Company, Defendant Mid-Century Insurance Company of Texas and Defendant Farmers Texas County Mutual Insurance Company in violation of Art. 21-21.8.  As a result of such damage, Mr. Villanueva is entitled to recover economic damages, court costs, reasonable and necessary attorneys' fees, reasonable and necessary expert witness fees, civil penalty not to exceed $25,000.00, and pre-judgment and post-judgment interest.

12/03/2001 MON 19:01  [TX/RX NO 5056]  ☒008

Received 11/26/2002 09:58 in 07:52 on line [6] for AM08402 Printed 11/26/2002  10:11 * Pg 18/27
11/26/2002 10:02 FAX 5122362002          JACKSON WALKER LLP                          ☑018
DEC 03 '01 19:15 FR DAVIS & DAVIS                    TO 15122362002        P.09/23

## VII.  CONDITIONS PRECEDENT

18.    All conditions precedent to filing this suit have been complied with or are excused.

## VIII.  AGENCY AND LIABILITY OF REPRESENTATIVES AND AGENTS

19.    Whenever it is stated in this Petition that Defendants did any act, the statement is meant to include any and all representatives, agents, employees or other persons acting on behalf of Defendant Texas Farmers Insurance Company, Defendant Mid-Century Insurance Company of Texas and Defendant Farmers Texas County Mutual Insurance Company, whether acting through authority, apparent authority or otherwise.

## IX.  CONSPIRACY TO VIOLATE ARTICLES 21-21.8

20.    At all times relevant hereto, the actions of Defendants were unlawful, and in violation of Art. 21-21.8. Defendant Texas Farmers Insurance Company, Defendant Mid-Century Insurance Company of Texas and Defendant Farmers Texas County Mutual Insurance Company acted in concert to unfairly discriminate against Plaintiff and the members of the class.

## X.  CLASS ACTION ALLEGATIONS

21.    Plaintiff brings this suit on behalf of himself, and on behalf of all those similarly situated, and as representative of a class as defined by TEX. R. CIV. P. 42. The Court should enter an order certifying a Plaintiff class of:

> All individual persons residing in the State of Texas who purchased, renewed, or continued automobile insurance coverage with Defendants between October 1999 and the present and who paid a higher rate, or who paid a higher premium, as a result of Defendants' use of FARA scores.

22.    The proposed Class meets the prerequisites of TEX. R. CIV. P. 42. Rule 42 provides that a class action may be brought when the question is one of a common or general interest of many

12/03/2001 MON 19:01  [TX/RX NO 5056]  ☑009

Received 11/26/2002 09:58 in 07:52 on line [6] for AM08402 Printed 11/26/2002  10:11 * Pg 19/27
11/26/2002 10:02 FAX 5122362002          JACKSON WALKER LLP                                    ☒019
DEC 03 '01 19:15 FR DAVIS & DAVIS                        TO 15122362002          P.10/23

persons, or when the parties are numerous, and it is impractical to bring them all before the court.

This action is properly maintainable as a class action for the reasons set forth below.

**A.  Numerosity**

23.    The Class of persons for whose benefit this action is brought is so numerous that joinder of

all Class Members in a single action is impractical.  The exact number of Class Members can only be

discovered through discovery, because such information is in the exclusive control of Defendants.

However, on information and belief, and based on the nature of the activities alleged herein, Plaintiff

believes the Class numbers at least in the thousands and is geographically dispersed throughout the

State of Texas.  The names and addresses of Class Members are readily obtainable from Defendants

and their agents and on information and belief are maintained in the computer database of Defendants

and are easily retrievable.  Class treatment is particularly appropriate because Defendants conducted

a business that reached from this jurisdiction into the far corners of the State and elsewhere.

**B.  Adequacy**

24.    Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel

competent and experienced in class action litigation.  Plaintiff understands and appreciates his duties

to the entire Class under TEX. R. CIV. P. 42 and is committed to vigorously protecting the rights of

absent Class Members.

**C.  Typicality**

25.    Plaintiff is asserting claims that are typical of the claims of the entire Class.  Plaintiff claims

only that he was unfairly discriminated against based on Defendants' use of credit scoring.  All claims

alleged on behalf of the Class flow from this conduct as well.  Further, no known conflict exists

between Plaintiff and Class Members.

Page 8 of 16

Received 11/26/2002 09:58 in 07:52 on line [6] for AM08402 Printed 11/26/2002 10:11 * Pg 20/27
11/26/2002 10:02 FAX 5122362002        JACKSON WALKER LLP                                    ☒020
DEC 03 '01 19:15 FR DAVIS & DAVIS                    TO 15122362002        P.11/23

**D.    Commonality and Predominance**

26.    There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. Questions of law and fact arising out of Defendants' conduct are common to all Class Members, and such common issues of law and fact predominate over any questions affecting only individual members of the Class. Common issues of law and fact include, but are not limited to, the following:

    (i)    Whether there is a statistical or actuarial link between Defendants' insureds' poor credit history and bad driving or greater claim risk to Defendants;

    (ii)    Whether Defendants used an insureds' credit history in determining such driver's eligibility for insurance or rating category;

    (iii)    Whether there is a statistical or actuarial link between credit scores and bad driving or greater claims history;

    (iv)    Whether Defendants unfairly discriminated against Plaintiff and Class Members within the meaning of art. 21-21.8;

    (v)    Whether Plaintiff and Class Members have sustained damages and the proper measure of such damages.

