IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

DEC 0 9 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ALBERT PULLEN  ET AL.,<br>Plaintiffs, | §<br>§<br>§ | |
| V. | §<br>§ | C. A. NO. B-02-206 |
| FARMERS GROUP, INC., ET AL.<br>Defendants. | §<br>§<br>§ | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
## TO REMAND AND BRIEF IN SUPPORT

Eduardo Roberto Rodriguez
State Bar No. 17144000
Federal I.D. No. 1944
Robert Patrick Rodriguez
State Bar No. 24002861
Federal I.D. No. 22949
1201 East Van Buren
Brownsville, Texas 78520
Telephone: 956.542.7441
Telecopier: 956.541.217

Of Counsel:
RODRIGUEZ, COLVIN & CHANEY, L.L.P.

Layne E. Kruse
State Bar No. 11742550
Federal I.D. No. 2383
Richard N. Carrell
State Bar No. 03871000
Federal I.D. No. 4473
Gerard G. Pecht
State Bar No. 15701800
Federal I.D. No. 4784
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone:  713-651-5151
Telecopier:  713-651-5246

Of Counsel:
FULBRIGHT & JAWORSKI L.L.P.

Attorneys-in-Charge for Defendants

## TABLE OF CONTENTS

Summary of Argument .......................................................................................... 1

Brief Factual and Procedural Background ............................................................ 2

Argument and Authorities.................................................................................... 3

     I.     Plaintiffs Improperly Named Defendants In State Court To Avoid
           Removal To Federal Court................................................................... 3

           A.     Plaintiffs' Complaint Utterly Fails To State A Claim Against
                    Gutierrez ........................................................................... 4

                   1.     Conclusory Group Allegations Do Not Establish A Claim .......... 5

                   2.     Plaintiffs Make No Substantive Allegations And Allege No
                         Specific Facts Supporting A Cause Of Action Against
                         Gutierrez ............................................................... 7

           B.     Plaintiffs' Breach Of Contract And Breach Of The Duty Of Good
                    Faith Claims Against Gutierrez Fail As A Matter Of Law ....................... 8

     II.     The Court Should Not Permit Plaintiffs To Destroy Diversity Jurisdiction
           By Adding Nondiverse Parties............................................................. 9

           A.     Plaintiffs Lack Standing To Sue The Parties They Seek To Add............ 10

           B.     Plaintiffs Cannot Rely On Assertions In Their Motion To Remand
                    By Unnamed Class Members To Defeat Diversity Jurisdiction............. 11

     III.     Plaintiffs Are Not Entitled To Costs................................................... 12

Conclusion........................................................................................................ 12

# TABLE OF AUTHORITIES

*Cases*

*Badon v. RJR Nabisco, Inc.*, 236 F.3d 282 (5th Cir. 2001) ............................................. 4

*Johnson v. Heublein Inc.*, 227 F.3d 236 (5th Cir. 2000)................................................... 4

*Griggs v. State Farm Lloyds*, 181 F.3d 694 (5th Cir. 1999) ........................................... 4

*Sohmer v. America Medical Security, Inc.*, Civil Action No. 3:02-CV-1680-M, 2002 U.S. Dist. LEXIS 19573 (N.D. Tex. Oct. 15, 2002)...................................................................................... 5

*Waters v. State Farm Mutual Automobile Insurance Co.*, 158 F.R.D 107 (S.D. Tex. 1994) ........ 5

*Cavallini v. State Farm Mutual Automobile Insurance Co.*, 44 F.3d 256 (5th Cir. 1995) ............. 5

*Beijing Metals & Minerals Import/Export Corp. v. America Bus. Ctr., Inc.*, 993 F.2d 1178 (5th Cir. 1993) ....................................................................................................................... 6

*Florida Marine Transporters, Inc. v. Lawson & Lawson Towing Co.*, Civil Action No. 00-2602 6 *J" (4)*, 2001 U.S. Dist. LEXIS 14312 (E.D. La. 2001) ................................................................. 6

*McCurtis v. Dolgencorp, Inc.*, 968 F. Supp. 1158 (S.D. Miss. 1997) ........................................... 6

*Preston v. Grant Advertising, Inc.*, 375 F.2d 439 (1967) ............................................................. 6

*Wells v. Shelter General Insurance Co.*, 217 F. Supp. 2d 744 (S.D. Miss. 2002) ........................ 6

*LeJeune v. Shell Oil Co.*, 950 F.2d 267 (5th Cir. 1992) ................................................................ 6

*Addison v. Allstate Insurance Co.*, 58 F. Supp. 2d 729 (S.D. Miss. 1999)................................... 7

*Frith v. Guardian Life Insurance Co.*, 9 F. Supp. 2d 734 (S.D. Tex. 1998).................................. 7

*Mays v. United Insurance Co. of America*, 853 F. Supp. 1386 (M.D. Ala. 1994) ......................... 8

*Jay Freeman Co. v. Glens Falls Insurance Co.*, 486 F. Supp. 140 (N.D. Tex. 1980) .................. 8

*French v. State Farm Insurance Co.*, 156 F.R.D. 159 (S.D. Tex. 1994)....................................... 9

*Ehrhardt v. Electrical & Instrumentation Unlimited of La.*, 137 F. Supp. 2d at 765.................... 9

*Hensgens v. Deere & Co.*, 833 F.2d 1179 (5th Cir. 1987)............................................................. 9

*McCaulley v. Purdue Pharma, L.P.*, 172 F. Supp. 2d 803 (W.D. Va. 2001)................................. 9

*Valley Forge Christian College v. American United for Separation of Church of State, Inc.*, 454 U.S. 464 (1982)........................................................................................................... 11

*Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26 (1976)..................................... 11

*Warth v. Seldin*, 422 U.S. at 498-99 ......................................................................................... 12

*Ramos v. Patrician Equities Corp.*, 765 F. Supp. 1196 (S.D.N.Y. 1991) .................................... 12

*Ferguson v. Security Life Insurance Co.*, 996 F. Supp. 597 (N.D. Tex. 1998)............................. 12

*Lamb v. Laird*, 907 F. Supp. 1033 (S.D. Tex. 1995) .................................................................. 12

*Statutes*

28 U.S.C. § 1447(e) ...................................................................................................................... 2

28 U.S.C. § 1441 .......................................................................................................................... 3

*Rules*

Fed. R. Civ. P. 9(b)....................................................................................................................... 7

*Other Authorities*

Wright & A. Miller, Federal Practice and Procedure § 1487, at 637 ........................................... 10

Defendants Farmers Group, Inc., Farmers Underwriters Association, Fire Underwriters Association, Farmers Insurance Exchange, and Fire Insurance Exchange (collectively "defendants" or "Farmers Entities") file this their Opposition to Plaintiffs' Motion to Remand. Plaintiffs' motion should be denied.

## SUMMARY OF ARGUMENT

This case was properly removed to this Court on diversity grounds. In an obvious admission of the fact that diversity justified removal, plaintiffs seek leave to amend their complaint to add nondiverse defendants in a blatant attempt to get out of federal court.[1] Plaintiffs' strategy must fail.

Plaintiffs do not dispute that there is diversity between plaintiffs and the Farmers Entities; nor do plaintiffs dispute that the amount in controversy is satisfied. Notice of Removal at ¶ ¶ 3-9. Moreover, plaintiffs do not dispute defendants' argument that Fire Insurance Exchange should not be considered for diversity since plaintiffs have no insurance policy with Fire Insurance Exchange. *Id.* at ¶ 10. Rather, plaintiffs assert *only* that Jose Gutierrez was not "fraudulently joined" and that their proposed amendment of their Complaint to add new, nondiverse defendants will destroy diversity. This Court, therefore, need only address two issues in resolving plaintiffs' remand motion: (1) whether the citizenship of an unserved individual, Jose Gutierrez ("Gutierrez"), destroys diversity, even though there are no specific allegations against him, and (2) whether plaintiffs' Motion for Leave to add new, nondiverse defendants should be granted so as to destroy diversity.

---

[1]Contemporaneously with filing their Motion to Remand, plaintiffs' filed a Motion for Leave to File A Fourth Amended Complaint ("Motion for Leave"), wherein they seek to add Texas Farmers Insurance Company, Mid-Century Insurance Company of Texas, Mid-Century Insurance Company, and Farmers Texas County Mutual Insurance Company (Docket No.5). Defendants are filing concurrently their Opposition to Plaintiffs' Motion for Leave.