**E.    Superiority**

27.    A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted herein given that, among other things:

    (i)    Significant economies of time, effort, and expense will inure to the benefit of the Court and the parties in litigating the common issues on a class-wide instead of a repetitive individual basis;

    (ii)    The size of most Class Members' individual damage claims are too small to make individual litigation an economically viable alternative, such that few Class Members have any interest in individually controlling the prosecution of a separate action;

    (iii)    Without the representation provided by Plaintiff herein, few, if any, Class Members will receive legal representation or redress for their injuries;

12/03/2001 MON 19:01  [TX/RX NO 5056]  ☒011

Received 11/26/2002 09:58 in 07:52 on line [6] for AM08402 Printed 11/26/2002  10:11 * Pg 21/27
11/26/2002 10:03 FAX 5122362002          JACKSON WALKER LLP                                  ☑021
      DEC 03 '01 19:16 FR DAVIS & DAVIS                    TO 15122362002         P.12/23

(iv)   Class treatment is required for optimal deterrence;

(v)   Despite the relatively small size of many individual Class Members' claims, their aggregate volume, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost effective basis, especially when compared with repetitive individual litigation; and

(vi)   No unusual difficulties are likely to be encountered in the management of this class action;

(vii)   Further, Plaintiff and Class Members have all suffered irreparable harm and damages as a result of Defendants' unlawful and wrongful conduct.  Absent a class action, Defendants will likely retain millions of dollars received as a result of their wrongdoing, and their illegal, unfair, discriminatory, false and misleading conduct shall go unremedied and uncorrected.  Absent a class action, the Class Members will not receive restitution, will continue to suffer losses, and Defendants will be allowed to retain the proceeds of their ill-gotten gains.

## XI. PLAINTIFF'S AND CLASS MEMBERS' CAUSES OF ACTION

**A.   Violation of TEX. INS. CODE ANN. art. 21-21.8.**

28.   Plaintiff and members of the class repeat and re-allege the allegations contained in the paragraphs above as if fully set forth herein.

29.   For purposes of this cause of action, Plaintiff was initially insured by Defendant Texas Farmers Insurance Company.  He was then placed into Defendant Farmers Texas County Mutual Insurance Company based on his credit score.  The use of a credit score is intended to discriminate against consumers with poor credit scores.  For purposes of this cause of action by Plaintiff, Defendant Texas Farmers Insurance Company and Defendant Farmers Texas County Mutual Insurance Company acted in concert to unfairly discriminate against Plaintiff and members of the Class in violation of art. 21.21-8.

30.   On information and belief, members of the Class were insured by or made application to Defendant Texas Farmers Insurance Company and Defendant Mid-Century Insurance Company of

12/03/2001 MON 18:01  [TX/RX NO 5056]  ☑012

Received 11/26/2002 09:58 in 07:52 on line [6] for AM08402 Printed 11/26/2002 10:11 * Pg 22/27
11/26/2002 10:03 FAX 5122362002    JACKSON WALKER LLP    ☑022

DEC 03 '01 19:16 FR DAVIS & DAVIS    TO 15122362002    P.13/23

Texas. Class Members were then placed into companies and charged disparate rates based on their credit scores. For purposes of this cause of action by Class Members, Defendant Texas Farmers Insurance Company, Defendant Mid-Century Insurance Company of Texas and Defendant Farmers Texas County Mutual Insurance Company acted in concert to unfairly discriminate against Class Members in violation of art. 21-21.8.

31.    In selling, marketing and/or distributing these insurance policies, Defendant Texas Farmers Insurance Company, Defendant Mid-Century Insurance Company of Texas and Defendant Farmers Texas County Mutual Insurance Company have engaged in unfair discrimination in the business of insurance in violation of TEX. INS. CODE ANN. art. 21-21.8. Article 21.21-8 prohibits insurers from unfairly discriminating against consumers by making or permitting any unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of premium, policy fees, or rates charged for any policy or contract of insurance or in the benefits payable thereunder, or in any other manner.

32.    Defendant Texas Farmers Insurance Company, Defendant Mid-Century Insurance Company of Texas and Defendant Farmers Texas County Mutual Insurance Company utilized their various, affiliated corporate entities to solicit applicants, and then, through the use of credit scores, knowingly unfairly discriminated against them in the application process and in the setting and charging of rates. Defendants knew prior to initiating the use of credit scores that such scores would result in unfair discrimination in violation of Art. 21.21-8.

33.    Defendant Texas Farmers Insurance Company, Defendant Mid-Century Insurance Company of Texas and Defendant Farmers Texas County Mutual Insurance Company knowingly discriminated against Plaintiff and the Class. Defendant Texas Farmers Insurance Company, Defendant Mid-

12/03/2001 MON 19:01  [TX/RX NO 5056] ☑013

Received 11/26/2002 09:58 in 07:52 on line [6] for AM08402 Printed 11/26/2002  10:11 * Pg 23/27
11/26/2002 10:03 FAX 5122362002          JACKSON WALKER LLP                                    ☑023

      DEC 03 '01 19:16 FR DAVIS & DAVIS                    TO 15122362002        P.14/23

Century Insurance Company of Texas and Defendant Farmers Texas County Mutual Insurance

Company were aware that these underwriting guidelines were not based upon risk, and moreover,

knew that their concerted used of these arbitrary guidelines resulted in unfair discrimination and

higher rates for consumers with poor credit scores. Defendants knowingly unfairly discriminated

against Plaintiff and Class Members and violated TEX. INS. CODE ANN. art. 21.21-8.

34.    Plaintiff and Class Members were harmed by Defendants' conduct.

**B.    Damages for Violation of TEX. INS. CODE ANN. art. 21.21-8**

35.    **Economic Damages.**  As a result of the actions of Defendant Texas Farmers Insurance

Company, Defendant Mid-Century Insurance Company of Texas and Defendant Farmers Texas

County Mutual Insurance Company actions, Plaintiff and Class Members suffered economic damages.