Although plaintiffs assert that Gutierrez is a proper defendant, the fact that plaintiffs have not even bothered to serve Gutierrez confirms that he was fraudulently joined. Indeed, the fact that he was only named in an amended petition and remains unserved makes his addition highly suspect. With respect to plaintiffs' Motion for Leave to add nondiverse defendants, this Court should deny plaintiffs' Motion for Leave. Plaintiffs' obvious reason for wanting to add these new defendants is undeniably tactical. By naming nondiverse parties *after removal*, plaintiffs hope to strip this Court of subject-matter jurisdiction. For this reason alone, the amendment should not be allowed. The proposed amendment should not be allowed for other reasons, which are set forth in Defendants' Opposition to Plaintiffs' Motion For Leave, which is incorporated by reference as though fully set forth herein. As established by Defendants' Opposition to Plaintiffs' Motion for Leave, plaintiffs' tactic clearly amounts to forum shopping in the face of other pending litigation against the same parties on the same issues and does not pass scrutiny under 28 U.S.C § 1447(e).

## BRIEF FACTUAL AND PROCEDURAL BACKGROUND

On September 23, 2002, plaintiffs filed suit in State District Court in Cameron, County Texas. On September 25, 2002, plaintiffs filed their First Amended Original Petition. On September 26, 2002, plaintiffs filed their Second Amended Original Petition, naming for the first time Jose Gutierrez as a defendant. Although plaintiffs named Gutierrez as a defendant in their Second Amended Petition, plaintiffs made no specific allegations of wrongful conduct against Gutierrez. On October 1, 2002, plaintiffs filed their Third Amended Original Petition in state court. In their Third Amended Original Petition, plaintiffs did not add any additional defendants, but rather, in an apparent copy-cat exercise, plaintiffs merely inserted identical allegations from other state court suits already pending in Texas, which were filed well before plaintiffs' suit.

On October 25, 2002, defendants removed this case to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1441. On November 19, 2002, less than one month after removal, plaintiffs filed a Motion to Remand (Docket No. 6). On the same day plaintiffs filed their Motion to Remand, plaintiffs filed a Motion for Leave to File A Fourth Amended Complaint (Docket No. 5) to add nondiverse defendants, in an apparent recognition of the fact that the case was properly removed on diversity grounds.

## ARGUMENT AND AUTHORITIES

**I.    Plaintiffs Improperly Named Defendants In State Court To Avoid Removal To Federal Court**

Plaintiffs' litigation objective is clear: avoid federal court at all costs. Consistent with this objective, plaintiffs improperly joined defendants in state court to prevent removal to federal court. Initially, plaintiffs named defendant Fire Insurance Exchange. Plaintiffs, however, have an insurance policy with Farmers Insurance Exchange, not Fire Insurance Exchange.[2] Plaintiffs have no relationship whatsoever, contractual or otherwise, with Fire Insurance Exchange, and therefore, cannot state a claim against Fire Insurance Exchange. Not content with having improperly joined Fire Insurance Exchange, plaintiffs amended their petition in state court to fraudulently join an individual defendant, Gutierrez. Even though plaintiffs joined Gutierrez as a defendant, plaintiffs did not even attempt to serve Gutierrez while this case was in state court. Notice of Removal at ¶ 11. In fact, plaintiffs have never bothered to serve Gutierrez. Having been called on their fraudulent joinder of these two defendants in Defendants' Notice of Removal, plaintiffs now seek to defend only their joinder of Gutierrez. Plaintiffs do not contest

---

[2]*See* Affidavit of Layne E. Kruse ("Kruse Aff."), attached as Exhibit E to defendants' Opposition to Plaintiffs' Motion for Leave, which is incorporated by reference.

defendants' contention that plaintiffs fraudulently joined Fire Insurance Exchange, and thus concede this point.

### A.     Plaintiffs' Complaint Utterly Fails To State A Claim Against Gutierrez

Plaintiffs' contrary assertions notwithstanding, defendants have met their burden in proving that Gutierrez was fraudulently joined. The record establishes conclusively that there is no reasonable basis for concluding that plaintiffs have stated a claim against Gutierrez. *See, e.g., Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2001) ("[T]here must at least be arguably a reasonable basis for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder."); *Johnson v. Heublein Inc.*, 227 F.3d 236 (5th Cir. 2000) ("The removing party [may] prove fraudulent joinder by demonstrating that there is no possibility that the non-removing party could successfully prosecute a cause of action under state law against the defendant whose joinder is questioned."). Perhaps, plaintiffs themselves realize the futility of their efforts, hence, they have not even bothered to serve Gutierrez.

The fact that plaintiffs have not served Gutierrez should be dispositive on the question of whether Gutierrez was fraudulently joined. *See Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999) (noting that plaintiffs had not even served the insurance agent who the Court found had been fraudulently joined). Plaintiffs' lack of interest in serving Gutierrez reveals plaintiffs' apparent purpose in naming him as a defendant, which is to bring him along for the ride to destroy diversity. If plaintiffs truly believed that they had a claim against Gutierrez, plaintiffs would not have been so dilatory in prosecuting their claims against Gutierrez. By comparison, plaintiffs have not been dilatory with respect to pursuing their claims against Farmers Insurance Exchange, whom plaintiffs did serve and who is undoubtedly the real target of plaintiffs' claims. *See, e.g., Sohmer v. Am. Med. Sec., Inc.*, Civil Action No. 3:02-CV-1680-M, 2002 U.S. Dist. LEXIS 19573, at *7 (N.D. Tex. Oct. 15, 2002)("[T]he Court can consider

30373015.1                                                  4

that 'given the relative financial positions of most [insurance] companies versus their . . . [agents], the only time an . . . [agent] is going to be sued is when it serves a tactical legal purpose, like defeating diversity.'") (finding agent was fraudulently joined); *see also Waters v. State Farm Mut. Automobile Ins. Co.*, 158 F.R.D. 107, 109 (S.D. Tex. 1994) (same).

### 1.    Conclusory Group Allegations Do Not Establish A Claim

"When fraudulent joinder is asserted, the district court must 'pierce the pleadings' to determine whether a cause of action grounded in facts exists." *Waters*, 158 F.R.D. 107, 109 (S.D. Tex. 1994). "Failure to specify a factual basis for recovery against a non-diverse party constitutes a failure to state a claim and fraudulent joinder of that party." *Id*. Moreover, the Fifth Circuit has held that conclusory group allegations are legally insufficient to state a claim. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 261 (5th Cir. 1995) (holding that simply lumping defendants together in key allegations is plainly insufficient to state a claim). In *Cavallini*, plaintiffs' state-court petition broadly alleged that "Defendants" failed to exercise a duty of good faith. In affirming the denial of plaintiffs' motion to remand, the Fifth Circuit concluded that "[n]o more need be said. As reflected above, the complaint fails to state a claim against" the purported non-diverse defendant. *Cavallini*, 44 F.3d at 261; *Griggs*, 181 F.3d at 700 ("We cannot say that Griggs' petition, which mentions [insurance agent] once in passing, then fails to state any specific actionable conduct on her part whatsoever, meets even the liberalized requirements . . . .") (affirming denial of remand and finding fraudulent joinder because plaintiffs' petition alleged "no actionable facts specific to" the insurance agent); *see also Badon v. RJR Nabisco Inc.*, 224 F.3d 382, 391-92 (5th Cir. 2000) (rejecting plaintiffs' attempt to defeat removal by including all defendants in a "general" conspiracy allegation).

To preclude a finding that they have fraudulently joined Gutierrez, plaintiffs belatedly offer a single affidavit from plaintiff Albert Pullen.[3] "In determining the propriety of removal, the court considers the allegations in plaintiff's pleading *at the time of removal.*" *McCurtis v. Dolgencorp, Inc.*, 968 F. Supp. 1158, 1160 (S.D. Miss. 1997) (emphasis in original). A post-removal affidavit cannot be used to alter allegations in the Complaint. *See, e.g., Preston v. Grant Advertising, Inc.*, 375 F.2d 439, 440-41 (1967) (holding that complaint, on its face, failed to allege facts sufficient to preclude removal and that mere allegations in motion to remand were insufficient to cause a remand). In any event, the affidavit does nothing more than track verbatim the conclusory allegations found in the Complaint. It is settled in this circuit that a party cannot overcome a claim of fraudulent joinder by relying on conclusory allegations in the Complaint. *See, e.g., Wells v. Shelter Gen. Ins. Co.*, 217 F. Supp. 2d 744, 751 (S.D. Miss. 2002) ("[C]onclusory or generic allegations of wrongdoing on the part of the non-diverse defendant are not sufficient to show that the defendant was not fraudulently joined."); *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 271 (5th Cir. 1992) (holding that "a removing party's claim of fraudulent joinder to destroy diversity is viewed as similar to a motion for summary judgment . . . [u]nder this standard, plaintiffs 'may not rest upon the mere [conclusory] allegations . . . .'"). "A court should not, 'in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts to support his claims against the non-diverse defendant." *Wells*, 217 F. Supp. 2d at 752 (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

---

[3] If necessary, defendants specifically object to this affidavit as any evidence whatsoever. Mere conclusory statements in an affidavit are not admissible. *See, e.g., Beijing Metals & Minerals Import/Export Corp. v. Am. Bus. Ctr., Inc.*, 993 F.2d 1178, 1182 (5th Cir. 1993) ("Affidavits must set forth facts 'as would be admissible in evidence' . . . conclusory assertions cannot be used in an affidavit . . . ."); *Florida Marine Transporters, Inc. v. Lawson & Lawson Towing Co.*, Civil Action No. 00-2602 Section "J" (4), 2001 U.S. Dist. LEXIS 14312, at * 10 (E.D. La. 2001) (conclusory allegations in affidavit not admissible).