Plaintiff and Class request recovery of all such economic damages. At this time, Plaintiff and Class

estimate that each person's damages will be approximately $40 to $100 per month, the difference

between the rate that should be charged, and the rate that is actually being charged to the consumers

due to the rating principles being utilized by Defendant Texas Farmers Insurance Company,

Defendant Mid-Century Insurance Company of Texas and Defendant Farmers Texas County Mutual

Insurance Company.  Mr. Villanueva's specific damages are $41.00 per month.  For all class

members, such information is in the custody and control of Defendant Texas Farmers Insurance

Company, Defendant Mid-Century Insurance Company of Texas and Defendant Farmers Texas

County Mutual Insurance Company.  Requesting Plaintiff to specify the maximum amount of

economic damages is impractical at this time due to the lack of discovery that has been conducted

in this case. Plaintiff will amend when sufficient discovery has been completed. However, in order

to satisfy Defendants' Special Exceptions, Plaintiff and the Class seek damages not to exceed $10,000

12/03/2001 MON 19:01  [TX/RX NO 5056]  ☑014

Received 11/26/2002 09:58 in 07:52 on line [6] for AM08402 Printed 11/26/2002  10:11 * Pg 24/27
11/26/2002 10:04 FAX 5122362002    JACKSON WALKER LLP                             ☒024

DEC 03 '01 19:17 FR DAVIS & DAVIS                    TO 15122362002        P.15/23

per claimant, exclusive of costs, attorneys' fees, court costs, expert witness costs, and statutory

penalty, and pre- and post-judgment interest.

36.    <u>Court Costs</u>.  Plaintiff, individually and on behalf of the Class, requests the recovery of all

court costs and expenses to the extent allowed by TEX. INS. CODE art. 21.21-8 3(b)(1).

37.    <u>Attorneys' Fees</u>.  Plaintiff, individually and on behalf of the Class, requests the recovery of

all reasonable and necessary attorneys fees required to prevail on the applicable cause(s) of action as

allowed by TEX. INS. CODE art. 21.21-8 § 3(b)(1).

38.    <u>Expert Witness Fees</u>.  Plaintiff, individually and on behalf of the Class, requests the recovery

of all reasonable and necessary expert witness fees required to prevail on the applicable cause(s) of

action as allowed by TEX. INS. CODE art. 21.21-8 § 3(b)(1).

39.    <u>Civil Penalties</u>.  Plaintiffs, individually and on behalf of the Class, asks this Court to award

civil penalties in the amount of $25,000.00 per claimant for the Defendants knowing behavior as

permitted by TEX. INS. CODE art. 21.21-8 § 3(b)(1).

40.    <u>Pre-judgment and Post-judgment Interest</u>.  Plaintiffs, individually and on behalf of the

Class, request both pre-judgment and post-judgment interest at the maximum rate allowed by law in

the State of Texas.

## XII. JURY DEMAND

41.    Plaintiff and Class Members requested a trial by jury and the Original Petition, and tendered

the appropriate fee when the lawsuit was initiated.

12/03/2001 MON 19:01  [TX/RX NO 5056] ☒015

Received 11/26/2002 09:58 in 07:52 on line [6] for AM08402 Printed 11/26/2002 10:11 * Pg 25/27
11/26/2002 10:04 FAX 5122362002          JACKSON WALKER LLP                                    ☑025

DEC 03 '01 19:17 FR DAVIS & DAVIS                        TO 15122362002          P.16/23

## XIII· PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff individually and on behalf of the Class

Members respectfully requests that Defendants be cited to appear and answer this Petition and that

upon final jury trial Plaintiff and Class Members recover judgment from the Defendant Texas Farmers

Insurance Company, Defendant Mid-Century Insurance Company of Texas and Defendant Farmers

Texas County Mutual Insurance Company for the damages set forth above, court costs, attorneys'

fees, expert witness fees, statutory penalties, and such other relief to which they may show themselves

to be justly entitled.

Respectfully submitted,

DAVIS & DAVIS

By:

R. Martin Weber, Jr.
State Bar No. 00791895
John A. Davis, Jr.
State Bar No. 05512300
Steven R. Davis
State Bar. No. 00789947
5847 San Felipe, Ste. 3275
Houston, Texas 77057
713-781-5200 (phone)
713-781-2235 (fax)

BURROW & PARROTT, LLP·

David Burrow
State Bar No. 03468000
Alice Parrot
State Bar No. 20210800
1301 McKinney, Suite 3500
Houston, Texas 77010-3092
713-222-6333 (phone)
713-650-6333 (fax)

Page 14 of 16

Received 11/26/2002 09:58 ... 07:52 on line [6] for AM08402 Printed 11/26/2002 10:11 * Pg 26/27
11/26/2002 10:04 FAX 5122362002              JACKSON WALKER LLP                                    ☑026

DEC 03 '01 19:17 FR DAVIS & DAVIS                        TO 15122362002        P.17/23

MALONEY, JEFFERSON & DUGAS

Pat Maloney, Jr.
State Bar No. 12887300
The Maloney Bldg.
239 East Commerce Street
San Antonio, Texas 78205
210-226-8888 (phone)
210-222-8477 (fax)

MALONEY, JEFFERSON & DUGAS

Dwight Jefferson
State Bar No. 10605600
12 Greenway Plaza, Suite 1550
Houston, Texas 77046
713-993-0399 (phone)
713-993-0553 (fax)

CACHEAUX,   CAVAZOS,   NEWTON,
MARTIN & CUKJATI, LLP

Curt L. Cukjati
State Bar No. 05207540
Trey Martin
State Bar No. 13108800
Conry Davidson
State Bar No. 00793586
333 Convent Street
San Antonio, Texas 78205
210-223-2627 (phone)
210-223-5052 (fax)

SKEPNEK LAW FIRM, P.A.