## 2.   Plaintiffs Make No Substantive Allegations And Allege No Specific Facts Supporting A Cause Of Action Against Gutierrez

Other than lumping all defendants together and alleging conclusory, group allegations, plaintiffs' Third Amended Petition offers no specific substantive allegations and alleges no specific facts supporting a claim against Gutierrez.[4]  No doubt aware of this deficiency, and, now in a calculated attempt to single Gutierrez out, *after removal*, plaintiffs in the Motion to Remand assert boldly that "Jose Gutierrez knew that the Defendants Farmers were accessing Plaintiffs' credit information and using such information to determine and increase premiums and the amount of coverage they obtained."  Motion at 5.  The assertion is wholly speculative and conclusory.  Plaintiffs point to no allegation in the Petition to support the assertion made in plaintiffs' remand motion.  Even Pullen's belated affidavit, filed in support of plaintiffs' Motion to Remand, is bereft of specific facts supporting the assertion.  "Speculative and conclusory allegations do not state a cause of action without factual support."  *Waters*, 158 F.R.D. at 108 (S.D. Tex. 1994) (finding insurance agent had been fraudulently joined to prevent removal to federal court); *Addison v. Allstate Ins. Co.*, 58 F. Supp. 2d 729, 733 (S.D. Miss. 1999) (denying motion to remand where, "other than a bare allegation, plaintiffs have factually alleged nothing" that would satisfy required elements of claim against resident defendants).

Furthermore, plaintiffs' conclusory, nonfact-specific group allegations do not pass muster under Fed. R. Civ. P. 9(b).  "Claims alleging violations of the Texas Insurance Code and the DTPA . . . are subject to the requirements of Rule 9(b)." *Frith v. Guardian Life Ins. Co.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998); *see also Waters*, 158 F.R.D. at 109 (holding that a failure to satisfy Rule 9(b) pleading requirements and to specify a factual basis for recovery against non-diverse defendant "constitutes failure to state a claim and fraudulent joinder of that party"); *Mays*

---

[4]The same defect applies to the proposed Fourth Amended Complaint.

*v. United Insurance Co. of America*, 853 F. Supp. 1386, 1388-89 (M.D. Ala. 1994) (basing fraudulent joinder determination in part on whether complaint met Rule 9(b) requirements).[5] Plaintiffs offer no specific facts supporting their DTPA and art. 21.21 claims against Gutierrez. In particular, plaintiffs offer no specific facts supporting their assertion concerning what Gutierrez allegedly knew or when he allegedly knew it and offer no facts concerning the circumstances surrounding his alleged failure to disclose what he allegedly knew.

Plaintiffs even allege for the first time in the remand motion that they have claims against Gutierrez for "his handling of their insurance . . .," which plaintiffs allege constitutes a "violation of the Texas Insurance Code and the [DTPA]." Motion at 6. The allegation is conclusory and utterly fails to satisfy Fed. R. Civ. P. 9(b). Plaintiffs fail to explain how Gutierrez "handled" their insurance so as to give rise to a claim under the DTPA and art. 21.21. *See, e.g., Jay Freeman Co. v. Glens Falls Ins. Co.*, 486 F. Supp. 140, 141 n.1 (N.D. Tex. 1980) (noting district court's dismissal of plaintiffs' DTPA claims for failure to comply with Rule 9(b)). More importantly, this new allegation that Gutierrez is liable for "his handling of [plaintiffs'] insurance" was not made in plaintiffs' Original Petition, plaintiffs' First Amended Petition, plaintiffs' Second Amended Petition, or plaintiffs' Third Amended Petition, which were all filed in state court prior to removal. The allegation is not even made in plaintiffs' proposed Fourth Amended Complaint. Rather, the allegation is made only in plaintiffs' remand motion.

### B.    Plaintiffs' Breach Of Contract And Breach Of The Duty Of Good Faith Claims Against Gutierrez Fail As A Matter Of Law

Plaintiffs also allege breach of contract and breach of the duty of good faith and fair dealing claims against Gutierrez, but there is no reasonable basis for concluding that Gutierrez

---

[5]Plaintiffs assert claims against Gutierrez for violation of the Texas Deceptive Trade Practices Act ("DTPA") and art. 21.21 of the Texas Insurance Code. Third Amended Petition at 6.

could be held liable on these claims. The Third Amended Petition fails to articulate or allege any grounds for finding a "special relationship" between plaintiffs and Gutierrez, as agent, sufficient to impose liability on Gutierrez for breach of the duty of good faith and fair dealing or a finding that Gutierrez committed a breach of contract. *See Cavallini*, 44 F.3d at 261 (holding that insured had no claim for breach of the duty of good faith and fair dealing against insurance agent because there is no special relationship between insured and agent, but only between insured and carrier); *French v. State Farm Ins. Co.*, 156 F.R.D. 159, 163 (S.D. Tex. 1994) ("Agents are not parties to the insurance contract, and there is no special relationship between the insured and the agent giving rise to a duty of good faith and fair dealing."); *see also Griggs*, 181 F.3d at 699 (noting that plaintiffs failed to state a claim for breach of contract against insurance agent who was not a party to the insurance contract in dispute).

## II.    The Court Should Not Permit Plaintiffs To Destroy Diversity Jurisdiction By Adding Nondiverse Parties

This case is properly in federal court, and the equities are in favor of defendants. Courts in this Circuit have made plain that "[o]nce a case has been properly removed . . . there is very little that a plaintiff can do that will defeat federal subject matter jurisdiction and force a remand to state court." *Ehrhardt v. Electrical & Instrumentation Unlimited of La.*, 137 F. Supp.2d at 765, 766 (E.D. Tex. 2001). A defendant has a right to a federal forum, and to protect this right, courts closely scrutinize post-removal conduct aimed at depriving defendants' of this fundamental right. *See, e.g., Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987) ("[T]he addition of a nondiverse party must not be permitted without consideration of the original defendant's interest in the choice of forum"). Plaintiffs' sole motivation, by adding nondiverse parties after removal, is to destroy diversity, and thereby deny defendants their right to a federal forum. *See McCaulley v. Purdue Pharma, L.P.*, 172 F. Supp. 2d 803, 810 (W.D. Va.

2001) ("It is the defendants who will be prejudiced should they lose their federal forum, to which they now have a right.") (denying post-removal joinder under 28 U.S.C § 1447(e)). Defendants oppose plaintiffs' proposed amendment and incorporate fully their arguments set for in their Opposition to Plaintiffs' Motion for Leave, some of which are set forth below.

## A.    Plaintiffs Lack Standing To Sue The Parties They Seek To Add

Since plaintiffs seek to amend their complaint to add nondiverse defendants after removal, the issue of whether the amendment should be permitted is governed by 28 U.S.C §1447(e). The Court is well within its discretion to deny the amendment. 6 C. Wright & A. Miller, Federal Practice and Procedure § 1487, at 637. In this instance, plaintiffs' joinder of new defendants is an obvious attempt to strip this Court of subject-matter jurisdiction and cause a remand to state court, thereby depriving defendants of their right to a federal forum. The amendment should not be permitted.

"The court has discretion to deny the amendment upon consideration of all the equities, and a significant factor is whether the plaintiffs are forum shopping." *McCaulley,* 172 F. Supp. 2d at 809 (W.D. Va. 2001). As defendants establish in their opposition to plaintiffs' Motion for Leave, plaintiffs clearly lack standing to sue the nondiverse parties they seek to add. Plaintiffs are simply scrambling for nondiverse defendants to sue in an effort to secure a remand. Indeed, the Complaint is devoid of any averment of facts establishing any relationship, contractual or otherwise, between plaintiffs and the nondiverse parties they seek to add. Pullen's belated affidavit, which is offered in support of plaintiffs' Motion to Remand, does not even refer to these parties. Because the Complaint itself is devoid of any allegations that would support a finding that plaintiffs have a claim against the nondiverse parties they seek add as defendants, plaintiffs have no claims against these parties, which, alone, should be dispositive. *See, e.g., McCaulley,* 172 F. Supp. 2d at 810 ("There is no need at this point to decide the ultimate merits

30373015.1                                                           10

of the claims [asserted] against [the party sought to be added] . . . The fact that they are **_arguable_**

is sufficient to convince me that the plaintiffs were scrambling for a Virginia resident to sue . . .