William J. Skepnek
State Bar No. 00790054 (Texas)
900 Massachusetts, Suite 601
Lawrence, Kansas 66044
785-331-0300 (phone)
785-331-0303 (fax)

12/03/2001 MON 19:01  [TX/RX NO 5056] ☑017

Received 11/26/2002 09:58 in 07:52 on line [6] for AM08402 Printed 11/26/2002 10:11 * Pg 27/27
11/26/2002 10:04 FAX 5122362002          JACKSON WALKER LLP                                    ☒027

DEC 03 '01 19:17 FR DAVIS & DAVIS                        TO 15122362002        P.18/23

**LAW OFFICES OF STEVEN M. SMOOT**

Steven M. Smoot
State Bar. No. 18774300
5847 San Felipe, Suite 3275
Houston, Texas 77057
713-266-1113 (phone)
713-781-2235 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Third Amended Petition was forwarded to Defendants by and through the below-listed counsel by facsimile transmission on December 3, 2001:

Thomas T. Rogers
Peter Hagerman
Jackson Walker L.L.P.
100 Congress Avenue, Suite 1100
Austin, Texas 78701

R. Martin Weber, Jr.

Page 16 of 16

NO. GN 200208

| | | |
|---|---|---|
| MICHAEL PALADINO,<br>individually and on behalf of all others<br>similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FARMERS INSURANCE EXCHANGE,<br>and FIRE INSURANCE EXCHANGE<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT OF<br><br><br><br><br>TRAVIS COUNTY, TEXAS<br><br><br><br><br>261st JUDICIAL DISTRICT |

## PLAINTIFF'S SECOND AMENDED
## CLASS ACTION PETITION

TO THE HONORABLE COURT:

MICHAEL PALADINO, on behalf of himself and all others similarly situated ("Plaintiff"), brings this action as a class action against Defendants FARMERS INSURANCE EXCHANGE and FIRE INSURANCE EXCHANGE (collectively "FARMERS") and in support thereof would respectfully show the Court the following:

### DISCOVERY LEVEL 3

1.    Discovery is intended to be conducted under Level 3 of TEX. R. CIV. P. 190.

### PARTIES

2.    Plaintiff is an individual residing in Kerrville, Kerr County, Texas.

3.    Defendant **FARMERS INSURANCE EXCHANGE** is a reciprocal exchange that provides homeowners' insurance in the State of Texas, with a principal office in Travis

**EXHIBIT C**

County, Texas. FARMERS INSURANCE EXCHANGE has answered and is properly before the court.

4.      Defendant **FIRE INSURANCE EXCHANGE** is a reciprocal exchange that provides homeowners' insurance in the State of Texas, with a principal office in Travis County, Texas. FIRE INSURANCE EXCHANGE has answered and is properly before the court.

## VENUE

5.      Venue is proper in Travis County under TEX. INS. CODE art. 21.21-8 § 3(a).

## FACTS

6.      Plaintiff has entered into a homeowners insurance policy contract with FARMERS INSURANCE EXCHANGE.    Within the past twelve months, FARMERS INSURANCE EXCHANGE charged Plaintiff a premium under this policy that was improperly priced because of a faulty model utilizing credit scoring. FARMERS INSURANCE EXCHANGE and FIRE INSURANCE EXCHANGE have likewise charged premiums within the past twelve months to many Texas policyholders that were increased because of a faulty pricing model utilizing credit scoring, and FARMERS intends to use credit scoring in the future to calculate premiums for Texas policyholders in the Exchanges. Credit scoring classifies policyholders in accordance with published credit reports that are often incorrect or outdated.  Policyholders with less favorable credit ratings are placed in classifications resulting in higher initial or renewal premiums.

2

7.    FARMERS unfairly utilizes credit scoring in its underwriting practices to determine into which of the Exchanges a current or prospective policyholder will be insured. A policyholder's premium is affected by the Exchange into which he or she is placed.

8.    The practice of credit scoring employed by FARMERS to increase the premiums paid by Plaintiff and other Texas policyholders either directly or due to placement of insureds within a particular exchange constitutes the "making" of an "unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of premium" charged for homeowners' insurance, all within the meaning of TEX. INS. CODE art. 21.21-8 § 2.

9.    Plaintiff has sustained economic damages as a result of the credit scoring policy of FARMERS for calculating initial or renewal premiums directly or due to placement of the Plaintiff within a particular exchange for homeowners' insurance.

## CLASS ACTION

10.    Pursuant to Rule 42 of the Texas Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and all others similarly situated, as representatives of the following class:

> all persons in the State of Texas who are currently insured or who become insured
> in the future under the terms of a homeowners' policy issued by FARMERS
> INSURANCE EXCHANGE or FIRE INSURANCE EXCHANGE and whose
> credit score has resulted in an increased renewal premium, either directly or due
> to placement within a particular exchange, in the last twelve months or will result
> in an increased renewal or initial premium in the future, either directly or due to

3

placement within a particular exchange, for that person's homeowner's insurance policy issued by FARMERS INSURANCE EXCHANGE or FIRE INSURANCE EXCHANGE.

For the reasons alleged below, this action satisfies the requirements of Civil Procedure Rule 42 for the maintenance of such a class action.

## Numerosity

11.    The persons in the class are so numerous that joinder of all members is impracticable.  Although the exact number of class members is unknown to Plaintiff at this time, Plaintiff is informed and believes that the class includes tens of thousands of present and future FIRE INSURANCE EXCHANGE and FARMERS INSURANCE EXCHANGE policyholders.  The identity of class members can be discerned objectively from the records maintained and possessed by FIRE INSURANCE EXCHANGE and FARMERS INSURANCE EXCHANGE.

## Common Questions of Law and Fact

12.    There are common questions of law and fact affecting the class.  Specifically, common questions include whether credit scoring constitutes the making of an unfair discrimination among individuals of the same class and of essentially the same hazard in the amount of homeowner's premium and whether the charging of different premiums on the basis of credit scoring is based upon sound actuarial principles.

4

## Typicality

13.    The claims of Plaintiff are typical of the claims of the rest of the class in that all members of the class have sustained or will sustain harm as a result of the use by FARMERS of credit scoring to increase initial or renewal premiums for homeowners' insurance.