.") (denying post-removal joinder under 28 U.S.C § 1447(e)) (emphasis added).

### B.    Plaintiffs Cannot Rely On Assertions In Their Motion To Remand By Unnamed Class Members To Defeat Diversity Jurisdiction

Realizing that they have no claims against the parties they seek to add, plaintiffs offer this

Court conclusory affidavits from two unnamed, members of the putative class. Plaintiffs assert

that the unnamed putative class members have claims against the parties plaintiffs seek to add,

presumably justifying their joinder. Plaintiffs' reliance on the assertion of unnamed class

members, however, is misplaced. The U.S. Supreme Court's decision in *Valley Forge Christian*

*College v. American United for Separation of Church of State, Inc.,* 454 U.S. 464 (1982) is

controlling. The Court in *Valley Forge* made plain that a plaintiff "must assert his own legal

rights and interests, and cannot rest his claim to relief on the legal rights or interests of third

parties." *Id.* at 474. Accordingly, plaintiffs cannot rely on the claims of others as a basis for

their joinder of parties, who plaintiffs themselves lack standing to sue. This is true even though

plaintiffs purport to bring a class action in a representative capacity:

> That a suit may be a class action, however, adds nothing to the question of
> standing, for even named plaintiffs who represent a class must allege and show
> that they personally have been injured, not that injury has been suffered by other,
> unidentified members of the class to which they belong and which they purport to
> represent.

*Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 40 n.20 (1976) (quoting *Warth v. Seldin,*

422 U.S. 490, 502 (1975)). The requirement that a litigant have standing is jurisdictional and, to

establish standing, a plaintiff must show an "injury in fact" that is "fairly traceable to the

defendant's allegedly unlawful conduct" and that "the injury will be redressed by a favorable

decision by the court." *Warth v. Seldin,* 422 U.S. at 498-99. The pleaded facts must establish

the plaintiff's standing as to each defendant. *Ramos v. Patrician Equities Corp.,* 765 F. Supp. 1196, 1199 (S.D.N.Y. 1991). Plaintiffs have not alleged and cannot allege any injury to themselves by the parties they seek to add as defendants with whom they have no relationship.

**III.    Plaintiffs Are Not Entitled To Costs**

Costs, if taxable at all, should be taxed against plaintiffs for filing a motion to add nondiverse parties for the sole purpose of defeating diversity. Indeed, by their blatant attempt to add nondiverse defendants, after removal, to destroy diversity, plaintiffs concede that this case was properly removed under 28 U.S.C. § 1441. *See Ferguson v. Security Life Ins. Co.*, 996 F. Supp. 597, 604  (N.D. Tex. 1998) (denying costs); *Lamb v. Laird*, 907 F. Supp. 1033, 1035 (S.D. Tex. 1995) (denying costs).

## CONCLUSION

For the foregoing reasons, and those set forth in Defendants' Opposition to Plaintiffs' Motion for Leave to File Fourth Amended Complaint, this Court should deny plaintiffs' Motion for Leave, plaintiffs' Motion to Remand, and plaintiffs' requests for costs and attorney's fees.

Respectfully submitted,


_Eduardo Roberto Rodriguez_ w/ permission
Eduardo Roberto Rodriguez   MCCstow
State Bar No. 17144000
Federal I.D. No. 1944
Robert Patrick Rodriguez
State Bar No. 24002861
Federal I.D. No. 22949
1201 East Van Buren
Brownsville, Texas 78520  and/or
P.O. Box 2155
Brownsville, Texas 78522
Telephone: 956.542.7441
Telecopier: 956.541.217

Of Counsel:
RODRIGUEZ, COLVIN & CHANEY, L.L.P.


Layne E. Kruse
State Bar No. 11742550
Federal I.D. No. 2383
Richard N. Carrell
State Bar No. 03871000
Federal I.D. No. 4473
Gerard G. Pecht
State Bar No. 15701800
Federal I.D. No. 4784
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone:  713-651-5151
Telecopier:  713-651-5246

Of Counsel:
FULBRIGHT & JAWORSKI L.L.P.

Attorneys-in-Charge for Defendants


30373015.1                                13

## CERTIFICATE OF SERVICE

This pleading was served in compliance with Rule 5 of the Federal Rules of Civil Procedure on December 9, 2002.

_____
Eduardo Roberto Rodriguez

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **ALBERT PULLEN  ET AL.,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| | § | |
| **V.** | § | **C. A. NO. B-02-206** |
| | § | |
| **FARMERS GROUP, INC., ET AL.** | § | |
| **Defendants.** | § | |


**APPENDIX TO DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO REMAND AND BRIEF IN SUPPORT**


1.      *Sohmer v. Am. Med. Sec., Inc.*, Civil Action No. 3:02-CV-1680-M, 2002
U.S. Dist. LEXIS 19573 (N.D. Tex. Oct. 15, 2002); and

2.      *Florida Marine Transporters, Inc. v. Lawson & Lawson Towing Co.*,
Civil Action No. 00-2602 Section "J" (4), 2001 U.S. Dist. LEXIS 14312
(E.D. La. 2001).

Service: **Get by LEXSEE®**
Citation: **2002 U.S. Dist. LEXIS 19573**

*2002 U.S. Dist. LEXIS 19573, \**

JOHN SOHMER, as Representative for the Estate of ANDREW PAUL SOHMER and ED SOHMER and PATTI SOHMER Individually, Plaintiffs, v. AMERICAN MEDICAL SECURITY, INC., UNITED WISCONSIN LIFE INS. CO., and SOUTHWEST BUSINESS INSURANCE AGENCY, INC., Defendants.

Civil Action No. 3:02-CV-1680-M

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

2002 U.S. Dist. LEXIS 19573

October 15, 2002, Decided
October 15, 2002, Filed

**DISPOSITION: [\*1]** Plaintiffs' Motion to Remand denied.

### CASE SUMMARY

**PROCEDURAL POSTURE:** In state court, plaintiffs, the representative and heirs of an estate, sued defendants - an insurer, an administrator, and an insurance agency - for breach of contract, breach of the duty of good faith and fair dealing, negligent misrepresentation, and violations several state statutes. The insurer and administrator removed the action to the instant court. Plaintiffs moved for remand and for costs.

**OVERVIEW:** Through the insurance agency, plaintiffs' decedent (the insured) obtained a health insurance policy underwritten by the insurer. After the insured suffered severe pain later determined to result from lymphoma, the administrator and insurer informed the insured that the insurer was rescinding the insurance policy issued to the insured retroactive to its date of issuance. They alleged that the insured had failed to fully disclose on his insurance application his prior medical conditions. After the insured died, plaintiffs filed the instant lawsuit. The insurer and administrator removed the lawsuit based on diversity jurisdiction, asserting that the insurance agency was fraudulently joined to destroy diversity. The only claim plaintiffs asserted against the insurance agency was for negligent misrepresentation. Their petition was wholly devoid of any allegations supporting a cause of action for misrepresentation against the agency. Although the agency made representations to the insured in the course of the agency's business, thus satisfying the first element of plaintiffs' claim, plaintiffs could not satisfy the other four elements.

**OUTCOME:** The court denied plaintiffs' motion for remand and costs.

**CORE TERMS:** removal, misrepresentation, fraudulently, joined, negligent misrepresentation, cause of action, diversity, diversity jurisdiction, fraudulent joinder, health insurance, coverage, resident, insured, pierce, jurisdictional facts, insurance agent, deposition, non-diverse, recitation, prevail, filled, plead

### LexisNexis(TM) HEADNOTES - Core Concepts - ◆ Hide Concepts

📄 Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship

Case 1:02-cv-00206    Document 8    Filed in TXSD on 12/09/2002    Page 21 of 35

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 19573                Page 2 of 7

📄 Civil Procedure > Removal > Removal Proceedings

*HN1* Under the doctrine of fraudulent joinder, a federal court may assert diversity jurisdiction when a non-diverse defendant has been fraudulently joined in state court to simply disable removal. The removing parties bear the heavy burden of proving that the plaintiff fraudulently joined the non-diverse party, by either showing that (1) there is an outright fraud in the opposing party's recitation of jurisdictional facts, or (2) there is no possibility that the opposing party could have established a cause of action against the non-diverse party in state court.

📄 Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship
📄 Civil Procedure > Removal > Removal Proceedings

*HN2* Although a court reviewing a claim of fraudulent joinder may "pierce the pleadings" and look at additional evidence regarding the alleged state law claim against the non-diverse party, the court cannot allow this additional evidence to breathe life into causes of action not asserted in the petition at the time of removal. After all issues are resolved in favor of the opposing party, if there is no possibility that a state court would recognize a valid cause of action against the non-diverse party, then the opposing party fraudulently joined the non-diverse party. The federal district court then must ignore the non-diverse party for purposes of deciding if removal is proper on diversity grounds, thus providing the court with proper subject matter jurisdiction.