## Adequate Representation

14.    Plaintiff will fairly and adequately represent the interests of the class.  Plaintiff is a member of the putative class.  Plaintiff has expressed interest in representing the class. Plaintiff has arranged for the payment of the costs of notice and litigation.  Plaintiff has hired the undersigned law firm, whose attorneys collectively have extensive experience in class action litigation in general and insurance class action litigation in particular.  Plaintiff has no interests adverse to other members of the class.  FARMERS' credit scoring practices  have harmed and/or threatened to harm Plaintiff and all members of the class in the same way.

## Injunctive Relief is Appropriate

15.    FARMERS has implemented their premium calculations based on credit scoring in a manner that is generally applicable to the class, thereby making appropriate final injunctive relief prohibiting such practices with respect to the class as a whole.

## CAUSE OF ACTION

16.    FARMERS' credit scoring practices violate Tex. Ins. Code art. 21.21-8 § 2. Pursuant to Tex. Ins. Code art. 21.21-8 § 3(b)(2), Plaintiff and the class as a whole are entitled to an order enjoining FIRE INSURNACE EXCHANGE and FARMERS INSURANCE EXCHANGE, from using credit scoring to either increase initial or renewal policy premiums for homeowner's insurance or the placement of insureds within a particular

5

exchange and to an order enjoining FIRE INSURANCE EXCHANGE and FARMERS INSURANCE EXCHANGE, to rescind past increases based on credit scoring and thereby to refund all past premium increases based on credit scoring. Pursuant to TEX. INS. CODE art. 21.21-8 § 3(b)(2), Plaintiff and the class as a whole are entitled to court costs and attorneys' fees, including any reasonable and necessary expert witness fees. Also pursuant to TEX. INS. CODE art. 21.21-8 § 3 (b)(2), Plaintiff and each member of the class are entitled to a civil penalty in the amount of not more than $25,000 per class member for knowingly remitting acts prohibited by this article.

WHEREFORE, Plaintiff MICHAEL PALADINO, on behalf of himself and all others similarly situated, respectfully prays for the following relief:

a. That, pursuant to Civil Procedure Rule 42(b)(2), the Court certify the class as alleged in this petition, and appropriate subclasses, if any.

b. That the Court issue an injunction enjoining FARMERS INSURANCE EXCHANGE and FIRE INSURANCE EXCHANGE from the use of credit scoring to increase premiums for homeowners' insurance either directly or as a result of placement of insureds within a particular exchange and further ordering FARMERS INSURANCE EXCHANGE and FIRE INSURANCE EXCHANGE to refund all increases in homeowners' premiums charged between January 22, 2002, and the date of judgment in this action, together with prejudgment and postjudgment interest on such amounts.

c. That the Court award Plaintiff and the class members costs and attorneys' fees, including any reasonable and necessary expert witness fees.

6

d.    That the Court award Plaintiff and each class member a civil penalty of $25,000.

e.    That the Court award Plaintiff and the class members such other and further relief to which they may show themselves entitled.

Respectfully submitted,

BECK, REDDEN & SECREST
A Registered Limited Liability Partnership

By    *W. Curt Webb*

JOE W. REDDEN, JR.
State Bar No. 16660600
W. CURT WEBB
State Bar No. 21035900
B.D. DANIEL
State Bar No. 05362200
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone:        (713) 951-3700
Telecopier:       (713) 951-3720

and

*Steven L. Clack*

STEVEN L. CLACK
State Bar No. 04257500
820 Main Street, Suite 200
Kerrville, TX 78029-0952
Telephone:        (830) 895-0477
Telecopier:       (830) 895-0443

ATTORNEYS FOR PLAINTIFF MICHAEL PALADINO

7

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded via certified mail, return receipt requested to Mr. Layne E. Kruse, Fulbright & Jaworski, L.L.P., 1301 McKinney, Suite 5100, Houston, TX 77010-3095, by placing same in the United States mail, postage pre-paid, on this the 27th day of November, 2002.

CURT WEBB

8

NO. GN 200207

| | | |
|---|---|---|
| MICHAEL PALADINO, | § | IN THE DISTRICT COURT OF |
| individually and on behalf of all others | § | |
| similarly situated, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| MID-CENTURY INSURANCE COMPANY | § | |
| OF TEXAS, TEXAS FARMERS INSURANCE | § | |
| FARMERS TEXAS COUNTY MUTUAL | § | |
| INSURANCE COMPANY and FARMERS | § | |
| GROUP, INC. | § | |
| | § | |
| Defendants. | § | |
| | § | 250ᵗʰ JUDICIAL DISTRICT |

## PLAINTIFF'S FIRST AMENDED
## CLASS ACTION PETITION

TO THE HONORABLE COURT:

MICHAEL PALADINO, on behalf of himself and all others similarly situated ("Plaintiff"), brings this action as a class action against Defendants MID-CENTURY INSURANCE COMPANY OF TEXAS, ("MID-CENTURY"), TEXAS FARMERS INSURANCE COMPANY ("TEXAS FARMERS"), FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY ("FARMERS TEXAS COUNTY MUTUAL"), and FARMERS GROUP, INC. ("FARMERS GROUP") and in support thereof would respectfully show the Court the following:

### DISCOVERY LEVEL 3

1.      Discovery is intended to be conducted under Level 3 of TEX. R. CIV. P. 190.

683.00001/161375.01

RECEIVED
SEP 26

**EXHIBIT D**

## PARTIES

2.    Plaintiff is an individual residing in Kerrville, Kerr County, Texas.

3.    Defendant MID-CENTURY INSURANCE COMPANY, INC. is a reciprocal exchange that provides auto insurance in the State of Texas, with a principal office in Williamson County, Texas. MID-CENTURY has answered and is properly before the Court.

4.    Defendant TEXAS FARMERS INSURANCE COMPANY is a reciprocal exchange that provides auto insurance in the State of Texas, with a principal office in Williamson County, Texas. TEXAS FARMERS has answered and is properly before the Court.