📄 Civil Procedure > Removal > Removal Proceedings

*HN3* The decision whether or not to pierce the pleadings when determining whether a non-diverse defendant was joined to destroy diversity rests firmly within the court's discretion.

📄 Torts > Business & Employment Torts > Negligent Misrepresentation

*HN4* Under Texas law, regarding an insurance agent's potential liability for negligent misrepresentations in the sale of insurance policies, a plaintiff needs to establish the following five elements to prevail on such a claim: (1) the defendant made the representation in the course of its business, or in a transaction in which the defendant had a pecuniary interest; (2) the defendant supplied false information to guide the soon-to-be insured; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information to the insured; (4) the insured and the plaintiff suffered pecuniary loss by justifiably relying on the defendant's representation; and (5) the defendant's negligent misrepresentation proximately injured the insured and/or the plaintiff (the insured's heir).

📄 Torts > Business & Employment Torts > Negligent Misrepresentation

*HN5* In Texas, an insurance agent is personally liable for misrepresentations made by its representatives during the course of the agency relationship. To be liable, however, the agent must misrepresent specific policy terms prior to a loss, and the insured's reliance upon that misrepresentation must actually cause the insured to incur damages. Speculative and conclusory allegations of the agent's misrepresentations do not support a cause of action. An insurance agent's statement that a policy will protect an insured is generally an expression of opinion, and opinion alone is not sufficient to support an action for fraud or misrepresentation. Moreover, the court can consider that given the relative financial positions of most insurance companies versus their agents, the only time an agent is going to be sued is when it serves a tactical legal purpose, like defeating diversity.

**COUNSEL:** For JOHN SOHMER, ED SOHMER, PATTI SOHMER, plaintiffs: James Robert Baudhuin, Attorney at Law, Law Office of James Baudhuin, Desoto, TX.

Case 1:02-cv-00206    Document 8    Filed in TXSD on 12/09/2002    Page 22 of 35

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 19573                     Page 3 of 7

For JOHN SOHMER, ED SOHMER, PATTI SOHMER, plaintiffs: D Bradley Dickinson, Attorney At Law, Dickinson & Associates, Dallas, TX USA.

For AMERICAN MEDICAL SECURITY INC, UNITED WISCONSIN LIFE INSURANCE COMPANY, defendants: Andrew G Jubinsky, Attorney at Law, Andrew P Speicher, Attorney at Law, Figari Davenport & Graves, Dallas, TX USA.

For SOUTHWEST BUSINESS INSURANCE AGENCY, INC., defendant: Thomas Archibald Culpepper, Attorney at Law, Thompson Coe Cousins & Irons, Dallas, TX USA.

**JUDGES:** BARBARA M.G. LYNN, UNITED STATES DISTRICT JUDGE, NORTHERN DISTRICT OF TEXAS.

**OPINIONBY:** BARBARA M.G. LYNN

**OPINION: MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs' Motion to Remand and for Costs. On July 2, 2002, the Plaintiffs, John Sohmer (acting as representative of Andrew Sohmer's Estate), Ed Sohmer, and Patti Sohmer, filed their First Amended Original Petition in the 134th Judicial District Court of Dallas County, Texas. The Petition asserted claims against Defendants American Medical Security, Incorporated **[*2]** ("American Medical") and United Wisconsin Life Insurance Company ("United Wisconsin") for breach of contract, breach of the duty of good faith and fair dealing, and violations of the Texas Insurance Code, Deceptive Trade Practices Act, and Prompt Payment of Claims Act. Against Defendant Southwest Business Insurance Agency, Inc. ("Southwest"), the Plaintiffs asserted only a negligent misrepresentation claim.

The Defendants removed on the basis of diversity jurisdiction. All of the Plaintiffs are Texas residents. Defendant American Medical is a Delaware corporation, United Wisconsin is a Wisconsin corporation, and both Defendants have their principal places of business in Wisconsin; they are, therefore, residents of Delaware and Wisconsin for purposes of jurisdiction. Defendant Southwest is an insurance agency that represents American Medical and United Wisconsin. It is a Texas corporation with its principal place of business in Texas; it is, therefore, a resident of Texas for jurisdictional purposes.

On August 7, 2002, Defendants American Medical and United Wisconsin removed the case. They asserted removal was proper because, although consideration of Southwest's citizenship would **[*3]** defeat complete diversity and thus make removal improper, Southwest was fraudulently joined. On August 19, 2002, the Sohmers filed a Motion to Remand and for Costs. For the reasons stated herein, the Court DENIES the Sohmers' Motion.

**FACTUAL BACKGROUND**

During part of 2001, Andrew Sohmer ("Andrew") had a health insurance policy with MEGA Life and Health Insurance Company ("MEGA"). He became dissatisfied with MEGA's policy and began exploring policies offered by other companies. In August 2001, Andrew contacted Southwest. Southwest provided Andrew with an application for health insurance coverage with United Wisconsin. American Medical was the administrator of United Wisconsin's policy. The application required Andrew to list his health history and prior places of treatment. United Wisconsin issued its policy on September 1, 2001.

On December 2001, Andrew suffered severe pain later determined to result from lymphoma. Andrew's doctors began immediate treatment, including surgery and chemotherapy. Andrew later moved in with his parents and received additional treatment. Andrew's health care providers sought and obtained preauthorization from American Medical to treat him. **[*4]**

In March 2002, American Medical and United Wisconsin informed Andrew that United Wisconsin was rescinding the insurance policy issued to Andrew retroactive to the date of its issuance, contending that Andrew failed to fully disclose on his application his prior medical conditions. On June 2, 2002, Andrew died.

## ANALYTICAL FRAMEWORK AND STANDARD OF REVIEW

*HN1*Under the doctrine of fraudulent joinder, "a federal court may assert diversity jurisdiction when a non-diverse defendant has been fraudulently joined in state court to simply disable removal." n1 As the removing parties, American Medical and United Wisconsin bear the heavy burden of proving that the Sohmers fraudulently joined Southwest, the non-diverse party, by either showing that (1) there is an outright fraud in the Sohmers' recitation of jurisdictional facts, or (2) there is no possibility that the Sohmers could have established a cause of action for negligent misrepresentation against Southwest in state court. n2 Because there is no claimed fraud in the recitation of jurisdictional facts here, the second prong is what is germane. *HN2*Although the Court may "pierce the pleadings" and look at additional evidence regarding **[\*5]** the alleged state law claim against Southwest, n3 the Court cannot allow this additional evidence to breathe life into causes of action not asserted in the petition at the time of removal. n4 After all issues are resolved in favor of the Sohmers, if there is no possibility that a Texas court would recognize a valid cause of action for negligent misrepresentation against Southwest, then the Sohmers fraudulently joined Southwest. n5 The Court then must ignore Southwest for purposes of deciding if removal is proper on diversity grounds, thus providing the Court with proper subject matter jurisdiction. n6

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 *Sanders v. Gen. Motors Corp., 2001 U.S. Dist. LEXIS 16303, 2001 WL 1297443* *2 (2001) (Lynn, J.).

n2 See *Burden v. Gen. Dynamics Corp.,* 60 F.3d 213, 217 (5th Cir. 1995); *B, Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir. 1981).

n3 See *Burden, 60 F.3d. at 217.* Defendants suggest that the Court "must" pierce the pleadings and look at additional, summary judgement type evidence; however, *HN3*the decision whether or not to pierce the pleadings rests firmly within the Court's discretion. *Id.* **[\*6]**

n4 *Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 263-64 (5th Cir. 1995).

n5 See *Burden,* 60 F.3d. at 217; *McCall v. UNUM Life Ins. Co. of Am.,* 2001 U.S. Dist. LEXIS 18132, 2001 WL 1388013 *4 (2001) (Lynn, J.).

n6 *Id.*

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

This framework requires the Court to review *HN4*Texas law regarding an insurance agent's potential liability for negligent misrepresentations in the sale of insurance policies. The Sohmers need to establish the following five elements to prevail on such a claim: (1) Southwest made the representation in the course of its business, or in a transaction in which Southwest had a pecuniary interest; (2) Southwest supplied false information to guide Andrew; (3) Southwest did not exercise reasonable care or competence in obtaining or communicating the information to Andrew; (4) Andrew and the Sohmers suffered pecuniary loss by justifiably relying on Southwest's representation; and (5) Southwest's negligent misrepresentation proximately injured Andrew and/or the Sohmers. n7

Case 1:02-cv-00206   Document 8   Filed in TXSD on 12/09/2002   Page 24 of 35

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 19573                    Page 5 of 7

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n7 *Clardy Mfg. Co. v Marine Midland Business Loans, 88 F.3d 347, 357 (5th Cir. 1996); Heller Healthcare Finance, Inc. v. Irving D. Boyes, 2002 U.S. District LEXIS 12755 *9 (N.D. Tex. 2002) (Fitzwater, J.); McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests, 991 S.W.2d 787, 791, 42 Tex. Sup. Ct. J. 597 (Tex. 1999).*