5.    Defendant FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY is a county mutual association that provides auto insurance in the State of Texas, with a principal place of business in Williamson County, Texas. FARMERS TEXAS COUNTY MUTUAL has answered and is properly before the Court.

6.    Defendant FARMERS GROUP, INC. is a Nevada corporation which maintains its principal place of business at 4680 Wilshire Boulevard, Los Angeles, California 90010. FARMERS GROUP, INC. serves as the sole manager of all underwriting, accounting, and policy services for MID-CENTURY, TEXAS FARMERS, and FARMERS TEXAS COUNTY MUTUAL. FARMERS GROUP, INC. may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service pursuant to TEX. CIV. PRAC. & REM. CODE §71.044. Defendant does not have a registered agent for service of process in Texas and this lawsuit arises out of Defendant's business in Texas.

2

## VENUE

7.     Venue is proper in Travis County under TEX. INS. CODE art. 21.21-8 § 3(a).

## FACTS

8.     MID-CENTURY and TEXAS FARMERS (collectively the "Exchanges") are reciprocal interinsurance exchanges. FARMERS GROUP, INC. serves as the sole provider of management services, including underwriting, accounting, and policy services, to the Exchanges and FARMERS TEXAS COUNTY MUTUAL ("the mutual company"). In return for the management services, FARMERS GROUP, INC. earns a management fee.

9.     FARMERS GROUP, as sole manager of the Exchanges, has a fiduciary duty to policyholders in the Exchanges and the mutual company of utmost good faith, fair dealing, honest performance and strict accountability.    Plaintiff is a policy holder within one of the Exchanges.    FARMERS GROUP failed to notify plaintiff or any other policyholder in the Exchanges and the mutual company of the following: 1) that the decision to enter into a management-fee agreement based on a percentage of premiums collected benefits FARMERS GROUP to the detriment of the Exchanges, the mutual company, and the policyholders; 2) what the terms of the management fee agreement are; and 3) that FARMERS GROUP is making more money through management fees as premiums increase.

10.     Plaintiff has entered into an auto insurance policy contract with MID-CENTURY.  Within the past twelve months, MID-CENTURY charged Plaintiff a premium under this policy that was improperly priced because of a faulty model utilizing credit scoring. Plaintiff qualifies under FARMERS GROUP's underwriting guidelines for placement within

3

FARMERS TEXAS COUNTY MUTUAL. Placement within FARMERS TEXAS COUNTY MUTUAL would result in a substantial reduction in the amount of premium charged the Plaintiff. Instead, FARMERS GROUP has continued to over-charge the Plaintiff and refuses to allow Plaintiff to move his policy from MID-CENTURY to FARMERS TEXAS COUNTY MUTUAL.

11.    Within the past twelve months, FARMERS GROUP, acting on behalf of MID-CENTURY, TEXAS FARMERS and FARMERS TEXAS COUNTY MUTUAL have likewise charged premiums to many Texas policyholders that were increased because of credit scoring, and FARMERS GROUP, acting on behalf of MID-CENTURY, TEXAS FARMERS and FARMERS TEXAS COUNTY MUTUAL, as well as itself, intends to use credit scoring in the future to calculate premiums for Texas policyholders in the Exchanges and the mutual company. Credit scoring classifies policyholders in accordance with published credit reports that are often incorrect and outdated. Policyholders with less favorable credit ratings are placed in classifications resulting in higher initial or renewal premiums.

12.    FARMERS GROUP, acting on behalf of MID-CENTURY, TEXAS FARMERS and FARMERS TEXAS COUNTY MUTUAL, as well as itself, unfairly utilize credit scoring in its underwriting practices to determine into which of the Exchanges or the mutual company a current or prospective policyholder will be insured. A policyholder's premium is affected by the Exchange or the mutual company into which he or she is placed.

13.    The practice of credit scoring employed by FARMERS GROUP, on behalf of MID-CENTURY, TEXAS FARMERS and FARMERS TEXAS COUNTY MUTUAL as well as itself, to increase the premiums paid by Plaintiff and other Texas policyholders either

4

directly or as a result of placement of insureds within a particular exchange or mutual company constitutes the "making" of an "unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of premium" charged for auto insurance, all within the meaning of TEX. INS. CODE art. 21.21-8 § 2.

14.     Plaintiff has sustained economic damages as a result of the credit scoring policy insurance employed by FARMERS GROUP, on behalf of MID-CENTURY, TEXAS FARMERS and FARMERS TEXAS COUNTY MUTUAL as well as itself for calculating initial or renewal premiums for auto insurance, and as result of placement of plaintiff within a particular exchange or mutual company.

## CLASS ACTION

15.     Pursuant to Rule 42 of the Texas Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and all others similarly situated, as representatives of the following class: all persons in the State of Texas who are currently insured or who become insured in the future under the terms of a auto policy issued by MID-CENTURY, TEXAS FARMERS and FARMERS TEXAS COUNTY MUTUAL which are managed by FARMERS GROUP and whose credit score has resulted in an increased renewal premium, either directly or due to placement within a particular exchange or mutual company, in the last twelve months or will result in an increased renewal or initial premium in the future, either directly or due to placement within a particular exchange or mutual company, for that person's auto insurance policy issued by MID-CENTURY, TEXAS FARMERS and FARMERS TEXAS COUNTY MUTUAL, which are managed by FARMERS GROUP. For the reasons alleged below, this

5

action satisfies the requirements of Civil Procedure Rule 42 for the maintenance of such a class action.

## Numerosity

16.    The persons in the class are so numerous that joinder of all members is impracticable.  Although the exact number of class members is unknown to Plaintiff at this time, Plaintiff is informed and believes that the class includes tens of thousands of present and future MID-CENTURY, TEXAS FARMERS and FARMERS TEXAS COUNTY MUTUAL policyholders.  The identity of class members can be discerned objectively from the records maintained and possessed by FARMERS GROUP and/or MID-CENTURY, TEXAS FARMERS and FARMERS TEXAS COUNTY MUTUAL or their representatives.