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - **[*7]**

*HNS*In Texas, an insurance agent like Southwest is personally liable for misrepresentations made by its representatives during the course of the agency relationship. n8 To be liable, however, the agent must misrepresent "specific policy terms prior to a loss, and the insured's reliance upon that misrepresentation must actually cause the insured to incur damages." n9 Speculative and conclusory allegations of Southwest's misrepresentations do not support a cause of action. n10 An insurance agent's statement that a policy will protect an insured is generally an expression of opinion, and opinion alone is not sufficient to support an action for fraud or misrepresentation. n11 Moreover, the Court can consider that "given the relative financial positions of most [insurance] companies versus their . . . [agents], the only time an . . . [agent] is going to be sued is when it serves a tactical legal purpose, like defeating diversity." n12

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n8 *Waters v. State Farm Mut. Auto. Ins. Co., 158 F.R.D. 107, 108 (S.D. Tex. 1994)* (citing *State Farm Fire & Casualty Co. v. Gros., 818 S.W.2d 908, 913* (Tex.App.--Austin, 1991, no writ)). **[*8]**

n9 *Griggs v. State Farm Lloyds, 181 F.3d 694, 701 (5th Cir. 1999).*

n10 *Waters, 158 F.R.D. at 108* (citing *Jewell v. City of Covington, 425 F.2d 459, 460 (5th Cir. 1970)).*

n11 See *Rodgers v. Insurance Co. of State of Pennsylvania, 513 S.W.2d 113, 119* (Tex. Civ. App.--Fort Worth 1974, writ ref'd n.r.e.).

n12 *Waters, 158 F.R.D. at 109* (finding fraudulent joinder of insurance agent) (citing *Ayoub v. Baggett, 820 F. Supp. 298, 298-300 (S.D. Tex. 1993)* (finding fraudulent joinder)).

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

Here, the Sohmers plead nothing more than that a Southwest agent made a general statement about the policy's coverage:

> Plaintiffs would show that Defendant [Southwest] was aware at the time of the application process the needs for which Andy sought to change from the Mega [*sic*] Policy to the subject [United Wisconsin/American Medical policy]. Despite being aware of these circumstances, [Southwest] misrepresented the coverage that was to be provided by the subject Policy in order to entice **[*9]** Andy to cancel the Mega [*sic*] Policy and purchase the subject Policy." n13

This is the only reference to Southwest, the entity to which Andrew delivered his application. Deposition testimony that both parties rely on indicates that Andrew Sohmer filled out the application for the United Wisconsin policy on his own, without Southwest's help, and that he wanted to switch from his then-insurer, MEGA, because he was displeased with MEGA. n14

Case 1:02-cv-00206   Document 8   Filed in TXSD on 12/09/2002   Page 25 of 35

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 19573                    Page 6 of 7

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n13 Pls.' First Am. Original Pet. P 27.

n14 Def.'s App. In Support of Resp. at 3-7. On May 7, 2002, because of his failing health and pursuant to Texas Rule of Civil Procedure 202, Andrew Sohmer filed a petition to perpetuate testimony. His deposition took place on May 15 and 17, 2002.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

The Petition is wholly devoid of any allegations supporting a cause of action for misrepresentation upon which the Sohmers could recover against Southwest. Although Southwest made representations to Andrew in the course of its business, thus satisfying the first element of Plaintiffs'  [*10]  claim, Plaintiffs cannot satisfy the other four elements. There is nothing in the pleadings or in Andrew's deposition testimony to indicate that information Southwest provided was false, nor anything to indicate that Southwest failed to exercise reasonable care. There is no pleading of evidence that Southwest knew or could have known that the insurers would later rescind the policy. The Sohmers' bare allegations also lack sufficient particularity for the Court to conclude that the Sohmers contend that Southwest actually enticed or "guided" Andrew, or that Andrew relied on any specific factual representation. Instead, the pleadings and record evidence indicate that Andrew approached Southwest because he was unhappy with MEGA and filled out the application on his own.

The Court concludes that the Sohmers simply cannot prevail against Southwest on a theory of negligent misrepresentation, the only cause pled in their petition against Southwest. As a result, the Court concludes that Southwest was fraudulently joined, and the Court must disregard Southwest for purposes of assessing whether removal is proper under diversity jurisdiction. Complete diversity exists among the remaining parties;  [*11]  thus, removal is proper. The Court, therefore, DENIES the Sohmers' Motion to Remand.

The Court concludes that when the Defendants filed their notice of removal, the Sohmers failed to plead a cause of action against Southwest upon which relief can be granted; however, the Court does not dismiss Southwest at this time. The Plaintiffs may seek to amend to assert a proper claim against Southwest and/or Southwest's counsel may file a motion to dismiss or for summary judgment.

SO ORDERED.

DATED: October 15, 2002.

BARBARA M.G. LYNN

UNITED STATES DISTRICT JUDGE

NORTHERN DISTRICT OF TEXAS

Service: **Get by LEXSEE®**
Citation: **2002 U.S. Dist. LEXIS 19573**
View: Full
Date/Time: Monday, December 9, 2002 - 3:05 PM EST

About LexisNexis | Terms and Conditions

Copyright © 2002 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Service: **Get by LEXSEE®**
Citation: **2001 u.s. dist lexis 14312**

*2001 U.S. Dist. LEXIS 14312, \**

FLORIDA MARINE TRANSPORTERS, INC. VERSUS LAWSON & LAWSON TOWING CO., INC., ET
AL

CIVIL ACTION NO: 00-2602 SECTION: "J"(4)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA

2001 U.S. Dist. LEXIS 14312

August 29, 2001, Decided
August 30, 2001, Filed; August 31, 2001, Entered

**DISPOSITION: [\*1]** Defendants' Motion to Transfer the instant case GRANTED, and this
matter TRANSFERRED to the Eastern District of Missouri for possible consolidation with the
related case.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff owner brought suit against defendant operator for
damages arising out of a collision between plaintiff's vessel and the vessel operated by
defendant, but owned by a third-party. The collision occurred on the Mississippi River
near St. Louis, Missouri. Plaintiff filed suit in Louisiana, where it had an office, after
learning the third-party was filing suit in Missouri. Defendant moved to transfer under 28
U.S.C.S. § 1404(a).

**OVERVIEW:** Defendant argued that the subject case should be transferred to the district
where the third-party owner's suit was pending due to the case's lack of connection with
the subject forum and the unwarranted burden that the case imposed on the court.
Plaintiff relied on the "first to file" rule. The court held that a consideration of the private
and public interest factors demonstrated that the case's center of gravity was in the
other district, where the accident occurred. Defendant had specifically shown that the
witnesses, evidence, and proof were all closer to the other forum than to the subject
forum; the only connection between the case and the subject forum was plaintiff's
operations there. The fact that plaintiff was the first to file warranted only slight
consideration because it appeared the suit was filed with the intention of preempting
another plaintiff's (the third-party owner) choice of venue.

**OUTCOME:** The court granted the motion and transferred the case for possible
consolidation with the related case.

**CORE TERMS:** public interest, convenience, local interest, venue, judicial economy,
inconvenience, transferred, vessels, attendance, subpoena power, collision, closer, movant,
weigh, custodians, center of gravity, choice of forum, moving party, consolidated, duplicative,
localized, unwilling, special circumstances, air travel, hardship, distance, damaged, repair,
proven, barge

**LexisNexis(TM) HEADNOTES - Core Concepts - ♦ Hide Concepts**

📄 Civil Procedure > Venue & Choice of Forum > Change of Venue in Federal Courts

Case 1:02-cv-00206 Document 8 Filed in TXSD on 12/09/2002 Page 28 of 35

Get a Document - by Citation - 2001 U.S. Dist. LEXIS 14312          Page 2 of 8

*HN1*⚓ Change of venue in admiralty cases, like ordinary civil cases, is governed by 28 U.S.C.S. § 1404(a). Under § 1404(a), for the convenience of parties, witnesses and in the interest of justice, courts may transfer an action to any other district or division where it might have been brought.

📄 Civil Procedure > Venue & Choice of Forum > Change of Venue in Federal Courts
*HN2*⚓ A district where a lawsuit "might have been brought" pursuant to 28 U.S.C.S. § 1404(a) is one in which the court would have had subject matter jurisdiction, the defendants would have been subject to personal jurisdiction, and venue would have been proper.

📄 Civil Procedure > Venue & Choice of Forum > Change of Venue in Federal Courts
*HN3*⚓ In ruling on a 28 U.S.C.S. §1404(a) motion, courts consider a set of private interest and public interest factors.