## Common Questions of Law and Fact

17.    There are common questions of law and fact affecting the class.  Specifically, common questions include whether credit scoring constitutes the making of an unfair discrimination among individuals of the same class and of essentially the same hazard in the amount of auto premium and whether the charging of different premiums on the basis of credit scoring is based upon sound actuarial principles.

## Typicality

18.    The claims of Plaintiff are typical of the claims of the rest of the class in that all members of the class have sustained or will sustain harm as a result of the use by FARMERS GROUP on behalf of MID-CENTURY, TEXAS FARMERS and FARMERS TEXAS

6

COUNTY MUTUAL of credit scoring to increase initial or renewal premiums for auto insurance.

### Adequate Representation

19.    Plaintiff will fairly and adequately represent the interests of the class. Plaintiff is a member of the putative class. Plaintiff has expressed interest in representing the class. Plaintiff has arranged for the payment of the costs of notice and litigation. Plaintiff has hired the undersigned law firm, whose attorneys collectively have extensive experience in class action litigation in general and insurance class action litigation in particular. Plaintiff has no interests adverse to other members of the class. FARMERS GROUP's credit scoring practices have harmed and/or threatened to harm Plaintiff and all members of the class in the same way.

### Injunctive Relief is Appropriate

20.    FARMERS GROUP, acting as manager, implemented their premium calculations under a joint plan on behalf of itself, the exchanges and the mutual company based on credit scoring in a manner that is generally applicable to the class, thereby making appropriate final injunctive relief prohibiting such practices with respect to the class as a whole.

### CAUSE OF ACTION

21.    FARMERS GROUP's credit scoring practices on behalf of itself and MID-CENTURY, TEXAS FARMERS and FARMERS TEXAS COUNTY violate TEX. INS. CODE art. 21.21-8 § 2. Pursuant to TEX. INS. CODE art. 21.21-8 § 3(b)(2), Plaintiff and the class as a whole are entitled to an order enjoining FARMERS GROUP,

7

on behalf of itself and MID-CENTURY, TEXAS FARMERS and FARMERS TEXAS COUNTY MUTUAL from using credit scoring to increase initial or renewal policy including placement of insureds within particular exchanges or the mutual company, and for an order enjoining MID-CENTURY, TEXAS FARMERS and FARMERS TEXAS COUNTY MUTUAL to rescind past increases based on credit scoring and thereby to refund all past premium increases based on credit scoring. Pursuant to TEX. INS. CODE art. 21.21-8 § 3(b)(2), Plaintiff and the class as a whole are entitled to court costs and attorneys' fees, including any reasonable and necessary expert witness fees. Also pursuant to TEX. INS. CODE Art. 21.21-8 § 3(b)(2), Plaintiff and each member of the class are entitled to a civil penalty in the amount of not more than $25,000 per class member for FARMERS GROUP on behalf of MID CENTURY, TEXAS FARMERS, and FARMERS TEXAS COUNTY MUTUAL, knowingly committing acts prohibited by this article.

22.    FARMER GROUP's failure to adequately disclose its management-fee arrangement constitutes misleading, deceptive acts or practices in the business of insurance under TEX. INS. CODE art. 21.21 §4(2) and violates §17.46 of the DTPA.

WHEREFORE, Plaintiff MICHAEL PALADINO, on behalf of himself and all others similarly situated, respectfully prays for the following relief:

a.    That, pursuant to Civil Procedure Rule 42(b)(2), the Court certify the class as alleged in this petition, and appropriate subclasses, if any.

b.    That the Court issue an injunction enjoining FARMERS GROUP, INC on behalf of itself and MID-CENTURY, TEXAS FARMERS and FARMERS

8

TEXAS COUNTY MUTUAL from the use of credit scoring to increase premiums for auto insurance either directly or as a result of placement of insureds within a particular exchange or mutual company, and further ordering MID-CENTURY, TEXAS FARMERS and FARMERS TEXAS COUNTY MUTUAL to refund all increases in auto premiums charged between January 22, 2002, and the date of judgment in this action, together with prejudgment and postjudgment interest on such amounts.

c.   That the Court award Plaintiff and the class members costs and attorneys' fees, including any reasonable and necessary expert witness fees.

d.   That the Court award Plaintiff and each class member a civil penalty of $25,000.

e.   That the Court award Plaintiff and the class members such other and further relief to which they may show themselves entitled.

Respectfully submitted,

BECK, REDDEN & SECREST
A Registered Limited Liability Partnership

By _____
JOE W. REDDEN, JR. by permission
State Bar No. 16660600
W. CURT WEBB
State Bar No. 21035900
B.D. DANIEL
State Bar No. 05362200
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone:      (713) 951-3700
Telecopier:     (713) 951-3720

9

and

_Steve Clack by permission_
STEVEN L. CLACK
State Bar No. 04257500
820 Main Street, Suite 200
Kerrville, TX 78029-0952
Telephone:              (830) 895-0477
Telecopier:             (830) 895-0443

ATTORNEYS FOR PLAINTIFF MICHAEL
PALADINO

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded via certified mail, return receipt requested to Mr. Thomas T. Rogers, attorney for Defendant, 100 Congress, Suite 1100, Austin, Texas, 78701, by placing same in the United States mail, postage pre-paid, on this the ___19 th___ day of September, 2002.