📄 Civil Procedure > Venue & Choice of Forum > Change of Venue in Federal Courts
*HN4*⚓ The private interest factors for consideration in ruling on a 28 U.S.C.S. § 1404(a) motion include: (1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) possibility of view of premises, if view would be appropriate to the action; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

📄 Civil Procedure > Venue & Choice of Forum > Change of Venue in Federal Courts
*HN5*⚓ The public interest factors to be considered in ruling on a 28 U.S.C.S. § 1404(a) motion are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. As an additional public interest factor, courts consider judicial economy - that is, whether a transfer would avoid duplicative litigation and prevent waste of time and money. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

📄 Civil Procedure > Venue & Choice of Forum > Change of Venue in Federal Courts
*HN6*⚓ Encompassed within the judicial economy factor is the judge-made doctrine known as the "first to file" rule. Under the "first to file" rule, a district court may dismiss an action where the issues presented can be resolved in an earlier-filed action pending in another district court.

📄 Civil Procedure > Venue & Choice of Forum > Change of Venue in Federal Courts
*HN7*⚓ Certain exceptions exist to the "first to file" rule which result in less deference being given to the plaintiff's choice of forum. For instance, a complaint filed in anticipation of a subsequent suit brought by the defendant to the first action can avoid the operation of the first filed rule, when it appears the earlier filing was merely a forum-shopping maneuver.

📄 Civil Procedure > Venue & Choice of Forum > Change of Venue in Federal Courts

*HN8* The burden of proof in a motion to transfer is on the moving party, who must show that the convenience of parties and witnesses and interest of justice require a transfer to another district. As proof, the movant must provide affidavits containing admissible evidence (i.e., non-hearsay). Conclusory allegations are not sufficient - the moving party must identify the key witnesses to be called and present a generalized statement of what their testimony would include. In addition, the movant must show that trial in the district where the suit was originally filed will result in a balance of inconvenience to the movant - not that a transfer would merely shift the inconvenience to the non-moving party.

Civil Procedure > Venue & Choice of Forum > Change of Venue in Federal Courts
*HN9* Allegations of hardship unsupported by particulars by way of proof or affidavit cannot be accorded much weight in balancing conveniences on a motion to transfer venue.

Civil Procedure > Venue & Choice of Forum > Change of Venue in Federal Courts
*HN10* A fundamental principle guiding a court's 28 U.S.C.S. § 1404(a) transfer analysis is that litigation should proceed in that place where the case finds its center of gravity.

**COUNSEL:** For FLORIDA MARINE TRANSPORTERS, INC., plaintiff: Anthony John Staines, John Scott Bair, Staines & Eppling, Metairie, LA.

For LAWSON AND LAWSON TOWING CO., INC., defendant: Paul N. Vance, Burke & Mayer, New Orleans, LA.

**JUDGES:** CARL J. BARBIER, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** CARL J. BARBIER

**OPINION: ORDER AND REASONS**

Before the Court is defendant Lawson and Lawson Towing Company's ("Lawson's") **Motion to Transfer.** Plaintiff, Florida Marine Transporters, Inc. ("Florida Marine") opposes the motion. The motion, set for hearing on August 15, 2001, is before the Court on briefs without oral argument. Having considered the record, the memoranda of the parties, and applicable law, the Court finds that defendant's motion should be **GRANTED,** for the reasons which follow.

**BACKGROUND**

This case arose following a collision between the M/V ERNEST H. DOSS, owned and operated by Florida Marine of Louisiana, and the M/V GALE C, operated by Lawson, and owned by Riverway Corporation ("Riverway"). **[*2]** The collision occurred at the 3.7 mile marker in the Upper Mississippi River near St. Louis, Missouri. The barges of the M/V ERNEST H. DOSS, and the M/V GALE C and its tow suffered damage from the collision. Lawson and Florida Marine both contracted with companies located in St. Louis, Missouri, to survey and repair their damaged vessels.

Following unsuccessful settlement negotiations between Riverway and Florida Marine, Riverway informed Florida Marine that it would be filing a claim for damages in the matter. On August 31, 2000, immediately following this notification, Florida Marine, filed suit in the Eastern District of Louisiana against Lawson. Within days, Riverway, without knowledge of the previously filed Louisiana suit, filed a similar suit in the Eastern District of Missouri against Florida Marine for the damage to its barge.

Case 1:02-cv-00206    Document 8    Filed in TXSD on 12/09/2002    Page 30 of 35

Get a Document - by Citation - 2001 U.S. Dist. LEXIS 14312                    Page 4 of 8

Lawson has filed the instant motion seeking a transfer of this case to the Eastern District of Missouri under 28 U.S.C. § 1404(a) so that the two suits can be consolidated into one action in the interest of convenience. n1

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 Apparently, Florida Marine has also filed a motion in the Eastern District of Missouri seeking to have the subsequently filed Missouri case transferred to the Eastern District of Louisiana.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - **[*3]**

### Arguments of the Parties

Defendant Lawson argues that the instant case should be transferred to the Eastern District of Missouri due to its lack of connection with the Eastern District of Louisiana and the unwarranted burden that the case imposes on this court. The case could have been brought in the Eastern District of Missouri because the incident occurred within that jurisdiction. Also, the subsequently filed case of Riverway v. Florida Marine is pending in the Eastern District of Missouri and the two cases can be consolidated to promote judicial economy.

**Lawson argues that there is no significant connection** between the collision and the Eastern District of Louisiana, considering that all of the events took place in Missouri. Lawson's captain lives in St. Louis, the surveyors involved with the damaged vessels reside in the Eastern District of Missouri, the repairs to the vessels were made there, the documents containing sources of proof are located there, and there is a local interest in deciding the case in the Eastern District of Missouri because it is the location where the incident took place. In addition, all of the witnesses are closer to St. Louis than **[*4]** to New Orleans, there is subpoena power over the records custodians in the Eastern District of Missouri, and the survey reports from all of the vessels involved are in St. Louis.

In contrast, Florida Marine argues that based upon the "first to file" rule, its choice of venue should be given paramount consideration and the case should not be transferred unless it is proven to be absolutely necessary. Florida Marine also points out that Lawson did not demonstrate any special circumstances to indicate a transfer is necessary or would increase the level of convenience to the point of justifying a transfer of venue. Florida Marine also argues that Lawson completely ignores the inconvenience it would cause Florida Marine's witnesses and only focuses on making things easier for Lawson.

Florida Marine contends there would be no significant cost savings to the witnesses or parties since the distance they must travel is likely to require air travel and the difference in cost between flying to New Orleans rather than St. Louis is not enough of a hardship to justify the transfer. In addition, Florida Marine suggests that the necessary documents will be obtained in the discovery process no matter **[*5]** where the trial is held and is hardly an important consideration.

Florida Marine also points out that only one of Lawson's witnesses can actually be reached by the subpoena power of the Eastern District of Missouri and most of Lawson's witnesses are willing witnesses employed by Lawson. On the other hand, Florida Marine argues that it has three former employees who will be witnesses at trial. These witnesses are not willing, and Florida Marine will lose subpoena power over these witnesses if the case is transferred to St. Louis. Florida Marine argues that a transfer would be detrimental to its case and that this case should remain in Louisiana because Lawson has not proven that there are special circumstances which require a transfer.

Finally, Florida Marine argues that there is no more of a connection to the Eastern District of Missouri than there is to Louisiana. In fact, Florida Marine claims that there is more of a local

Case 1:02-cv-00206    Document 8    Filed in TXSD on 12/09/2002    Page 31 of 35

Get a Document - by Citation - 2001 U.S. Dist. LEXIS 14312    Page 6 of 8

piecemeal resolution of disputes that require uniform results. Id. at 729.

However, *HN7*certain exceptions exist to the "first to file" rule which result in less deference being given to the plaintiff's choice of forum. For instance, a complaint filed in anticipation of a subsequent suit brought by the defendant under the first action can avoid the operation of the first filed rule, when it appears the earlier filing was merely a forum-shopping maneuver. See, Pac. Empl. Ins. Co. v. M/V Capt. W.D. Cargill, 751 F.2d 801, 804 (5th Cir. 1985); see also, Sports Innovations, Inc., v. Specialized Bicycle Components, Inc., 2001 U.S. Dist. LEXIS 5065, No. 00-3272, 2001 WL 406264, *1 (E.D. La. Apr. 18, 2001).