_Curt Webb by permission_
CURT WEBB

10

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **ALBERT PULLEN  ET AL.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| | § | |
| **V.** | § | **C. A. NO. B-02-206** |
| | § | |
| **FARMERS GROUP, INC.,** | § | |
| **FARMERS UNDERWRITERS** | § | |
| **ASSOCIATION, FIRE UNDERWRITERS** | § | |
| **ASSOCIATION, FARMERS INSURANCE** | § | |
| **EXCHANGE, FIRE INSURANCE** | § | |
| **EXCHANGE, AND JOSE GUTIERREZ,** | § | |
| | § | |
| **Defendants.** | § | |

### AFFIDAVIT OF LAYNE E. KRUSE

BEFORE ME, the undersigned authority, personally appeared LAYNE E. KRUSE, who, being by me duly sworn, deposed as follows:

1.     I am over 18 years of age, have never been convicted of a crime and am otherwise fully

competent to make this Affidavi.

2.     I am a partner with the law firm of Fulbright & Jaworski L.L.P and am one of the counsel

for the defendants in the above styled matter.

3.     I have attached to this Affidavit a true and correct copy of the Declaration Page for a

Texas Homeowners Policy between the named plaintiff in this case, Alberto Pullen and

his wife Zonia Pullen, and Farmers Insurance Exchange.

FURTHER AFFIANT SAYETH NOT.

_____
Layne E. Kruse

SUBSCRIBED AND SWORN TO BEFORE ME on this the 6th day of December, 2002.



_____
Notary Public in and for the State of Texas

LORI A. COX
NOTARY PUBLIC
STATE OF TEXAS
My Commission Expires
MAY 05, 2006

30376362.1

**EXHIBIT E**

TEXAS HOMEOWNERS POLICY — FORM 1
FARMERS INSURANCE EXCHANGE

LOS ANGELES, CA

DATE __/__/__
POLICY NO. P 505__ __ __

☐ NEW    ☐ RENEWED
☒ AMENDED-DATE __-__-__

| EFFECTIVE DATE | EXPIRATION DATE | AT 12:01 A.M. STANDARD TIME AT THE LOCATION OF THE RESIDENCE PREMISES/DWELLING |
|---|---|---|
| __-__-__ | __-__-__ | |

__-43-___
AGENT NO.

NAMED INSURED: ALBERTO _ PULLEN AND WIFE ZONIA C PULLEN
MAILING ADDRESS: PO BOX ___
BROWNSVILLE TX 785__

LOAN NUMBER:

MORTGAGEE:

RESIDENCE PREMISES/DWELLING          CONSTRUCTION: FRAME
Lot-Block-Addition
1__ VILLA BLVD RANCHO VIEJO TEXAS 785__     KEY RATE: __     CITY LIMIT: INSIDE
INSIDE/OUTSIDE

| COVERAGES | | LIMIT OF LIABILITY | PREMIUM |
|---|---|---|---|
| SECTION I PROPERTY | | | |
| COVERAGE A. | DWELLING | $ | $ INCL |
| | OTHER STRUCTURES | $ | $ INCL |
| COVERAGE B. | PERSONAL PROPERTY | $ | $ INCL |
| | PERSONAL PROPERTY OFF PREMISES | $ | XXXXXXXXXXX |
| SECTION II LIABILITY | | | |
| COVERAGE C. | PERSONAL LIABILITY (EACH OCCURRENCE) | $ | $ INCL |
| COVERAGE D. | MEDICAL PAYMENTS TO OTHERS (EACH PERSON) | $ | $ INCL |
| OTHER RESIDENTIAL PREMISES — LOCATION: | | XXXXXXXXXXX | |
| LOSS OF USE COVERAGE | | $ | XXXXXXXXXXX |
| | BASIC PREMIUM | XXXXXXXXXXX | $ |
| INCREASED LIABILITY LIMITS | | XXXXXXXXXXX | $ |
| OTHER COVERAGES AND ENDORSEMENTS (Endorsement No. and Title) | | $ | $ |
| HO-__ 5-72 REPLACEMENT OF PERSONAL PROPERTY | | | 5_.__ |
| HO-__ RESIDENCE GLASS COVERAGE | | | _.__ |
| HO-__ TOTAL LIMIT ON UNSCHEDULED JEWELRY, WATCHES AND FURS | | 2,5__ | 16.__ |
| HO-__ TOTAL LIMIT ON BULLION/VALUABLE PAPERS | | 1,0__ | 4.__ |

| DEDUCTIBLES (SECTION I ONLY) | AMOUNT OF DEDUCTIBLE | DEDUCTIBLE ADJUSTMENT PREMIUM |
|---|---|---|
| DEDUCTIBLE CLAUSE 1 | $ | $ |
| DEDUCTIBLE CLAUSE 2 | $ | $ |
| DEDUCTIBLE CLAUSE 3 | NIL | |
| TOTAL POLICY PREMIUM | XXXXXXXXX | $ 1,___.__ |

OTHER COVERAGES, LIMITS AND EXCLUSIONS APPLY — REFER TO YOUR POLICY

AGENCY AT ____ E LOS EBANOS
BROWNSVILLE TX 785__          TEXAS JOSE GUTIERREZ          AGENT

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **ALBERT PULLEN  ET AL.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| | § | |
| **V.** | § | **C. A. NO. B-02-206** |
| | § | |
| **FARMERS GROUP, INC.,** | § | |
| **FARMERS UNDERWRITERS** | § | |
| **ASSOCIATION, FIRE UNDERWRITERS** | § | |
| **ASSOCIATION, FARMERS INSURANCE** | § | |
| **EXCHANGE, FIRE INSURANCE** | § | |
| **EXCHANGE, AND JOSE GUTIERREZ,** | § | |
| | § | |
| **Defendants.** | § | |

**ORDER DENYING PLAINTIFFS' MOTION FOR
LEAVE TO FILE FOURTH AMENDED COMPLAINT**

The Court, having considered Plaintiffs' Motion for Leave to File Fourth Amended

Complaint (the "Motion") and the Opposition to Motion hereby DENIES the Plaintiffs' Motion

for Leave to file their Fourth Amended Complaint in all respects.

DONE this ____ day of _____, 2002.

_____
UNITED STATES DISTRICT COURT JUDGE

30371666.8