*HN8*The burden of proof in a motion to transfer is on the moving party, who must show that "the convenience of parties and witnesses" and "interest of justice" require a transfer to another district. Karim v. Finch Shipping Co., Ltd., 94 F. Supp. 2d 727 (E.D. La. 2000), citing In re Air Crash Disaster Near New Orleans, 821 F.2d 1147 (5th Cir. 1987) [*10] (vacated and remanded on other grounds). As proof, the movant must provide affidavits containing admissible evidence (i.e., non-hearsay). Conclusory allegations are not sufficient - the moving party must identify the key witnesses to be called and present a generalized statement of what their testimony would include. Al Copeland Enterprises, Inc. v. Mowen, 1992 U.S. Dist. LEXIS 15271, No. 92-1989, 1992 WL 300771, *2 (E.D. La., Oct. 6, 1992); see also, Heller Financial, Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1293 (7th Cir. 1989). In addition, the movant must show that trial in the district where the suit was originally filed will result in a balance of inconvenience to the movant - not that a transfer would merely shift the inconvenience to the non-moving party. Lewis v. Magnolia Marine Transport, 1998 U.S. Dist. LEXIS 447, No. 97-3063, 1998 WL 19626, *2 (E.D. La., Jan. 16, 1998).

*Application of Law to Facts of Case*

**1. Private Interest Factors**

The relevant private interest factors in this case center upon the witnesses: the convenience or inconvenience to them; the ability to compel the attendance of the unwilling; and the related costs. Lawson claims, and provides specific [*11] proof by affidavit, that because all of its witnesses and documents are closer to St. Louis than to New Orleans it would be more convenient, less expensive, and in the interest of judicial economy to consolidate the two trials in the Eastern District of Missouri.

In response to Florida Marine's claim that traveling to New Orleans rather than St. Louis would not impose greater costs on the witnesses because the distance requires air travel, Lawson argues that many of the witnesses they intend to call will drive to the proceedings. Thus, there will in fact be a significant increase in the expense of making these witnesses available to testify in New Orleans. In addition, although the documents would be obtained through discovery in either forum, there is a chance that record custodians will have to be subpoenaed in Missouri to testify so the documents can be effectively presented and interpreted. These custodians are not employees of Lawson and may not be willing witnesses.

Thus, the record before the Court indicates that defendant has brought forward proof of actual, substantial inconvenience related to the attendance of witnesses. In contrast, Florida Marine has never offered any [*12] information about the witnesses it claims it will lose subpoena power over -- not even their names or the subject of their testimony. n4 *HN9*Allegations of hardship 'unsupported by particulars by way of proof or affidavit cannot be accorded much weight in balancing conveniences.'" Essex Crane Rental Corp. v. Vic Kirsch Constr. Co., 486 F. Supp. 529 (S.D.N.Y. 1980) (quoting Hostetler v. Baltimore & Ohio R. Co., 164 F. Supp. 72, 74 (W.D. Pa. 1958)). Therefore, the Court finds that the private interest factors weigh in favor of transferring this matter to the Eastern District of Missouri.

interest in hearing the case in the Eastern District of Louisiana because it is between a Louisiana citizen and another company doing business in Louisiana. Florida Marine claims that neither of the parties involved are citizens of Missouri, nor are any of the **[*6]** vessels still located there. Other than some of defendant's witnesses being closer to St. Louis than New Orleans, there is virtually no connection between the incident and that jurisdiction.

## DISCUSSION



*HN1*Change of venue in admiralty cases, like ordinary civil cases, is governed by § 1404(a). See Continental Grain Co. v. The F.B.L. 585, 364 U.S. 19, 26-27, 80 S. Ct. 1470, 1475, 4 L. Ed. 2d 1540 (1960). **Under 1404(a), "for the convenience of parties, witnesses and** in the interest of justice," courts may transfer an action "to any other district or division where it might have been brought." n2

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n2 *HN2*A district where a lawsuit "might have been brought" is one in which the court would have had subject matter jurisdiction, the defendants would have been subject to personal jurisdiction, and venue would have been proper. Hoffman v. Blaski, 363 U.S. 335, 80 S. Ct. 1084, 1089-1090, 4 L. Ed. 2d 1254 (1960).

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

*HN3*In ruling on a 1404(a) motion, courts consider a set of "private **[*7]** interest" and "public interest" factors. *HN4***The private interest** factors include: [1] the "relative ease of access to sources of proof; [2] availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; [3] possibility of view of premises, if view would be appropriate to the action; and [4] all other practical problems that make trial of a case easy, expeditious and inexpensive." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S. Ct. 839, 843, 91 L. Ed. 1055 (1947). n3 *HN5*The **public interest** factors to be considered are: [1] the administrative difficulties flowing from court congestion; [2] the "local interest in having localized controversies decided at home"; [3] the interest "in having the trial of a diversity case in a forum that is at home with the law that must govern" the action; [4] the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and [5] the unfairness of burdening citizens in an unrelated forum with jury duty. Id., at 67 S. Ct. 843. As an additional public interest factor, courts consider judicial economy -- **[*8]** that is, whether a transfer would avoid duplicative litigation and prevent waste of time and money. Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S. Ct. 805, 809, 11 L. Ed. 2d 945 (1964). "But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gilbert, 67 S. Ct. at 843.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n3 The Gilbert case pre-dated the 1948 enactment of § 1404(a), but the factors set forth there (in the context of a discussion of a forum non conveniens dismissal) are instructive in considering 1404(a) motions. 5A Wright & Miller, § 1352 at 269, citing Norwood v. Kirkpatrick, 349 U.S. 29, 31, 75 S. Ct. 544, 546, 99 L. Ed. 789 (1955).

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

*HN6*Encompassed within the judicial economy factor is the judge-made doctrine known as the "first to file" rule. Under the "first to file" rule, "a district court may dismiss an action where the issues presented can be resolved in an earlier-filed action pending in another district court." West Gulf Maritime Assn. v. ILA Deep Sea Local 24, 751 F.2d 721, 728 (5th Cir. 1985). **[*9] The purpose of the rule is to prevent** (1) inconsistent rulings between courts of coordinate jurisdiction and equal power, (2) wasteful duplicative litigation, and (3)

Case 1:02-cv-00206    Document 8    Filed in TXSD on 12/09/2002    Page 33 of 35

Get a Document - by Citation - 2001 U.S. Dist. LEXIS 14312                    Page 7 of 8

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n4 When asked in an interrogatory served in the parallel case in Missouri, Florida Marine swore that it believed that all of the crew members involved in the incident were presently employed by PBC Management, Inc., which shares the exact same address as Florida Marine in New Orleans.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

## Public Interest Factors

The parties in this matter have introduced no evidence going to the public interest [*13] factors that the Court must consider, although both argue that the local interest factor -- the local interest in having localized controversies resolved at home - weighs in their favor.

Because the incident occurred in Missouri, the Court finds that the Eastern District of Missouri has the greater local interest in the case. In fact, the only connection the case has to Louisiana is that Florida Marine happens to maintain an office in New Orleans. For this reason, the Court finds that the public interest considerations also weigh in favor of transfer.

## 2. Judicial Economy & the First to File Rule

While it is true that the Louisiana case was filed first, it appears it was filed only after (and immediately after) Riverway notified Florida Marine that it was rejecting its settlement offer and would file suit in Missouri. The Court finds that whatever consideration Florida Marine might otherwise be given because it filed first is nullified by its having filed the instant suit in order to preempt Riverway's venue selection.

## Conclusion

"HN10‭A fundamental principle guiding the Court's [1404(a) transfer] analysis is that litigation should proceed in that place where the case [*14] finds its 'center of gravity.'" Laitram Corp. v. Hewlett-Packard Co., 120 F. Supp. 2d 607, 609 (E.D. La. 2000)(internal quotations omitted). Consideration of the private and public interest factors demonstrate that this case's center of gravity lies in the Eastern District of Missouri, where the accident occurred. Defendant has specifically shown that the witnesses, evidence, and proof are all closer to St. Louis than New Orleans; the only connection between this case and Louisiana is Florida Marine's operations in New Orleans. The fact that Florida Marine was the first to file warrants only slight consideration because it appears the suit was filed with the intention of preempting another plaintiff's (Riverway's) choice of venue. Accordingly;

IT IS ORDERED that defendants' Motion to Transfer the instant case should be and is hereby GRANTED, and this matter should be and is hereby TRANSFERRED to the Eastern District of Missouri for possible consolidation with the related case.

New Orleans, Louisiana, this 29 day of August, 2001.

CARL J. BARBIER

UNITED STATES DISTRICT JUDGE

Service:  Get by LEXSEE®
Citation:  2001 u.s. dist lexis 14312
View:  Full
Date/Time:  Monday, December 9, 2002 - 3:00 PM EST

About LexisNexis | Terms and Conditions

Copyright © 2002 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ALBERT PULLEN  ET AL., | § | |
|     Plaintiffs, | § | |
| | § | |
| | § | |
| V. | § | C. A. NO. B-02-206 |
| | § | |
| FARMERS GROUP, INC., ET AL. | § | |
|     Defendants. | § | |

## ORDER DENYING REMAND

The Court, having considered Plaintiffs' Motion to Remand and Defendants' Opposition, has decided to DENY the motion.

Plaintiffs' Motion to Remand is hereby denied.

Signed this _____ day of _____, 2002.

_____
UNITED STATES DISTRICT COURT JUDGE

30373015.1