IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 1 7 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ALBERT PULLEN  ET AL., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | C. A. NO. B-02-206 |
| | § | |
| FARMERS GROUP, INC., ET AL., | § | |
| Defendants. | § | |

## DEFENDANTS' MOTION TO DISMISS, OR
## ALTERNATIVELY, FOR JUDGMENT AND BRIEF IN SUPPORT

Eduardo Roberto Rodriguez
State Bar No. 17144000
Federal I.D. No. 1944
Robert Patrick Rodriguez
State Bar No. 24002861
Federal I.D. No. 22949
1201 East Van Buren
Brownsville, Texas 78520
Telephone: 956.542.7441
Telecopier: 956.541.2170

Of Counsel:
RODRIGUEZ, COLVIN & CHANEY, L.L.P.

Layne E. Kruse
State Bar No. 11742550
Federal I.D. No. 2383
Richard N. Carrell
State Bar No. 03871000
Federal I.D. No. 4473
Gerard G. Pecht
State Bar No. 15701800
Federal I.D. No. 4784
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone:  713-651-5151
Telecopier:  713-651-5246

Of Counsel:
FULBRIGHT & JAWORSKI L.L.P.

Attorneys-in-Charge for Defendants

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................1

Statement of Undisputed Facts.........................................................................2

I.    Previous State Court Litigation By Plaintiffs......................................2

II.   Prior State Court Litigation By The State Of Texas............................2

III.  Plaintiffs' Class Action Allegations Piggyback On The State's Allegations ........4

IV.   The State of Texas And Farmers Announce A Statewide Class Action Settlement.........................................................................5

Argument and Authorities.................................................................................6

I.    Plaintiffs' Contractual Release Precludes This Action.........................6

II.   The State Court's Order Of Dismissal Dismissing Plaintiffs' Claims With Prejudice Constitutes Res Judicata .....................................8

III.  The State's Class Action Settlement Will Also Have Preclusive Effect.............12

      A.   The State's Class Action Settlement Will Function As Res Judicata......12

      B.   Plaintiffs' Class Action Suit Is Duplicative And Will Waste Judicial Resources..............................................................13

IV.   This Court Should Dismiss This Action Consistent With The First-To-File Rule Instructive In This Circuit.......................................13

Prayer ...............................................................................................................14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*American Furniture Co. v. International Accommodations Supply*, 721 F.2d 478 (5th Cir. 1981) ................................................................................ 11

*Carlough v. Amchem Products, Inc.*, 10 F.3d 189 (3d 1993) ......................................... 13

*Caruso v. Candie's, Inc.*, 201 F.R.D. 306 (S.D.N.Y. 2001) ............................................. 12

*In re Corrugated Container Antitrust Litigation*, 659 F.2d 1332 (5th Cir. 1981) ............. 13

*Dubroff v. Dubroff*, 833 F.2d 557 (5th Cir. 1987) .......................................................... 11

*In re Glenn W. Turner Enterprises Litigation*, 521 F.2d 775 (3d Cir. 1975) ..................... 9

*Goldberg v. R.J. Longo Construction Co.*, 54 F.3d 243 (5th Cir. 1995) .......................... 11

*James v. Bellotti*, 733 F.2d 898 (1st Cir. 1984) ............................................................. 13

*Jarrard v. Southeastern Shipbuilding Corp.*, 163 F.2d 960 (5th Cir. 1947) ..................... 9

*Koos v. First National Bank of Peoria*, 496 F.2d 1162 (7th Cir. 1974) ............................ 8

*Manii v. New York Life Insurance Co.*, 945 F.Supp. 919 (D.S.C. 1996) .......................... 12

*Mann Manufacturing, Inc. v. Hortex, Inc.*, 439 F.2d 403 (5th Cir. 1971) ...................... 14

*Matsushita Electric Industrial Co. v. Epstein*, 516 U.S. 367 (1996) ......................... 12, 13

*Nail v. Brazoria County Drainage District No. 4*, 992 F.Supp. 921 (S.D.Tex. 1998) ........ 7

*Save Power Limited v. Synteck Finance Corp.*, 121 F.3d 947 (5th Cir. 1997) ........... 13, 14

*West Gulf Maritime Assoc. v. ILA Deep Sea Local 24*, 751 F.2d 721 (5th Cir. 1985) ..... 14

## STATE CASES

*In re Alford Chevrolet-Geo*, 997 S.W.2d 173 (Tex. 1999) ............................................... 5

*Blum v. Restland of Dallas, Inc.*, 971 S.W.2d 546 (Tex. App.—Dallas 1997, pet. denied) ................................................................................................... 11

*Dresser Industrial, Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505 (Tex. 1993) ............... 7

*Fernandez v. Mem'l Healthcare System, Inc.*, 896 S.W.2d 227 (Tex. App.—Houston [1st Dist.] 1995, writ denied) .................................................................. 10

*Hines v. Hash*, 843 S.W.2d 464 (Tex. 1992) ................................................... 5

*Keck, Mahin & Cate v. Insurance Co. of N. Am.*, 20 S.W.3d 692 ( Tex. 2000 ) ............... 8

*Soto v. Phillips*, 836 S.W.2d 266 (Tex. App.—San Antonio 1992, writ denied) ............. 10

*Webb v. Persyn*, 866 S.W.2d 106 (Tex. App.—San Antonio 1993, no writ) ................... 11

## DOCKETED CASES

*Mathews v. Sears Pension Plan*, No. 95 C 1988, 1996 U.S. Dist. LEXIS 5337 (N.D. Ill. Apr. 22, 1996) ..................................................................... 8

## STATE STATUTES

Ins. Code. Art. 21.21-8 .......................................................................... 3

Tex. Ins. Code art. 21.21 § 3 .................................................................... 4

Tex. Ins. Code art. 21.21 § 4 ................................................................. 3, 4

## OTHER AUTHORITIES

Wright & A. Miller, Federal Practice and Procedure § 2364 .............................. 11

Pursuant to Fed. R. Civ. P. 12(c) and 56 and subject to and without waiver of their objection to venue and other objections, defendants Farmers Group, Inc., Farmers Underwriters Association, Fire Underwriters Association, Farmers Insurance Exchange, and Fire Insurance Exchange (collectively "defendants" or "Farmers ") file this their Motion to Dismiss, or Alternatively, for Judgment and Brief in Support, and, as grounds, would respectfully show the Court as follows:

### INTRODUCTION

This action should be dismissed, or alternatively, the Court should grant judgment as a matter of law on the pleadings. Plaintiffs previously filed suit against Farmers in the 197th District Court in Cameron County, where, after plaintiffs signed a full release, the state court issued an Order of Dismissal, dismissing all claims with prejudice. Plaintiffs' release bars this action, and moreover, the state court's dismissal constitutes res judicata. Even if plaintiffs' claims are not barred by their release or precluded by the state court's dismissal with prejudice, the Court should dismiss this action, nonetheless, because this suit will be barred by the pending class settlement in Travis County in the State's suit against Farmers.

Before plaintiffs filed this lawsuit, the Attorney General and Commissioner of Insurance filed suit on behalf of Texas policyholders against Farmers. The issues raised by plaintiffs' suit —which are identical to those in the State's suit— have been resolved through a pending class settlement. Indeed, the State and Farmers have entered into a state-wide settlement agreement, which has been signed, publicly announced, and which is set for preliminary approval by the Travis County court on May 19, 2003. Resolution of the State's class action through settlement will also constitute res judicata and bar plaintiffs' suit.

## STATEMENT OF UNDISPUTED FACTS

### I.    Previous State Court Litigation By Plaintiffs

Several months prior to filing this action, plaintiffs filed suit against Farmers in state court, alleging violations of the Texas Insurance Code and Texas Deceptive Trade Practices Act. *See* Plaintiffs' Original Petition at Exhibit A.[1]  Among other things, plaintiffs claimed that Farmers misrepresented the terms and conditions of their insurance policy. *See id.*  The state court action was ultimately resolved through a compromise and settlement.  Plaintiffs signed a full release, releasing all claims against Farmers.  A true and correct copy of the Settlement Agreement and General Release executed and verified by plaintiffs is attached at Exhibit B.[2]  In addition, the state court issued an Order of Dismissal dismissing all claims against Farmers with prejudice. *See* Order of Dismissal at Exhibit C.

### II.    Prior State Court Litigation By The State Of Texas

Plaintiffs filed this putative class action against Farmers in state court, which was subsequently removed to this Court.  Plaintiffs' lawsuit, however, essentially copied or borrowed language from a lawsuit previously filed by the State of Texas, wherein the Texas Attorney General, on behalf of the State of Texas and Texas Commissioner of Insurance and for the benefit of Texas policyholders, sued Farmers and sought damages and injunctive relief on matters related to Farmers' use of credit scoring and Farmers' underwriting practices in the State of Texas.[3]

---

[1] Cause No. CL 2002-05-2123-C; *Alberto and Zonia Pullen, et al. v. Farmers Insurance Group a/k/a Farmers Insurance Exchange, Jose Gutierrez Insurance, Jose Gutierrez, and J.P.Meuch*; In the 197th Judicial District Court Cameron County, Texas.

[2] Defendants obtained the Settlement Agreement and General Release from Farmers' counsel who represented Farmers in the state court litigation.

[3] *State of Texas and The Texas Commissioner of Insurance v. Farmers Group, Inc., Farmers Underwriters Association, Fire Underwriters Association, Farmers Insurance Exchange, and Fire Insurance Exchange*, C.A. No.

The State's lawsuit was instituted by the Attorney General on August 5, 2002, alleging violations of the Texas Insurance Code and Texas Deceptive Trade Practices Act. State's Amended Petition at ¶ ¶ 35-43. Among other things, the State alleged that Farmers improperly used the credit histories of Texas policyholders to calculate premiums and failed to adequately disclose to Texas policyholders that Farmers used credit scoring in its underwriting practices. The State also claimed that Farmers failed to adequately disclose a management fee charged Texas policyholders and that Farmers improperly charged Texas policyholders for catastrophes occurring in other states:

> The manner in which Farmers uses credit history in determining the Exchanges' homeowners-insurance premiums is unfair, discriminatory, or both, and violates Tex. Ins. Code. Art. 21.21-8 . . . . (State's Amended Petition at ¶ 35);

> \*       \*       \*

> [Farmers'] failure to adequately disclose that [it] use[s] credit history in calculating premiums and [its] failure to disclose when the use of credit history results in an increase in premiums constitute misleading, deceptive acts or practices in the business of insurance under Tex. Ins. Code art. 21.21 § 4, specifically, but without limitation, in violation of Tex. Ins. Code. Art. 21.21 § 4(11) concerning the misrepresentation of the terms of an insurance policy and § 17.46 of the DTPA (*Id.* at ¶ 39);

> \*       \*       \*

> Farmers' failure to adequately disclose that switching policyholders from Farmers Insurance Exchange into Fire Insurance Exchange resulted in a higher premium for those policyholders constitutes misleading, deceptive acts or practices in the business of insurance under Tex. Ins. Code art. 21.21 § 4 and violates § 17.46 of the DTPA (*Id.* at ¶ 41); and

> \*       \*       \*

> The management fee that [Farmers] receives . . . was not properly disclosed to all Texas policyholders and constitutes an unfair or deceptive act or practice in the business of insurance in violation of Tex. Ins. Code art. 21.21 § 3 and Tex. Ins.

---

GV 202501, in the 261st Judicial District Court of Travis County, Texas. The State's Amended Petition is attached at Exhibit D.

Code art. 21.21 § 4, specifically, but without limitation, in violation of Tex. Ins. Code. Art. 21.21 § 4(11) concerning the misrepresentation of the terms of an insurance policy and § 17.46 of the DTPA (*Id.* at ¶ 43).

State's Amended Petition at Exhibit D.

## III.    Plaintiffs' Class Action Allegations Piggyback On The State's Allegations

The plaintiffs' allegations in this suit mirror the allegations and claims made by the State in its suit against Farmers. Indeed, plaintiffs apparently copied the allegations in the State's petition verbatim, as evidenced by the language in plaintiffs' Original Petition, initially filed in State Court in this action prior to removal, wherein plaintiffs state that service on defendants was appropriate through the Texas Secretary of State for certain defendants "*because this suit is being brought by the State of Texas*." Plaintiffs' Original Class Action Petition at 3 (Exhibit E, hereto) (emphasis added).

In this action, plaintiffs specifically allege, as does the State of Texas in its previously filed suit, that Farmers violated the Texas Insurance Code and Texas Deceptive Trade Practices Act by improperly using credit scoring in calculating premiums for Texas policyholders, failing to adequately disclose to policyholders that it used their credit history in calculating premiums, and failing to disclose to policyholders that it charged a management fee:

> Defendants have been using the credit history of their policyholders as a significant factor in calculating premiums for such policyholders. Defendants used the credit information as part of a credit scoring system that was used as a basis for determining premiums and the amount of coverage (Plaintiffs' Third Amended Petition at 4);.
>
> *                *                *
>
> Defendants failed to adequately disclose to policyholders that they used their credit history to increase premiums or give discounts and failed to disclose the effect of the policyholder's score and credit history on the amount of premiums charged or coverage obtained. Defendants further failed to adequately disclose that the policyholders had the right to contest or update their score or the effect of their credit history on their score. Defendants used such credit history as a means

to switch policyholders into higher, unregulated companies and did so without full disclosure (*Id.*);

\* \* \*

Defendants further discriminated against Texas policyholders by charging them for catastrophes that occur in other states and also charging them disproportionately for catastrophes nationwide (*Id.* at 4-5); and

\* \* \*

Additionally, the Defendants failed to notify policyholders in the Exchanges that they charge a management fee based on the percentage of premiums collected, the terms of such fees, and that such fees benefit Defendants to the detriment of the Exchanges and the policyholders (*Id.* at 5).

*See* Plaintiffs' Third Amended Class Action Petition ("Third Amended Class Action Petition") at 4-5 (Exhibit F, hereto). The allegations are identical to those made by the State in its suit against Farmers. *Cf.* State's Amended Petition at ¶ ¶ 35-43 (Exhibit D), *supra.*[4]

## IV.    The State of Texas And Farmers Announce A Statewide Class Action Settlement

After defendants removed this case to this Court, the State of Texas and Farmers announced a comprehensive state-wide settlement of the State's class action suit. The settlement has been signed by the State and Farmers and presented to a court in Travis County, Austin, Texas for approval. *See* Notice of Hearing attached at Exhibit G, hereto. The preliminary approval hearing is set for May 19, 2003. The settlement documents detailing the terms of the

---

[4]If this case is not dismissed, it should be abated for the independent reason that plaintiffs have wholly failed to comply with the statutory notice requirements of the DTPA and Insurance Code. "The Texas Deceptive Trade Practices-Consumer Protection Act provides that 'as a prerequisite to filing a suit seeking damages' under the Act, 'a consumer shall give written notice' to the defendant of his complaint." *Hines v. Hash*, 843 S.W.2d 464, 468-69 (Tex. 1992). The Insurance Code contains an identically worded provision in article 21.21 § 16(g) and (h) imposing pre-suit notice requirements on plaintiffs. Plaintiffs have either ignored or simply disregard their obligation to provide statutory notice as required by the DTPA and Insurance Code. Plaintiffs' failure to comply with the strict notice requirements of the DTPA and Insurance Code renders this suit subject to automatic abatement upon the filing of a plea in abatement by defendants. *See, e.g., In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 176 (Tex. 1999) ("If a consumer files a DTPA suit without sending notice, the defendant is entitled to abatement of the suit until sixty days after proper notice is sent."). "Under section 17.505, '[a] suit is automatically abated without the order of the court beginning on the 11th day after the date a [verified and uncontroverted] plea in abatement is filed' and continuing 'until the 60th day after the date the written notice is served in compliance with Subsection (a).'" *See id.* at 178. If necessary, defendants will file the appropriate motion in federal court to abate.

class action settlement are available on the Texas Department of Insurance web site.  *See* News Release, "State of Texas, Farmers Insurance Reach Agreement."[5]  The statewide settlement includes substantial monetary compensation (estimated at $100 million) and injunctive relief, both retrospective and prospective, in favor of Texas policyholders who have homeowners insurance and automobile insurance with Farmers.  The State's class settlement resolves all issues raised in the State's lawsuit on which plaintiffs now seek to piggyback their claims.

<u>ARGUMENT AND AUTHORITIES</u>

I.     **Plaintiffs' Contractual Release Precludes This Action**

This action is barred by plaintiffs' full release of claims in the state court action, wherein plaintiffs released, by contract, all claims against Farmers:

> Plaintiffs/Releasors agree that as to Defendants/Releases (including Farmers and Jose Gutierrez) that *all claims are being released* . . . .
>
> \*     \*     \*
>
> This Release contemplates *all claims that were asserted or assertable* in the above-referenced lawsuit . . . .
>
> \*     \*     \*
>
> Plaintiffs/Releasors *release and forever discharge* Defendants/Releasees (including Farmers and Jose Gutierrez), all member exchanges, all related entities, and their affiliates, subsidiaries, heirs, assigns, employees, agents, assignees, successors in interest, insurers, adjusters, representatives and attorneys, *of and from any and all claims liabilities* . . . *whether or not such claims are specifically set forth in the Release* . . .
>
> \*     \*     \*
>
> The Releasing Parties *hereby RELEASE and FOREVER DISCHARGE* Defendants/Releasees, Farmers Insurance Group a/k/a Farmers Insurance Exchange, Jose Gutierrez Insurance, Jose Gutierrez, and J.P. Meuch, all member exchanges, all related entities, their heirs and assigns and their respective principals, partners, past or present officers, directors, shareholders, insurers,

---

[5]Press Release and Settlement Agreement Available at: www.tdi.state.tx.us/commish/nr11302a.html.

adjusters, employees, attorneys, agents, servants, representatives, subsidiaries, predecessors, successors, affiliated or associated entities, assigns, heirs, executors, administrators and insurance companies (hereinafter referred to as "Defendants/Releasees/Released Parties"), *of and from any and all claims, demands, damages, actions, causes of action, or suits in equity, of whatever kind or nature, whether heretofore or hereafter accruing and whether now known or not known to the parties*, including, but not limited to, damages for or because of any matter or thing admitted or suffered to be done by the Defendants/Releasees/Released Parties *prior to and including the date of the signing of this Release that directly or indirectly arise out of the claim numbers set forth herein, and all other pending claims.*

Settlement Agreement and General Release at Exhibit B (emphasis added).[6]  Under Texas law, "a release 'operates to extinguish the claim or cause of action as effectively as would a prior judgment between the parties and is an absolute bar to any right of action on the released matter.'" *Nail v. Brazoria County Drainage Dist. No. 4*, 992 F. Supp. 921, 925 (S.D. Tex. 1998) (applying Texas law) (granting judgment as a matter of law); *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993) ("In general, a release surrenders legal rights or obligations between the parties to an agreement . . . . It operates to extinguish the claim or cause of action as effectively as would a prior judgment between the parties and is an absolute bar to any right of action on the released matter."). In the state court action, plaintiffs executed a broad release encompassing all claims. Plaintiffs expressly released "*any and all claims, demands, damages, actions, causes of action, or suits in equity, of whatever kind or nature, whether heretofore or hereafter accruing and whether now known or not known to the parties . . . that were asserted or assertable . . . . whether or not such claims are specifically set forth in the Release.*" *See* Settlement Agreement and General Release (Exhibit B), *supra*.

---

[6]Plaintiffs in this action are being represented by the same counsel, Benigno "Trey" Martinez, who represented plaintiffs in their state court suit against Farmers, where plaintiffs released all claims against Farmers. *See* Settlement Agreement and General Release at 8 (Exhibit B).

In *Keck, Mahin & Cate v. Insurance Co. of N. Am.*, 20 S.W.3d 692, 698 (Tex. 2000), the Texas Supreme Court found a similar broad-form release sufficiently binding on the parties. *See id* at 698 ("The present release is clearly broader than the one in *Brady*. It is not expressly limited to a specific claim or transaction but rather purports to cover *'all demands, claims or causes of action of any kind whatsoever.'* Nothing in *Brady* forbids such a broad-form release.") (emphasis added). The Texas Supreme Court noted that "[a]lthough releases often consider claims existing at the time of execution, a valid release may encompass unknown claims and damages that develop in the future." *See id.* Plaintiffs' broad release, like the broad release at issue in the *Keck* case, expressly releases all claims of any kind whatsoever. The release not only bars plaintiffs' individual claims but also operates to disqualify plaintiffs from serving as class representatives in a class action suit. *Cf. Mathews v. Sears Pension Plan*, No. 95 C 1988, 1996 U.S. Dist. LEXIS 5357, at *10 (N.D. Ill. Apr. 22, 1996) ("a claim lacking merit disqualifies a named plaintiff as a proper class representative") (holding that because the named class representative, who had executed a general release and therefore was subject to a release defense, his claims were not typical of class members and he was not an adequate representative); *Koos v. First Nat. Bank of Peoria*, 496 F.2d 1162, 1164-65 (7th Cir. 1974) ("Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative."). Because plaintiffs released all claims against Farmers, plaintiffs' class action petition must be dismissed, or alternatively, this Court should grant judgment as a matter of law.

## II. The State Court's Order Of Dismissal Dismissing Plaintiffs' Claims With Prejudice Constitutes Res Judicata

After plaintiffs released all claims against Farmers, the state court issued an Order of Dismissal, dismissing plaintiffs' claims on January 15, 2003, with prejudice:

> IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED that all claims
> by Alberto and Zonia Pullen, individually and on Behalf of Minor Ana Frances
> Pullen, Sofia and Maria Christina Pullen against Farmers Insurance Group [*sic*]
> a/k/a Farmers Insurance Exchange, Jose Gutierrez Insurance, Jose Gutierrez, and
> J.P. Meuch *are hereby dismissed with prejudice* to the refiling of same . . . .

Order of Dismissal at Exhibit C (emphasis added). The state court's resolution of plaintiffs'

previously filed state court suit operates to bar this action on grounds of res judicata.

"Whenever a judgment is rendered in one court it may be pleaded in the other and the

effect of that judgment will be determined by the application of the principles of res judicata by

the other court." *In re Glenn W. Turner Enterprises Litig.*, 521 F.2d 775, 780 (3rd Cir. 1975).

"It is well settled that a final judgment or decree on the merits in the courts of a state is

conclusive in the federal courts, whether the question determined is one of federal, general, or

local law." *Jarrard v. Southeastern Shipbuilding Corp.*, 163 F.2d 960, 961 (5th Cir. 1947).

Plaintiffs' purported claims in this case arise from the same nucleus of operative facts that gave

rise to plaintiffs' action in state court. Specifically, plaintiffs here purport to sue Farmers based

on their insurance policy, for alleged misrepresentations and violations under the DTPA and

Insurance Code and allege that Farmers violated the DTPA and Insurance Code by:

> a.    Falsely representing that goods or services are of a particular standard,
> quality, or grade;
>
> b.    Failing to disclose information concerning goods or services that was
> known at the time of the transaction if the failure to disclose was intended to
> induce [plaintiffs] into a transaction [plaintiffs] would not have entered into had
> the information been disclosed; and
>
> c.    Representing that an agreement confers or involves rights, remedies, or
> obligations which it does not have or involve, or which are prohibited by law.

Third Amended Class Action Petition at 5-6 (Exhibit F). Similar allegations were made by

plaintiffs against Farmers in plaintiffs' state court suit based on their insurance policy, where

plaintiffs alleged that Farmers made misrepresentations and violated the DTPA and Insurance

Code by:

> j.    representing that goods or services are of a particular standard, quality, grade . . . ;
>
> k.    representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; and
>
> m.    Failing to disclose information concerning goods or services that was known at the time of the transaction if the failure to disclose was intended to induce [plaintiffs] into a transaction [plaintiffs] would not have entered into had the information been disclosed.

Plaintiff Original Petition (State Court) at 5 (Exhibit A). The claims asserted by plaintiffs in this

action could have been brought in the state court suit as the claims concern the terms and

conditions of plaintiffs' insurance policy and purported omissions or misrepresentations by

Farmers concerning plaintiffs' insurance policy. Both suits alleged violations of the DTPA and

Insurance Code.

"The Texas Supreme Court has consistently held that res judicata applies to claims that

'might have been' made in the earlier suit." *Soto v. Phillips*, 836 S.W.2d 266, 269

(Tex.App.—San Antonio 1992, writ denied); *see also Fernandez v. Mem'l Healthcare Sys., Inc.*,

896 S.W.2d 227, 232 (Tex.App.—Houston [1st Dist.] 1995, writ denied) ("Res judicata, or claim

preclusion, bars all claims that were brought, *or could have been brought*, in the previous

action.") (emphasis in original). Plaintiffs were obviously aware of their claims because

plaintiffs filed this action on September 23, 2002 in a separate state court in Cameron County[7],

while their prior state court suit against Farmers was still ongoing in another state court in

---

[7]Cause No. 2002-09-3753-A; in the 107th Judicial District Court of Cameron County, Texas, styled *Albert Pullen and Zonia Pullen, on behalf of themselves and others similarly situated v. Farmers Group, Inc., Farmers Underwriters Association, Fire Underwriters Association, Farmers Insurance Exchange, Fire Insurance Exchange, and Jose Gutierrez.*

Cameron County,[8] which is contrary to Texas law. *Webb v. Persyn*, 866 S.W.2d 106, 107 (Tex.App.—San Antonio 1993, no writ) ("The prohibition against splitting causes of action and trying them piecemeal is a species of res judicata."). Plaintiffs cannot avoid the preclusive effect of the state court's Order of Dismissal, dismissing plaintiffs' claims with prejudice, by attempting to split their causes of action. The state court's judgment bars all claims that were brought or that could have been brought. *Blum v. Restland of Dallas, Inc.*, 971 S.W.2d 546, 551 (Tex.App.—Dallas 1997, pet. denied) ("The doctrine of res judicata operates to bar all claims arising from the same nucleus of operative facts that *could* have been brought in the previous lawsuit, not only those claims that actually were brought.") (emphasis in original); *see also Goldberg v. R.J. Longo Constr. Co.*, 54 F.3d 243, 246 (5th Cir. 1995) ("Under federal law, res judicata bars 'all claims that were or *could have been* advanced in support of the cause of action on the occasion of its former adjudication . . . not merely those that were adjudicated.'").

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." *Dubroff v. Dubroff*, 833 F.2d 557, 558 (5th Cir. 1987); *see also American Furniture Co. v. Int'l. Accommodations Supply*, 721 F.2d 478, 482-83 (5th Cir. 1981) ("state court adjudication [barred] subsequent consideration of the issue in federal court . . . . When the state court judgment of May 2, 1978, became definitive, the matter ended."). Here, the state court's Order of Dismissal operates clearly as res judicata. *See* C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2364, at 163 (A dismissal with prejudice is a complete adjudication and a bar to a further action between the parties.); *see also Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S.

---

[8]Cause No. CL 2002-05-2123-C; *Alberto and Zonia Pullen, et al. v. Farmers Insurance Group a/k/a Farmers Insurance Exchange, Jose Gutierrez Insurance, Jose Gutierrez, and J.P.Meuch*; In the 197th Judicial District Court Cameron County, Texas.

367, 373 (1996) ("The Full Faith and Credit Act mandates that the 'judicial proceedings' of any State 'shall have the same full faith and credit in every court within the United States . . . .'").

## III.    The State's Class Action Settlement Will Also Have Preclusive Effect

The issues raised by plaintiffs' suit are identical to those raised in the State's suit against Farmers and involves the same putative class members.  Accordingly, even if plaintiffs' release and the state court's dismissal in the 197th District Court do not foreclose plaintiffs' suit— which they clearly do — this Court should dismiss plaintiffs' suit, nonetheless, because the pending resolution of the State's class action suit, through a class settlement, will likewise operate to bar this action.  Hence, the Court need not waste its judicial resources in allowing this case to proceed when it will surely be subject to summary dismissal under established principles of res judicata flowing from the entry of a final judgment based on a class action settlement.

### A.    The State's Class Action Settlement Will Function As Res Judicata

The State and Farmers have already publicly announced a state-wide, class action settlement of the claims made the basis of plaintiffs' suit.  The settlement will be submitted to the court in Travis County, Texas for preliminary approval, and a hearing is currently set for May 19, 2003.  *See* Notice of Hearing, attached as Exhibit G.  "It is well settled that a class action judgment is binding on all class members." *Caruso v. Candie's, Inc.*, 201 F.R.D 306, 311 (S.D.N.Y 2001).  Equally settled is the principle that "a consent judgment approving a settlement in a state court constitutes a final judgment on the merits for res judicata purposes." *Manii v. New York Life Ins. Co.*, 945 F. Supp. 919, 923 (D.S.C. 1996); *Jarrard*, 163 F.2d at 961 (holding that state court class action settlement barred subsequent suit in federal court between the parties involving same claims); *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 399 (1996) ("Class

members cannot subsequently relitigate the claims barred by the [class] settlement in a federal court.").

### B. Plaintiffs' Class Action Suit Is Duplicative And Will Waste Judicial Resources

As already explained, plaintiffs merely seek to piggyback their claims on the allegations made by the State in its suit against Farmers. In fact, as discussed above, plaintiffs' allegations substantially track the allegations in the State's petition and plaintiffs' theories of liability are based on the same conduct at issue in the State's suit. These issues, however, have been resolved in the State's litigation yielding a state-wide class settlement for the benefit of Texas policyholders. Where a class action settlement is pending, federal courts have taken preemptive steps to avoid wasteful and duplicative litigation. *Cf. Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 203-04 (3d Cir. 1993) ("Our sister circuits have also identified impending . . . settlements in federal actions as justifying 'necessary in aid of jurisdiction' injunctions of duplicative state actions.") (affirming injunction precluding class actions where prospect of a class action settlement was imminent); *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332 (5th Cir. 1981) (state court proceeding halted to protect federal jurisdiction over pending settlement); *James v. Bellotti*, 733 F.2d 898, 994 (1st Cir. 1984) (provisionally approved settlement may justify injunction against other suits).

### IV. This Court Should Dismiss This Action Consistent With The First-To-File Rule Instructive In This Circuit

This Court, in addition, has discretion to dismiss this action in light of the first-to-file rule adopted by the Fifth Circuit. *See, e.g., Save Power Limited v. Synteck Finance Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (federal court has discretion to dismiss suit in light of previously filed suit). "Consideration of comity and orderly administration of justice dictate that two courts of

equal authority should not hear the same case simultaneously." *West Gulf Maritime Assoc. v. ILA Deep Sea Local 24*, 751 F.2d 721, 730 (5th Cir. 1985). The Fifth Circuit adheres to the first-to-file rule to "avoid the waste of duplication . . . [and] piecemeal resolution of issues that call for a uniform result." *West Gulf*, 751 F.2d at 729; *Save Power*, 121 F.2d at 950; *see also Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971). This action is wholly duplicative of the State's suit, which was filed <u>before</u> this action and which has been resolved through settlement.

### PRAYER

For the foregoing reasons, defendants respectfully pray that the Court enter the attached proposed Order dismissing this action. In the alternative, defendants respectfully request that the Court stay this action pending final approval of the State's class action suit. Defendants request all other and further relief to which they are justly entitled.

Respectfully submitted,

Eduardo Roberto Rodriguez
State Bar No. 17144000
Robert Patrick Rodriguez
State Bar No. 24002861
1201 East Van Buren
RODRIGUEZ, COLVIN & CHANEY, L.L.P.
Brownsville, Texas 78520  and/or
P.O. Box 2155
Brownsville, Texas 78522
Telephone: 956.542.7441
Telecopier: 956.541.2170

Layne E. Kruse
State Bar No. 11742550
Richard N. Carrell
State Bar No. 03871000
Gerard G. Pecht
State Bar No. 15701800
FULBRIGHT & JAWORSKI L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone:  713-651-5151
Telecopier:  713-651-5246

Attorneys-in-Charge for Defendants

## **CERTIFICATE OF SERVICE**

This pleading was served in compliance with Rule 5 of the Federal Rules of Civil Procedure on March __, 2003.

Eduardo Roberto Rodriguez

# Exhibit A

CAUSE NO. 2002-05-2123-C

| | | |
|---|---|---|
| ALBERTO AND ZONIA PULLEN, | § | IN THE DISTRICT COURT OF |
| INDIVIDUALLY, AND ON BEHALF | § | |
| OF MINOR ANA FRANCES PULLEN, | § | |
| SOFIA PULLEN, AND | § | |
| MARIA CRISTINA PULLEN | § | |
|     Plaintiffs, | § | |
| | § | |
| VS. | § | CAMERON COUNTY |
| | § | |
| | § | |
| | § | |
| | § | |
| FARMERS INSURANCE GROUP, | § | |
| JOSE GUTIERREZ INSURANCE, | § | |
| JOSE GUTIERREZ, J.P. MEUTH | § | |
|     Defendant. | § | 19⁷ᵗʰ JUDICIAL DISTRICT |

FILED 4:12 O'CLOCK P M
AURORA DE LA GARZA DIST. CLERK
MAY 2 3 2002
DISTRICT COURT OF CAMERON COUNTY, TEXAS
DEPUTY

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

    COME NOW, ALBERTO AND ZONIA PULLEN, INDIVIDUALLY AND ON BEHALF OF MINORS ANA FRANCES PULLEN, SOFIA PULLEN, AND MARIA CRISTINA PULLEN, Plaintiffs herein, and file this their Original Petition against the aboved-named Defendants, and for cause of action would respectfully show the Court the following:

I.

    Pursuant to Rule 190, T.R.C.P., discovery is intended to be conducted under Level 3.

II.

1.    Plaintiffs are residents of Cameron County, Texas.

2.    Defendant FARMERS INSURANCE GROUP A/K/A FARMERS INSURANCE EXCHANGE, duly authorized to do business in Texas. Service of process upon Farmers Insurance Exchange may be accomplished by serving their registered agent for service Gerard Galvan, Attorney at Law, 100 Farmers Circle, Round Rock, Texas 78728.

3.     Defendant, JOSE GUTIERREZ INSURANCE and JOSE GUTIERREZ, duly authorized to do business in Texas. Service of process upon may be accomplished by serving Jose Gutierrez 1514 E. Los Ebanos, Brownsville, Texas 78550.

4.     Defendant, J.P. MEUTH, duly authorized to do business in Texas. Service of process upon may be accomplished by serving him at 100 Farmers Circle, Austin, Texas 78728.

III.

Venue as to this petition is proper in Cameron County, in that all or part of Plaintiffs' causes of action accrued in such county and the property which is the subject of this suit is located in such county. This Honorable Court has jurisdiction of the case, and the Plaintiffs hereby invoke the unlimited monetary jurisdiction of this Court by filing the suit with the District Clerk according to state law and local rule.

IV.

Suit is brought pursuant to the law of good faith and fair dealing as well as under common law and Articles 21.21 and 21.55 of the Texas Insurance Code and the Texas Deceptive Trade Practices Act. In the alternative, this suit is brought for breach of contract, and for recovery under a policy of insurance. Plaintiffs are consumers of the Defendant, in that they purchased insurance from said entities and/or service to be provided by them. Each Defendant is an "individual, corporation, association, partnership, or other legal entity engaged in the business of insurance." Such Defendant constitute persons as that term is defined in Article 21.21, Section 2 of the Texas Insurance Code.

V.

Defendant, FARMERS INSURANCE GROUP, are Plaintiffs' homeowner's insurance company. Plaintiffs' own and/or reside in a dwelling at 1734 Honeydale, Brownsville, Cameron County, Texas. Defendants provided coverage to the Plaintiffs for such dwelling, personal property,

and other matters under insurance policies described above. During the policy term of said policy, Plaintiffs sustained covered losses in the form of water leaks and discharges, and damages resulting therefrom, including, but not limited to damage to the architectural finishes of the home, and Plaintiffs promptly reported same to Defendants pursuant to the terms of the insurance policy.

VI.

The Plaintiffs discovered water damage, and resulting damages therefrom to their home and property. As a result, Plaintiffs' home and property sustained damage to the areas of the home including, but not limited to, the cost of destruction and restoration of the home necessary to access and fix the leaks. These constituted covered damages under Plaintiffs' homeowner's insurance policy with the Defendant.

VII.

The Carrier Defendant and their agents visited and inspected Plaintiffs' property at 1734 Honeydale, Brownsville, Cameron County, Texas, in connection with the Plaintiffs' claim of property damage. Carrier Defendant knew or should have known, that Plaintiffs had already sustained significant damage to the property, requiring significant repairs as a result of a loss and peril covered by the insurance policies. They were also made aware of the need to perform repairs to the different leaks, which would result in covered tearing out and restoration of portions of the property covered. The Carrier Defendant knew that a substantial covered loss was owed. Nonetheless, they denied, delayed, or failed to pay or properly investigate some or all of Plaintiffs' covered claims with no reasonable basis. They have failed to act promptly or to conduct a good faith investigation. This delay and/or denial is in bad faith and a violation of Articles 21.21 and 21.55 of the Texas Insurance Code. Therefore, Plaintiffs file this bad faith claim.

## VIII.

Despite the fact that all conditions precedent to Plaintiffs' recovery have been performed or have occurred, Defendants failed and refused to pay the Plaintiffs a just amount in accordance with their contractual obligations, agreements, and representations.

## IX.

Such denial, delay, refusal and/or failure to pay by the Carrier Defendant was in bad faith, and constitute a breach of the covenant of good faith and fair dealing, which breach was a proximate cause of damages to the Plaintiffs more specifically set forth herein below.  There was no reasonable basis for denying, delaying, or failing to pay or investigate Plaintiffs' claim for damage, and the Carrier Defendant and its agents named herein knew or should have known that there was no such reasonable basis to deny, delay, and fail to pay such claims.

The conduct of the Defendants was irresponsible, unconscionable, and took advantage of the Plaintiffs' position to a grossly unfair degree.  Furthermore, the conduct of the Defendant amount to one or more of the following:

(a)   not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear in violation of Art. 21.21, Section 4(10)(a)(ii);

(b)   refusing to pay claims without conducting a reasonable investigation based upon all available information in violation of 21.21, Section (4)(10)(a)(viii);

(c)   failing to handle or process the Plaintiffs' claims in good faith; in violation of common law as expressly stated by the Texas Supreme Court in Vail v. Texas Farm Bureau, 754 S.W.2d 129 at 135 (Tex. 1988).

(d)   committing a course of conduct that is unconscionable;

(e)   omitting any information or making any false implication or impression that was either misleading of deceptive or have the capacity to be misleading or deceptive in violation of 21.21, Section 4(11);

(f)   refusing to pay a claim without a reasonable basis in violation of common law;

(g)   delaying payment of a claim without a reasonable basis in violation of common law;

(h)   denying and/or delaying payment of a claim without determining whether there is any reasonable basis to do so in violation of common law;

(i)   representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or qualities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not;

(j)   representing that goods or services are of a particular standard , quality, grade, or that goods are of a particular style or model, if they are of another;

(k)   representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

(l)   failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed;

(m)   violations of Art. 21.21 Tex. Ins. Code, including, but not limited to, Section 4, Subsections (11) and (10(a)(i), in that they misrepresented the terms of the policy; or

(n)   other violations of law.

## X.

The conduct of Carrier Defendant and the conduct alleged against the other Defendants constitute violations of Article 21.21, et seq. of the Texas Insurance Code. Such violations include, but are not limited to, violations of the rules and regulations lawfully adopted by the State Board of Insurance under Article 21.21 of the Texas Insurance Code, including unfair methods of competition and/or unfair or deceptive acts or practices in the business of insurance. In addition, the actions of the Defendant violate Article 21.21, Section 4 of the Texas Insurance Code. They also violate the Texas Insurance Code, specifically Section 16, in that they constitute practices defined by Section 17.46 of the Texas Texas Business and Commerce Code, as amended, as unlawful deceptive trade practices. As to the Defendants, such conduct also constitutes bad faith claims handling. All

statutory causes of action, including those arising under Art. 21.55 of the Insurance Code are here asserted against all Defendants.

## XI.

As a result of all such conduct, Plaintiffs have been damaged in an amount in excess of the minimum jurisdictional limits of this Court. In addition, the conduct of the Carrier Defendant was committed knowingly, and under circumstances constituting willful and wanton and reckless disregard of the rights of the Plaintiffs, and others similarly situated. Such conduct of the Defendants was negligent. The conduct of one or more Defendants constituted misrepresentation of fact. The conduct of the Defendant proximately caused the injuries and damages to the Plaintiffs for which they herein sue. Plaintiffs seek all damages as allowed by law from the Defendants.

## XII.

Carrier Defendant has by its conduct breached their contract of insurance with the Plaintiffs. Such breach proximately caused damages to the Plaintiffs. In addition, Plaintiffs are entitled to recover attorney's fees in connection with their contractual causes of action. Defendants have made actionable fraudulent misrepresentations to Plaintiffs.

## XIII.

All of the conditions precedent to bringing this suit under the policy and to the Defendant's liability to the Plaintiffs under the policy for the claims alleged have been performed or have occurred. More than sixty days prior to the filing of this suit, written demand for payment and notice of complaint pursuant to the Texas Deceptive Trade Practices Act and/or Texas Insurance Code, Article 21.21, et seq., were sent to each of the Defendant, or compliance with said notice is excused. All notices and proofs of loss were timely and properly given in such manner as to fully comply with

the terms and conditions of the relevant insurance policies and applicable law.  In the alternative, Plaintiffs allege that as to any such terms, conditions, notices, or requirements, the Defendant waived them, the Defendant are stopped from asserting them, and/or the plaintiffs substantially complied with them.  Plaintiffs make the same allegations of waiver or estoppel as to every defense or exclusion pleaded by the Defendant, and as to each claim for breach of contract or statutory violation as to each Defendant.

## XV.

Pursuant to Rule 216 of the Texas Rules of Civil Procedure, Plaintiffs herein request a jury trial and along with the filing of the Original Petition, tendered to the Clerk of the Court the statutory jury fee.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that upon trial of this matter, the Court grant:

1.  Judgment against the Defendant, and each of them;

2.  Actual damages;

3.  Attorney's fees;

4.  Costs of suit;

5.  Statutory penalties;

6.  Prejudgment and post judgment interest as allowed by law;

7.  Any additional damages and punitive damages under the facts set forth in this or any amended pleading.

8.  Such other and further relief to which Plaintiffs may show themselves entitled.

Respectfully submitted,

**MARTINEZ Y BARRERA, L.L.P.**
1201 E. Van Buren
Brownsville, Texas  78520
Ph. (956) 546-7159
Fax (956) 544-0602

Benigno (Trey) Martinez
State Bar No. 00797011

**ATTORNEY FOR PLAINTIFFS**

# Exhibit B

CAUSE NO. 2002-05-2123-C

| | | |
|---|---|---|
| ALBERTO AND ZONI PULLEN | § | IN THE DISTRICT COURT |
| INDIVIDUALLY, AND ON BEHALF | § | |
| OF MINOR ANA FRANCES PULLEN, | § | |
| SOFIA PULLEN, AND | § | |
| MARIA CRISTINA PULLEN | § | |
| | § | |
| VS. | § | 197ᵀᴴ JUDICIAL DISTRICT |
| | § | |
| FARMERS INSURANCE GROUP | § | |
| JOSE GUTIERREZ INSURANCE | § | |
| JOSE GUTIERREZ, J. P. MEUTH | § | CAMERON COUNTY, TEXAS |

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

KNOW ALL PERSONS BY THESE PRESENTS THAT:

This Settlement Agreement and General Release (hereinafter referred to as "Release"), made by and between Alberto and Zonia Pullen, Individually and on Behalf of Minor Ana Frances Pullen, Sofia Pullen and Maria Cristina Pullen (hereinafter referred to as "Plaintiffs/Releasors"), and Farmers Insurance Group a/k/a Farmers Insurance Exchange, Jose Gutierrez Insurance, Jose Gutierrez, and J.P. Meuth (hereinafter referred to as Defendants/Releasees), is to witness the following:

WHEREAS:

Plaintiffs/Releasors brought a lawsuit against Defendants/Releasees seeking damages and such further relief to which Plaintiffs/Releasors allege they are justly entitled for Defendants'/Releasees' alleged conduct and/or actions with respect to a claim and/or claims made by Plaintiffs/Releasors for any and all mold, water damage, foundation damages, plumbing leaks, property damages, roof damages and/or leaks , air conditioning damages and/or leaks and cosmetic damages to the dwelling located at 1734 Honeydale Road,

1

Brownsville, Texas and personal goods at that dwelling, under Homeowners Policy No. 0921239513 and Claim No. P6 104197 and other pending claims, with the original dates of loss reported to be on or about September 26, 2001, and as set forth in Plaintiffs' pleadings. Plaintiffs/Releasors' pleadings alleged that Defendants/Releasees was liable for violations of the Texas Deceptive Trade Practices Act, violations of the Texas Insurance Code, including violations of Articles 21.21 and 21.55 of the Texas Insurance Code, breach of contract, recovery under a policy of insurance, bad faith, breaches of the covenant of good faith and fair dealing, fraud, negligent misrepresentation and conspiracy. Plaintiffs'/Releasors' pleadings alleged that Defendants/Releasees were liable for actual damages, penalties, attorneys' fees, actual damages, punitive damages, consequential damages, statutory damages, additional living expenses, 18% per year penalty, additional damages, exemplary damages, personal injury damages, including mental anguish, pain and suffering, past and future, medical expenses, past and future, loss of use and enjoyment of the home, costs of suit, statutory penalties, and prejudgment and post judgment interest. Defendants/Releasees deny and continue to deny all allegations and any and all liability for same.

Plaintiffs/Releasors and Defendants/Releasees have agreed to settle all of the claims made the basis of the above-captioned lawsuit, and any other claims necessarily filed in order to consummate this settlement. Plaintiffs/Releasors agree that as to Defendants/Releasees that all claims are being released and all Additional Living Expenses (ALE) are being released and no further ALE will be due and owing and any and all ALE amounts are included in this Settlement Agreement and General Release. The claims which are contemplated by this Settlement Agreement and General Release include, but are not limited to, any and all mold, domestic water leaks, roof damages or leaks, sewer drain leaks,

2

air conditioning damages and/or leaks, shower pan leaks, hot water heater leaks, or other plumbing leaks or repairs, cosmetic and/or foundation repairs and/or mold remediation and/or repairs and/or work performed or to be performed to the Plaintiffs'/Releasors' property, all mold damages, water damage, plumbing leaks, roof damages and/or leaks, air conditioning leaks and/or damages and/or foundation settling or damage of any kind, all interior damage of any kind, all roof damages of any kind, all claims for lost rent, all claims for additional living expenses (loss of use), all claims for damages for personal injuries, to personal property, furniture or fixtures, any damage or malfunction to said dwelling as described herein, and any personal injury manifested prior to or caused by any cause and/or peril occurring on or before the date of this Release (hereinafter referred to as "the claims").

The specifics of said allegations, damages, and causes of action are set forth in correspondence and/or documents and/or pleadings between Defendants/Releasees and Plaintiffs/Releasors, their attorney(s), agents, representatives, consultants, and/or contractors in a certain lawsuit styled Cause No. CL 2002-05-2123-C; *Alberto and Zonia Pullen, Individually and on Behalf of Minor Ana Frances Pullen, Sofia Pullen and Maria Christina Pullen vs. Farmers Insurance Group a/k/a Farmers Insurance Exchange, Jose Gutierrez Insurance, Jose Gutierrez, and J.P. Meuch;* In the 197th Judicial District Court of Cameron County, Texas.. This Release contemplates all claims that were asserted or assertable in the above-referenced lawsuit and/or claims information provided to Defendants/Releasees, including the claim numbers set forth herein, and other pending claims, and any and all other claims and/or causes of action surrounding said claims.

FURTHER, the parties understand and agree that the claims asserted by Plaintiffs/Releasors against Defendants/Releasees are in dispute and that

3

Defendants/Releasees do not admit liability.  The parties have settled such dispute by compromise to avoid further trouble, litigation and expense, and it is further agreed that the Defendants/Releasees do not admit liability or damages as a result of the events that form the basis of the above-mentioned claim, but expressly deny any and all such liability.

NOW, THEREFORE, the parties do agree as follows:

1.    For and in consideration of the payment of the total sum of SIXTY THOUSAND DOLLARS AND NO/100 ($60,000.00) paid to Plaintiffs/Releasors, and Plaintiffs/Releasors' counsel, Benigno "Trey" Martinez, paid by or on behalf of Defendants/Releasees, released herein, to compensate for all alleged damages, and other good and valuable consideration and promises, receipt of which is hereby acknowledged, Plaintiffs/Releasors release and forever discharge Defendants/Releasees, all member exchanges, all related entities, and their affiliates, subsidiaries, heirs, assigns, employees, agents, assignees, successors in interest, insurers, adjusters, representatives and attorneys, of and from any and all claims, liabilities, and suits arising out of or resulting from "the claims," as defined above, whether or not such claims are specifically set forth in this Release. For the foregoing consideration, and for such other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Plaintiffs/Releasors for their predecessors, successors, assigns, heirs, heirs apparent, executors, administrators, partners and legal representatives, (hereinafter referred to as "Plaintiffs/Releasors/Releasing Parties"), the Releasing Parties hereby RELEASE and FOREVER DISCHARGE

4

Defendants/Releasees, Farmers Insurance Group a/k/a Farmers Insurance Exchange, Jose Gutierrez Insurance, Jose Gutierrez, and J.P. Meuch, all member exchanges, all related entities, their heirs and assigns and their respective principals, partners, past or present officers, directors, shareholders, insurers, adjusters, employees, attorneys, agents, servants, representatives, subsidiaries, predecessors, successors, affiliated or associated entities, assigns, heirs, executors, administrators and insurance companies, (hereinafter referred to as "Defendants/Releasees/Released Parties"), of and from any and all claims, demands, damages, actions, causes of action, or suits in equity, of whatever kind or nature, whether heretofore or hereafter accruing and whether now known or not known to the parties, including, but not limited to, damages for or because of any matter or thing admitted or suffered to be done by the Defendants/Releasees/Released Parties prior to and including the date of the signing of this Release that directly or indirectly arise out of the claim numbers set forth herein, and all other pending claims, and the subject matter surrounding said claim(s). Plaintiffs/Releasors/Releasing Parties and their counsel hereby acknowledge the receipt of SIXTY THOUSAND DOLLARS AND NO/100 ($60,000.00) made payable to attorney Benigno "Trey" Martinez and Plaintiffs Alberto and Zoniaa Pullen.

The Plaintiffs/Releasors/Releasing Parties acknowledge that said payment is in full satisfaction of any and all damages directly or indirectly alleged to be caused by the Defendants/Releasees/Released Parties and that Plaintiffs/Releasors/Releasing Parties will fully compensate their counsel,

Benigno "Trey" Martinez and any other parties in interest, from this payment.

2. FURTHER, the Plaintiffs/Releasors/Releasing Parties agree to release, discharge, and forever hold the Defendants/Releasees/Released Parties harmless from any and all claims, demands, or suits, known or unknown, fixed or contingent, liquidated or unliquidated, that have been asserted or may be asserted on behalf of Plaintiffs/Releasors/Releasing Parties in regard to the claim numbers set forth herein and other pending claims, as of this date arising from or related to the events and transactions that are the subject matter of said claim(s) and the allegations made relating thereto. The Plaintiffs/Releasors/Releasing Parties acknowledge that said payments are in full satisfaction of all damages directly or indirectly alleged to be caused by the Defendants/Releasees/Released Parties as defined herein and agree that the claims are Released and that no additional sums are owed.

3. FURTHER, as part of the consideration for this Release, the releasing parties mutually covenant and agree to keep the terms of this settlement confidential.

4. FURTHER, the Plaintiffs/Releasors/Releasing Parties to this Release warrant and represent that they own the claim or claims asserted in the above-mentioned claim and that no part of their claim or claims asserted against the other parties has been assigned or transferred to any other person or entity. The Releasing Parties to this Release agree to fully indemnify and to hold harmless the other parties from any and all claims arising out of, or derivative of, the claims released in this Release, which are brought on behalf of

6

Plaintiffs/Releasors/Releasing Parties. The Releasing Parties agree that the indemnification includes, but is not limited to, the amounts of the claims, the costs of defending against the claims, attorneys' fees, interest, and any other costs incurred as result of any such claim.

5.   FURTHER, this Release is intended to constitute a Release by all of the parties of all claims of any kind, known or unknown, arising out of or derivative of claim numbers set forth herein and other pending claims. Also, Plaintiffs agree that all checks that were issued and not cashed, are to be cancelled and said amounts included in settlement.

6.   FURTHER, the Plaintiffs/Releasors/Releasing Parties agree to their counsel entering with the Court a Motion and Order to Dismiss with Prejudice. Plaintiffs/Releasors/Releasing Parties hereby acknowledge they understand the effect of the entry of the Order dismissing their lawsuit with prejudice.

7.   Plaintiff/Releasors and their attorney represent and warrant that settlement proceeds are to be made payable to Plaintiffs and their attorney and no lienholder and/or mortgage company has any interest in said settlement proceeds.

8.   Each party hereto acknowledges that he or she has read and understood the effect of the above and foregoing Release and executes same of his or her own free will in accordance with the purposes and consideration set forth. The parties expressly disclaim reliance on any facts or representations made by the others if not contained in this Release.

7

9.    This Release shall continue perpetually and shall be binding upon all of the

parties and their heirs, successors, and assigns, and shall inure to the benefit

of all of the parties and their heirs, successors, and assigns.  This Release

represents the entire agreement of the parties, and the terms are contractual

and not mere recitals. This Release may not be amended, altered, modified,

or changed in any way except in writing signed by all the parties to this

Release.  This agreement supersedes all prior agreements, if any.

_____
Alberto Pullen

_____
Zonia Pullen

APPROVED AS TO FORM BY COUNSEL
FOR PLAINTIFFS/RELEASORS:

Martinez y Barrera, L.L.P.
1201 E. Van Buren
Brownsville, Texas 78520
Telephone: (956) 546-7159
Facsimile:  (956) 544-0602

By: _____          Date: 12/16/02
    Benigno "Trey" Martinez
    State Bar No. 00797011

8

THE STATE OF TEXAS                    §
                                      §
COUNTY OF CAMERON                     §


BEFORE ME, the undersigned authority, personally appeared Alberto Pullen who, being by me duly sworn upon oath, stated that he has read the above and foregoing Settlement Agreement and General Release, he understands it, he is duly authorized to execute same, and he does so for the purposes and consideration therein stated.

SUBSCRIBED AND SWORN TO BEFORE ME on this 16th day of December, 2002 to certify which witness my hand and seal of office.



NOTARY PUBLIC, STATE OF TEXAS

SAN JUANITA LOPEZ
Notary Public, State of Texas
My Commission Expires
January 14, 2006


THE STATE OF TEXAS                    §
                                      §
COUNTY OF CAMERON                     §


BEFORE ME, the undersigned authority, personally appeared Zonia Pullen who, being by me duly sworn upon oath, stated that she has read the above and foregoing Settlement Agreement and General Release, she understands it, she is duly authorized to execute same, and she does so for the purposes and consideration therein stated.

SUBSCRIBED AND SWORN TO BEFORE ME on this 16th day of December, 2002 to certify which witness my hand and seal of office.

NOTARY PUBLIC, STATE OF TEXAS

SAN JUANITA LOPEZ
Notary Public, State of Texas
My Commission Expires
January 14, 2006

9

# Exhibit C

**CERTIFIED COPY**

CAUSE NO. 2002-05-2123-C

| | | |
|---|---|---|
| ALBERTO AND Zonia PULLEN | § | IN THE DISTRICT COURT |
| INDIVIDUALLY, AND ON BEHALF | § | |
| OF MINOR ANA FRANCES PULLEN, | § | |
| SOFIA PULLEN, AND | § | |
| MARIA CRISTINA PULLEN | § | |
| | § | |
| VS. | § | 197TH JUDICIAL DISTRICT |
| | § | |
| FARMERS INSURANCE GROUP | § | |
| JOSE GUTIERREZ INSURANCE | § | |
| JOSE GUTIERREZ, J. P. MEUTH | § | CAMERON COUNTY, TEXAS |

ORDER OF DISMISSAL

On this day came on to be heard the Motion of Alberto and Zonia Pullen, Individually and on Behalf of Minor Ana Frances Pullen, Sofia Pullen and Maria Cristina Pullen, Plaintiffs, Farmers Insurance Group a/k/a Farmers Insurance Exchange, Jose Gutierrez Insurance, Jose Gutierrez, and J.P. Meuch Defendant in the above-entitled and numbered cause, seeking dismissal of all claims by Alberto and Zonia Pullen, Individually and on Behalf of Minor Ana Frances Pullen, Sofia Pullen and Maria Cristina Pullen against Farmers Insurance Group a/k/a Farmers Insurance Exchange, Jose Gutierrez Insurance, Jose Gutierrez, and J.P. Meuch with prejudice. This Court is of the opinion and finds that all matters in dispute between the parties have been fully and finally compromised and settled.

IT IS, THEREFORE, ORDERED, ADJUDGED, and DECREED that all claims by Alberto and Zonia Pullen, Individually and on Behalf of Minor Ana Frances Pullen, Sofia Pullen and Maria Cristina Pullen against Farmers Insurance Group a/k/a Farmers Insurance Exchange, Jose Gutierrez Insurance, Jose Gutierrez, and J.P. Meuch are hereby dismissed with prejudice to the refiling of same with each party bearing its own costs.

SIGNED this 15th day of January, 200___

FILED 3:40 O'CLOCK ___ M
AURORA DE LA GARZA, DIST. CLERK

JAN 15 2003

DISTRICT COURT, CAMERON COUNTY, TEXAS
BY _____ DEPUTY

JUDGE PRESIDING

1

APPROVED AS TO FORM:

Martinez y Barrera, L.L.P.
1201 E. Van Buren
Brownsville, Texas 78520
Telephone: (956) 546-7159
Facsimile: (956) 544-0602

**CERTIFIED COPY**

By: _____          Date: _1/10/03_

    Benigno "Trey" Martinez
    State Bar No. 00797011

ATTORNEY FOR PLAINTIFFS
ALBERTO AND ZONIA PULLEN, INDIVIDUALLY
AND ON BEHALF OF MINOR ANA FRANCES PULLEN,
SOFIA PULLEN AND MARIA CRISTINA PULLEN


HUNTER & HANDEL, P.C.
555 North Carancahua
Suite 1600, Tower II
Corpus Christi, Texas 78478
Telephone:   (361) 884-8777
Facsimile:   (361) 884-1628

By: _____   state bar #
    for Todd A. Hunter          2403929
    State Bar No. 10302300      1/11/03

ATTORNEY FOR DEFENDANTS
FARMERS INSURANCE GROUP A/K/A
FARMERS INSURANCE EXCHANGE
JOSE GUTIERREZ INSURANCE,
JOSE GUTIERREZ, AND J.P. MEUCH

2

# Exhibit D

CAUSE No. GV202501

| | | |
|---|---|---|
| THE STATE OF TEXAS, THE TEXAS DEPARTMENT OF INSURANCE, AND THE TEXAS COMMISSIONER OF INSURANCE, Plaintiffs,v. FARMERS GROUP, INC., FARMERS UNDERWRITERS ASSOCIATION, FIRE UNDERWRITERS ASSOCIATION, FARMERS INSURANCE EXCHANGE, FIRE INSURANCE EXCHANGE, TEXASFARMERS INSURANCE COMPANY, MID-CENTURY INSURANCE COMPANY OF TEXAS, MID-CENTURY INSURANCE COMPANY, TRUCK INSURANCE EXCHANGE, TRUCK UNDERWRITERS ASSOCIATION and FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY, Defendants. | § § § § § § § § § § § § § § § § § § § § § | IN THE DISTRICT COURT


OF TRAVIS COUNTY, TEXAS



261ST JUDICIAL DISTRICT |

## PLAINTIFFS' SECOND AMENDED PETITION

The Office of the Texas Attorney General in the name of the State of Texas (the "State") and on behalf of the Commissioner of Insurance (the "Commissioner") and the Texas Department of Insurance ("TDI"), bring this suit against Farmers Group, Inc., Farmers Underwriters Association, Fire Underwriters Association, Farmers Insurance Exchange, and Fire Insurance Exchange (collectively those five defendants are referred to herein as "Farmers"); Mid-Century Insurance Company of Texas, Mid-Century Insurance Company, Truck Insurance Exchange, Truck Underwriters Association, and Farmers Texas County Mutual Insurance Company (collectively those five defendants are referred to herein the "Automobile Insurers"); and Texas Farmers Insurance Company (collectively, Farmers, the Automobile Insurers, and Texas Farmers Insurance Company are referred to herein the "Defendants"). Plaintiffs allege deceptive, misleading, and discriminatory

1

practices that constitute unfair or deceptive acts or practices in the business of insurance in violation of Tex. Ins. Code arts. 21.21 § 3, 21.21 § 4, 21.21-6, & 21.21-8, and the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Comm. Code § 17.41 *et seq.* Farmers' illegal practices were discovered through investigations initiated by the Attorney General's Consumer Protection Division, as well as during an examination by the Texas Department of Insurance under Tex. Ins. Code art. 1.15. The Commissioner and TDI have referred this matter to the Office of the Texas Attorney General and have requested that this class action be brought in the interest of Farmers' Texas homeowners-insurance policyholders and the Automobile Insurers' automobile-insurance policyholders as described below.

### *Discovery Level*

1. Plaintiffs intend to conduct Level 2 discovery under Texas Rule of Civil Procedure 190.3 and affirmatively plead that they seek injunctive relief, damages in the form of restitution and restoration of premium payments, and penalties.

### *Defendants*

2. Defendant, Farmers Group, Inc., is a Nevada corporation and the parent company of both Farmers Underwriters Association, which is the attorney-in-fact of the Farmers Insurance Exchange, and Fire Underwriters Association, which is the attorney-in-fact of the Fire Insurance Exchange. This defendant has appeared and answered.

3. Defendant, Farmers Underwriters Association, is the attorney-in-fact of the Farmers Insurance Exchange. This defendant has appeared and answered.

4. Defendant, Fire Underwriters Association, is the attorney-in-fact of the Fire Insurance Exchange. This defendant has appeared and answered.

2

5.      Defendant, Farmers Insurance Exchange, is a foreign insurance carrier organized and existing under the laws of California and authorized to conduct a homeowners-insurance business in this State. This defendant has appeared and answered.

6.      Defendant, Fire Insurance Exchange, is a foreign insurance carrier organized and existing under the laws of California and authorized to conduct a homeowners-insurance business in this State. This defendant has appeared and answered.

7.      Defendant, Texas Farmers Insurance Company, is a domestic insurance carrier organized and existing under the laws of Texas and authorized to conduct an automobile insurance business in this State. Its principal place of business is 100 Farmers Circle, Round Rock, Texas 78728, and it has agreed to waive service and voluntarily appear herein.

8.      Defendant, Mid-Century Insurance Company of Texas, is a domestic insurance carrier organized and existing under the laws of Texas and authorized to conduct an automobile insurance business in this State. Its principal place of business is 100 Farmers Circle, Round Rock, Texas 78728, and it has agreed to waive service and voluntarily appear herein:

9.      Defendant, Mid-Century Insurance Company, is a foreign insurance carrier organized and existing under the laws of California and authorized to conduct an automobile insurance business in this State. Its principal place of business is 4680 Wilshire Boulevard, Los Angeles, California 90010, and it has agreed to waive service and voluntarily appear herein.

3

10.    Defendant, Farmers Texas County Mutual Insurance Company, is a domestic insurance carrier organized and existing under the laws of Texas and authorized to conduct an automobile insurance business in this State. Its principal place of business is 100 Farmers Circle, Round Rock, Texas 78728, and it has agreed to waive service and voluntarily appear herein. Defendant, Truck Insurance Exchange, is a foreign insurance courier organized and existing under the laws of California and authorized to conduct an automobile insurance business in this state. This Defendant has agreed to waive service. Defendant, Truck Underwriters Association, is the attorney-in-fact of Truck Insurance Exchange. This Defendant has agreed to waive service.

### *Jurisdiction*

11    This Court has jurisdiction over this suit and all conditions precedent to this suit have been performed or have occurred.

### *Venue*

12.    Venue is proper in this county under Tex. Ins. Code art. 21.21 § 15(b). Specifically, the Attorney General brings this suit in Travis County to enjoin Farmers' continued use of misleading, deceptive, and discriminatory practices and to remedy the past effects of those practices on policyholders.

### *Facts*

13.    Farmers Insurance Exchange and Fire Insurance Exchange are interinsurance exchanges (collectively hereinafter the "Exchanges"). The Exchanges provide homeowners insurance in Texas as reciprocal exchanges.    Under this arrangement, policyholders enter indemnity contracts among themselves from losses and exchange those contracts through an interinsurance exchange. The exchange of the

4

contracts creates the insurance for the policyholders by spreading the risk of loss amongst themselves in the same way that risks are spread in a typical insurance arrangement—typically limiting a policyholder's risk to the amount of premium paid. An exchange operates through an attorney-in-fact that manages the exchange for the policyholders. Farmers Underwriters Association and Fire Underwriters Association, either as wholly owned subsidiaries or d/b/a's of Farmers Group, Inc. (collectively, those three are referred to herein as "Farmers Group") are the attorneys-in-fact of the policyholders in the Exchanges. Farmers Group administers the Exchanges and charges a management fee for that administration.

14.    Automobile insurance is provided through the Automobile Insurers—Mid-Century Insurance Company of Texas, Mid-Century Insurance Company, Truck Insurance Exchange, and Farmers Texas County Mutual Insurance Company.

15.    Farmers has dramatically changed its homeowners-insurance and automobile-insurance practices in Texas.

16.    Farmers is using credit history as a significant factor in setting premiums, without adequately disclosing the adverse impact of doing so.

17.    Additionally, with respect to homeowners insurance, on December 28, 2001, Farmers stopped renewing or offering "HO-B" policies in Texas and began switching its Texas policyholders from all-risk "HO-B" policies to stated-peril "HO-A" policies that provide much less coverage. Despite this loss of coverage, Texas homeowners-insurance policyholders have seen increased premiums allegedly due to losses suffered by the Exchanges in the past year. Thus, Farmers is now charging significantly higher homeowners-insurance premiums, but offering substantially less coverage.

18.     Although Farmers claims its losses require it to raise premiums and reduce coverage for Texas policyholders, Farmers Group is making—not losing—money! Farmers Group represents to the Securities and Exchange Commission that it makes a management fee between 12% and 13% of collected premiums for administering the Exchanges.  Farmers has also represented that the fee charged for administering the Exchanges in Texas is 10.9% of collected premiums.  Since Texas homeowners-insurance policyholders are paying higher premiums, Farmers Group is making more profit in management fees per policy on those higher premiums.  In SEC filings, Farmers Group reported a Fiscal Year 2001 after-tax profit of $438.7 million from these management services alone.  Farmers Group reported it was losing money, but omitted the fact that though the Exchanges losses exceeded premiums, Farmers Group continued to make a profit from the management fee.  As the attorney-in-fact for the Exchanges, Farmers Group has a fiduciary duty to Farmers' policyholders in the Exchanges of utmost good faith, fair dealing, honest performance and strict accountability and should have disclosed these facts.  Farmers, however, fails to notify some policyholders in the Exchanges (a) that the decision to enter into a management-fee agreement based on percentage of premium collected benefits Farmers Group to the detriment of the Exchanges and the policyholders; (b) what the terms of the management-fee agreement actually are; (c) any possible adverse impact on premiums the management fee creates; and (d) that Farmers Group, Inc. is in fact making more money through management fees as premiums increase.

19.     Moreover, Farmers' rate calculations directly used an after-tax target rate of return on surplus of 15% to determine the underwriting profit provision in the rates.  In addition, the expenses underlying Farmers' rates reflect the management fee paid to

Farmers Group, Inc. In SEC filings, Farmers Group, Inc. states that in 2001, over 40% of its management-fee income was operating income, which translates into approximately 5.5% of Farmers' premiums. In combination, the 15% target rate of return and the profit implicit in the management fee paid to Farmers Group, Inc. produce an effective after-tax target rate of return (i.e., profit) implicit in Farmers' rates of more than 25%. That is a high rate of after-tax return. While Plaintiffs expect Farmers to make a reasonable profit, use of a 25% after-tax rate of return, without justification, produces unfair rates, which causes Farmers' Texas policyholders to overpay.

20.    Through its regulatory examination process, TDI also discovered that Farmers recently began charging Texas homeowners-insurance policyholders for catastrophes occurring in other States—resulting in a premium increase to virtually all Texas homeowners-insurance policyholders in the Farmers Group managed exchanges. Some damages from natural disasters—like tornadoes, severe hailstorms, and hurricanes—are covered under homeowner policies.    Traditionally, this potential catastrophe loss has been actuarially reflected in Texas by including two "loads" in the premium calculations: one to reflect potential hurricane-caused damages, and another to reflect other natural disasters. But around September 16, 2001, Farmers added a third, substantial catastrophe load—called an "unfunded CAT load."  Farmers meant this unfunded CAT load to provide for perceived shortfalls in the catastrophe loads used nationwide.  But Texas experiences a disproportionate share of these natural disasters. This unfunded CAT load now charges Texas homeowners-insurance policyholders for losses that did not occur in Texas and, because of Texas' disproportionate share of catastrophic events, charges Texas homeowners-insurance policyholders with a

disproportionate share of that load—increasing Texas homeowners-insurance policyholders' premiums and unfairly causing Farmers' policyholders to overpay for their coverage. Farmers does not disclose this fact to its Texas homeowners-insurance policyholders.

21.   Farmers and the Automobile Insurers have been using a credit-scoring system to determine, in substantial part, the Exchanges' and the Automobile Insurers' premiums. Since at least October 1, 1999, Farmers Group, Inc. has contracted with Fair, Isaac & Co ("Fair Isaac") to obtain a credit score for each policyholder, which is called an "insurance score." Based on the Fair Isaac Insurance score, Farmers or the Automobile Insurers place homeowners-insurance policyholders into a Farmers Property Risk Assessment ("FPRA") category and automobile-insurance policyholders into a Farmers Auto Risk Assessment ("FARA") category, both of which are between "A" and "Z." From there, Farmers or one of the Automobile Insurers assign the policyholder to a FPRA or FARA discount category to use in calculating that policyholder's premium. The Automobile Insurers' use of the FARA score plays a primary role in the premiums charged. Inevitably, those automobile-insurance policyholders with poor FARA scores are assigned to Farmers Texas County Mutual Insurance Company, which charges higher premiums on average than the other Automobile Insurers. Moreover, Farmers and the Automobile Insurers do not adequately disclose that increased premiums can be based in part upon the policyholder's insurance score or credit history. Nor do Farmers and the Automobile Insurers adequately disclose to their Texas policyholders their method for calculating the FPRA or FARA; the effect that the FPRA or FARA letter score has on the policyholder's premium; the ability of the policyholder to contest or update their assigned FPRA or FARA;

8

or that credit reports or history are used to create the FPRA or FARA. These misleading and deceptive practices violate the Texas Insurance Code and the DTPA. Further, FPRA practices are compounded by Farmers' actuarially inconsistent use of this information, as described below.

22.     On or about November 16, 2000, Farmers began using credit scoring in setting premiums for Texas policyholders with homeowners-insurance policies in the Exchanges. But the manner in which Farmers uses credit scoring constitutes illegal discrimination. According to Farmers, policyholders' credit ratings can predict the probability of loss. Farmers' own documents, however, reveal that the premium charged Texas homeowners-insurance policyholders in every category is higher—sometimes significantly higher—than the premium indicated by the loss history, except for those homeowners-insurance policyholders with the highest and lowest FPRA scores. Farmers is unfairly overcharging those Texas homeowners-insurance policyholders that are not receiving the FPRA Indicated discounts because some policyholders get the full amount of the indicated discounts, whereas other policyholders do not. This disparate treatment constitutes illegal discrimination, unfair rate practices, or both, as all policyholders should be charged the same proportion of the indicated discounts that any one category receives. On December 11, 2002, new agreed discounts were implemented by Farmers.

23.     Like some other carriers, Farmers has been switching all of its homeowners-insurance policyholders from HO-B policies to HO-A policies. Unlike HO-B policies, the HO-A policy Farmers offers severely limits coverage for water damage and removes mold coverage entirely. This decrease in coverage affects Texas homeowners-insurance policyholders differently depending on where they live. Rather than reflecting these

geographic differences in the effect of the change from HO-B to HO-A, Farmers simply applied the same multiplier to all of Texas in calculating the change in value of each homeowners-insurance policy. This method failed to account for the fact that different geographic locations have different mold- and water-related loss histories. On December 11, 2002 new territory relativities were implemented by Farmers.

24.    Moreover, when Farmers began requiring its Texas homeowners-insurance policyholders to switch to HO-A-type policies in January 2002, HO-A policies were only being offered in the Fire Insurance Exchange. Consequently, those Farmers Insurance Exchange policyholders renewing during the first part of the year were also switched from Farmers Insurance Exchange into Fire Insurance Exchange. Farmers, however, failed to mention to these homeowners-insurance policyholders that the premiums paid in Fire Insurance Exchange are substantially higher than those for Farmers Insurance Exchange; in fact, the overall average difference is approximately 35%. Farmers never disclosed that this double-switch resulted in another premium increase and that Texas homeowners-insurance policyholders never would have been subjected to this increase if their policies had remained with Farmers Insurance Exchange.

25.    TDI has also discovered that Farmers' attempts to tie the probability of loss to the age of policyholders' homes constitutes illegal discrimination, unfair rate practices, or both. Farmers' own documents reveal that the adopted premium for Texas homeowners-insurance policyholders in many categories is inconsistent with Farmers' loss history and discriminatory, an unfair rate practice, or both . For example, policyholders with 6-year-old homes receive a 20% discount on their premiums, while Farmers' loss analysis indicates that the discount should be 29.1%. Significantly, policyholders with 7-year-old homes

receive a 15% discount on their premiums, while Farmers' loss analysis indicates that the discount should be 28.9%. Although both ages of home have an actuarially similar loss history, Farmers adopts different discounts. Farmers is unfairly overcharging their Texas homeowners-insurance policyholders who are not receiving the same proportion of the indicated age-of-home discount.

26.    TDI's investigation revealed that Farmers' practices have resulted in the Exchanges charging unfair homeowners-insurance rates, which unfairly caused their policyholders to pay excessive premiums. These unfair rates resulted from the unlawful use of credit-history information, the unfunded CAT load, the age-of-home discount, and an excessive target rate of return for Farmers Group, Inc., which were described above. In addition, these unfair rates were caused by the use of replacement cost coverage data in calculating its HO-A policy rates, the use of excessive trend factors and excessive length of trending periods.    These practices were not disclosed to Farmers homeowners policyholders.

27.    Farmers uses replacement-cost coverage in determining the basic HO-A rate for the Exchanges, but this is not appropriate because the HO-A contract is an actual cash-value contract (that is, claims are paid on the basis of replacement cost less depreciation). Using data that largely reflects replacement-cost coverage, which is not covered by the HO-A, unfairly causes the Exchanges' homeowners-insurance rate needs to be overstated because the Exchanges would be collecting for replacement cost, both in the HO-A premium and in the endorsement premium. This is "double-counting."    This unfair overstatement of rate needs by the Exchanges is unfairly causing their Texas HO-A policyholders to overpay.

11

28.    Actuaries use trend factors to reflect likely changes in loss costs (both in average costs per claim and in the relative numbers of claims, also referred to as "claims frequencies") and in average homeowners-insurance premiums between the time of the historical experience used in the rate calculations and the time the new rates will be in effect. The increase in cost relative to premium forecast used by Farmers is extremely high by any traditional actuarial measure, especially bearing in mind that the underlying data did not include any water-damage or mold-related claims—two areas where losses had been increasing substantially. Reducing the anticipated increase in cost to more typical and reasonable levels substantially reduces the indicated rate needs of the Exchanges. Therefore, Farmers' use of excessive trend factors in calculating the Exchanges' premiums unfairly causes the Exchanges' Texas HO-A policyholders to overpay.

29.    Furthermore, the use of unduly long trending periods also contributes to the Exchanges' unfair homeowners-insurance rates. Actuaries typically assume that rates will remain in effect for a year. This means that they assume that the average policy that will be subject to the new rates will be effective six months after the new rates go into effect, and calculate likely increases in cost accordingly. Farmers, however, increased the Exchanges' rates considerably more frequently than once a year in 2000 and 2001. In fact, Farmers increased the Exchanges' rates on an overall basis (excluding the introduction of new discounts and the like) four times during that period, or roughly an average of every six months. Shortening the trending period to reflect the more frequent rate revisions eliminates three months of trend. Given that the trends are upward, and the trending for the additional three months produces higher rates, this causes Farmers to unfairly overstate

12

the Exchanges' homeowners-insurance rate needs resulting in overpayments by the Exchanges' Texas HO-A policyholders.

30.    The Office of the Attorney General is investigating whether the Defendants have engaged in conduct constituting an unlawful restraint of trade and attempted monopolization of the homeowners- and automobile-insurance markets in Texas, in violation of Tex. Bus. & Comm. Code § 15.05(a) and (b) and Tex. Ins. Code art. 21.21 § 4(4). Among other things, the Office of the Attorney General is investigating whether the Defendants have attempted to tie their marketing of homeowners insurance to their marketing of automobile insurance and have conspired with other providers of homeowners and/or automobile insurance for anticompetitive purposes.

### Class-Action Allegations

31.    At the request of the Commissioner and in the public interest, the State, by and through the Office of the Attorney General, brings these claims as a class action pursuant to Tex. Ins. Code art. 21.21 § 17 and as *parens patriae* under Tex. R. Civ. P. 42 to seek restitution for insureds of Defendants in the amounts specified in paragraph 47 below for violations of Tex. Ins. Code art. 21.21 §§ 3 and 4, Tex. Ins. Code art. 21.21-6, Tex. Ins. Code art. 21.21-8, and Tex. Bus. & Com. Code § 17.46 pursuant to a referral from the Commissioner of Insurance under his authority under Tex. Ins. Code § 31.002 and art. 21.21, and pursuant to the Attorney General's authority under Tex. Ins. Code art. 21.21 § 15 and Tex. Bus. & Com. Code § 17.47. The acts and practices set forth in paragraphs 35 through 43 violate Tex. Ins. Code art. 21.21 § 4, as well as other sections of the Insurance Code and the DTPA as more specifically set forth therein, including Tex. Ins.

Code art. 21.21 § 4(1),(2) and (11). "Settlement Classes" means and includes the following:

(1)   *The "Rate Class."* All of the Exchanges' Texas homeowners-insurance policyholders (a) whose homeowners-insurance policy began (including renewals) between December 28, 2001 through December 27, 2002, or (b) who received a notice at any time after November 14, 2001, that their HO-B policy would not be renewed;

(2)   *The "Discount Class."* All of the Exchanges' Texas homeowners-insurance policyholders who were eligible to receive FPRA and/or age-of-home discounts, or a territorial rating adjustment from November 16, 2000 through December 10, 2002; and

(3)   *The "Credit Usage Notice Class."* All Texas homeowners- or automobile-insurance policyholders of the Exchanges or the Automobile Insurers who received or should have receive a credit usage notice from October 1, 1999, through February 28, 2003.

32.   The prerequisites to maintaining a class action under the Texas Insurance Code and as *parens patriae* are met, and when the Attorney General brings a class action the elements of typicality and adequacy of representation are met by the very nature of such a class action. Moreover, when a class action is brought by the Attorney General statutorily or under *parens patriae*, the class action is for the benefit of consumers, in this case, policyholders of Farmers, based on issues common to all policyholders and thus commonality and numerosity exist. Unlike a class action brought by an individual where it is necessary to justify that the class representative and his or her counsel are adequate representatives bringing common and typical claims, the very nature of a regulatory class action satisfies these underlying concerns. In any event, Farmers and the Automobile Insurers have acted or refused to act on grounds generally applicable to the classes as alleged in paragraphs 35 through 43 below, making appropriate final injunctive relief or corresponding declaratory relief with respect to each class as a whole. With respect to the

14

Automobile Insurers, the allegations in this Petition are limited to and relate only to disclosure of consumer credit information or usage. Furthermore, the questions of law or fact common to each class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

33.    The common questions in this case, which are described in more detail below, include the following: (a) whether the manner in which Farmers uses credit-history information constitutes unlawful discrimination in violation of Tex. Ins. Code art. 21.21-8 or, an unfair or deceptive act or practice in the business of insurance in violation of Tex. Ins. Code art. 21.21 § 3 and whether that use was properly disclosed to policyholders under Tex. Ins. Code art. 21.21 § 4 or the DTPA; (b) whether the management fee that Farmers Group, Inc. receives results in an excessive insurance premium in violation of Tex. Ins. Code art. 21.21 § 3 and was not properly disclosed to policyholders in violation of Tex. Ins. Code art. 21.21 § 4 and the DTPA; (c) whether Farmers' inclusion of an "unfunded CAT load" in the Exchanges' homeowners-insurance premium calculations, and the failure to disclose this inclusion, constitutes an unfair or deceptive act or practice in the business of insurance in violation of Tex. Ins. Code art. 21.21 § 3 and Tex. Ins. Code art. 21.21 § 4 and the DTPA; (d) whether the switching of homeowners-insurance policyholders from Farmers Insurance Exchange to Fire Insurance Exchange, and the consequences of that switch, were not properly disclosed to policyholders and whether these matters constitute an unfair or deceptive act or practice in the business of insurance in violation of Tex. Ins. Code art. 21.21 § 3 and Tex. Ins. Code art. 21.21 § 4 and the DTPA; (e) whether the manner in which Farmers uses the Exchanges' policyholders' age of homes to establish discounts

from homeowners-insurance rates or to calculate the Exchanges' homeowners-insurance premiums and were not properly disclosed to policyholders and whether these matters constitute an unfair or deceptive act or practice in the business of insurance in violation of Tex. Ins. Code art. 21.21 § 3 and Tex. Ins. Code art. 21.21 § 4 and the DTPA; (f) whether Farmers' calculation of the Exchanges' premiums is consistent with the requirements of Tex. Ins. Code art. 21.21 § 3 and whether the failure to disclose the method of calculating premiums violates Tex. Ins. Code art. 21.21 §4 and the DTPA; (g) whether Farmers' and the Automobile Insurers' actions are consistent with the requirements under state antitrust laws and violate Tex. Ins. Code art. 21.21 §4(4); (h) whether Farmers and the Automobile Insurers adequately disclose the Exchanges' and the Automobile Insurers' use of credit history to policyholders and whether certain policyholders paid premiums in excess of what they otherwise would have paid because of mistakes in their credit report in violation of Tex. Ins. Code art. 21.21 § 4.and the DTPA; (i) whether the manner in which Farmers calculates the Exchanges' premiums discriminates based on geographical location premiums and were not properly disclosed to policyholders and whether these matters constitute an unfair or deceptive act or practice in the business of insurance in violation of Tex. Ins. Code art. 21.21-6, Tex. Ins. Code art. 21.21 § 3 and Tex. Ins. Code art. 21.21 § 4 and the DTPA; and (j) whether the Automobile Insurers' failure to disclose that a poor FARA score would result in an automobile policyholder being assigned to Farmers Texas County Mutual Insurance Company and having to pay a higher premium violates Tex. Ins. Code art. 21.21 § 4 and the DTPA.

16

34.     The State, by and through the Attorney General, is statutorily authorized to seek restitution for Texas policyholders for the claims alleged in paragraphs 35 through 43 and summarized in paragraph 33. *See*, Tex. Ins. Code art. 21.21 §§ 15, 17.

### *Causes of Action*

35.     The manner in which Farmers uses credit history in determining the Exchanges' homeowners-insurance premiums is unfair, discriminatory, or both, and violates Tex. Ins. Code art. 21.21 § 3 and art. 21.21-8 because Farmers provided the full discount indicated by the FPRA category to some Texas homeowners-insurance policyholders in the Exchanges, but did not provide the full indicated discount to other Texas homeowners-insurance policyholders in the Exchanges even though Farmers' loss-history data shows no basis for assigning those policyholders less than the full discount. The failure to apply the indicated discount consistently, either by applying the full indicated discount to all Texas homeowners-insurance policyholders in the Exchanges, or applying a proportion of the indicated discount proportionately and consistently violates either or both of Tex. Ins. Code art. 21.21 § 3 and art. 21.21-8, and the failure to disclose the inconsistent application of indicated discounts violates Tex. Ins. Code art. 21.21 § 4, specifically, but without limitation, in violation of Tex. Ins. Code art. 21.21 § 4(11) concerning the misrepresentation of the terms of an insurance policy, and § 17.46 of the DTPA.

36.     The manner in which Farmers uses the age of homes in determining homeowners' premiums is unfair, discriminatory, or both, and violates Tex. Ins. Code art. 21.21 § 3 and art. 21.21-8. because Farmers provided the full discount indicated by the age-of-home category to some Texas homeowners-insurance policyholders in the Exchanges, but did not provide the full indicated discount to other Texas homeowners-

17

insurance policyholders in the Exchanges even though Farmers' loss-history data shows no basis for assigning those policyholders less than the full indicated discount. The failure to apply the indicated discount consistently, either by applying the full indicated discount to all Texas homeowners-insurance policyholders in the Exchanges, or applying a proportion of the indicated discount proportionately and consistently violates either or both of Tex. Ins. Code art. 21.21 § 3 and art. 21.21-8, and the failure to disclose the inconsistent application of indicated discounts violates Tex. Ins. Code art. 21.21 § 4, specifically, but without limitation, in violation of Tex. Ins. Code art. 21.21 § 4(11) concerning the misrepresentation of the terms of an insurance policy, and § 17.46 of the DTPA.

37.   The Exchanges' premiums based on geographic location are unfair, discriminatory, or both and violate Tex. Ins. Code art. 21.21 § 3 and art. 21.21-6. In switching Texas policyholders from HO-B policies, which cover water damage and mold remediation, to HO-A policies, which largely do not, Farmers failed to use sound underwriting or actuarial principles reasonably related to actual or anticipated loss experience. Farmers failed to account for the change in coverage when calculating the Exchanges' homeowners-insurance premiums and failed to disclose this fact in violation of Tex. Ins. Code art. 21.21 § 4, specifically, but without limitation, in violation of Tex. Ins. Code art. 21.21 § 4(11) concerning the misrepresentation of the terms of an insurance policy, and § 17.46 of the DTPA.

38.   Farmers' inclusion of an "unfunded CAT load" in the Exchanges' homeowners-insurance premium calculations, and the failure to disclose this inclusion, constitutes an unfair or deceptive act or practice in the business of insurance in violation of Tex. Ins. Code art. 21.21 § 3, Tex. Ins. Code art. 21.21 § 4, specifically, but without

18

limitation, in violation of Tex. Ins. Code art. 21.21 § 4(11) concerning the misrepresentation of the terms of an insurance policy, and § 17.46 of the DTPA.

39.    Farmers' and the Automobile Insurers' failure to adequately disclose that they use credit history in calculating premiums and their failure to disclose when the use of credit history results in an increase in premium constitutes misleading, deceptive acts or practices in the business of insurance under Tex. Ins. Code art. 21.21 § 4, specifically, but without limitation, in violation of Tex. Ins. Code art. 21.21 § 4(11) concerning the misrepresentation of the terms of an insurance policy, and § 17.46 of the DTPA.

40.    Farmers' failure to provide full or proportional indicated discounts for age-of-home and credit history, its use of an excessive target rate of return, excessive trend factors and an excessive length of trending periods, and its use of an unfunded CAT load and replacement cost coverage data in calculating the Exchanges' rates result in overpayments of premiums by Texas homeowners-insurance policyholders and the failure to disclose these practices constitutes misleading, deceptive acts or practices in the business of insurance under Tex. Ins. Code art. 21.21 § 3, 28 Tex. Admin. Code §§ 21.1-21.5, Tex. Ins. Code art. 21.21 § 4, specifically, but without limitation, in violation of Tex. Ins. Code art. 21.21 § 4(11) concerning the misrepresentation of the terms of an insurance policy, and § 17.46 of the DTPA.

41.    Farmers' failure to adequately disclose that switching Texas homeowners-insurance policyholders from Farmers Insurance Exchange into Fire Insurance Exchange resulted in a higher premium for those policyholders constitutes misleading, deceptive acts or practices in the business of insurance under Tex. Ins. Code art. 21.21 § 4, specifically,

but without limitation, in violation of Tex. Ins. Code art. 21.21 § 4(11) concerning the misrepresentation of the terms of an insurance policy, and § 17.46 of the DTPA.

42.    The Automobile Insurers' failure to adequately disclose that a poor FARA score would put an automobile policyholder into Farmers Texas County Mutual Insurance Company and result in a higher premium constitutes misleading, deceptive acts or practices in the business of insurance under Tex. Ins. Code art. 21.21(4), specifically, but without limitation, in violation of Tex. Ins. Code art. 21.21 § 4(11) concerning the misrepresentation of the terms of an insurance policy, and § 17.46 of the DTPA.

43.    The management fee that Farmers Group, Inc. receives results in an excessive insurance premium and was not properly disclosed to all Texas homeowners-insurance policyholders and constitutes an unfair or deceptive act or practice in the business of insurance in violation of Tex. Ins. Code art. 21.21 § 3 and Tex. Ins. Code art. 21.21 § 4, specifically, but without limitation, in violation of Tex. Ins. Code art. 21.21 § 4(11) concerning the misrepresentation of the terms of an insurance policy, and § 17.46 of the DTPA.

### Permanent Injunction

44.    Unless enjoined, Farmers will continue to operate in violation of the laws of this State. Farmers' discriminatory and deceptive practices injure the Exchanges' Texas homeowners-insurance policyholders. Accordingly, Plaintiffs request injunctive relief to prohibit Farmers from:

    a.    charging both a Texas-based non-hurricane catastrophe load and an "unfunded CAT load;"

b.   using current Farmers Property Risk Assessment in calculating the Exchanges' premiums in an illegally discriminatory manner by failing to provide indicated discounts consistently under FPRA to homeowners-insurance policyholders in calculating premiums;

c.   using the age of policyholders' homes in calculating homeowners-insurance premiums in an illegally discriminatory manner by failing to provide indicated discounts consistently for age-of-home to homeowners-insurance policyholders in calculating premiums;

d.   calculating premiums for Texas homeowners insurance policyholders in every location using the same HO-B to HO-A multiplier in an illegally discriminatory manner;

e.   using data that largely reflects replacement coverage in calculating rates charged for HO-A coverage;

f.   using excessive trend factors in calculating rates charged for coverage;

g.   using too long of a trending period because rate revisions are more frequent than annual; and

h.   switching Texas policyholders from Farmers Insurance Exchange to Fire Insurance Exchange without disclosing the resulting increase in premium caused by the switch.

45.   Unless enjoined, Farmers and the Automobile Insurers will continue to operate in violation of the laws of this State. Farmers' and the Automobile Insurers' misrepresentations and deceptive practices injure their Texas homeowners- and automobile-insurance policyholders. Accordingly, Plaintiffs request injunctive relief to prohibit Farmers and the Automobile Insurers from failing to adequately notify Texas policyholders in writing that credit history affects their premium and/or insurability.

46.   Plaintiffs further request injunctive relief to prohibit the Defendants from engaging in or conspiring with others to engage in any unlawful restraint of trade in the automobile- and homeowners-insurance market. More particularly, Plaintiffs request

21

injunctive relief to prohibit the Defendants from tying their marketing of automobile-insurance policies with their marketing of homeowners-insurance policies and to prohibit their conspiring with other providers of homeowners and/or automobile insurance for anti-competitive purposes.

### *Restoration and Damages*

47.     Pursuant to Tex. Ins. Code art. 21.21 § 15(d), which provides that the "court may make such additional orders or judgments as are necessary to compensate identifiable persons for actual damages or restoration of money," and under Tex. Ins. Code art. 21.21 § 17 for actual damages consisting of the payments of excessive premium payments paid by Texans aggrieved by Farmers' and the Automobile Insurers' practices. Specifically, Plaintiffs ask that Farmers' Texas homeowners insurance policyholders be refunded premiums in an amount of no less than 12% of the base premium rate paid and as much as 18% (depending on the facts ultimately proven at trial) for the violations specified in paragraphs 38, 40 and 43. Additionally, Plaintiffs request premium refunds in the amount of approximately $34 million for those Texas homeowners policyholders aggrieved by the practices specified in paragraphs 35, 36 and 37. Finally, Plaintiffs request premium refunds for the difference between the amount of premium that should have been charged and the amount that was actually charged based on the use of an inaccurate credit history, which amounts will have to be determined on an individual basis and, therefore, cannot be estimated, for Farmers' Texas homeowners policyholders and Automobile Insurers' Texas automobile policies for the violations specified in paragraphs 39 and 42.

22

### Civil Penalties

48.    Under article 21.21 § 15 of the Texas Insurance Code, Plaintiffs seek a civil penalty from Farmers and the Automobile Insurers in an amount not to exceed $10,000.00 per violation, for each violation of article 21.21 and the rules and regulations issued under article 21.21.

49.    Additionally, Plaintiffs seek civil penalties not to exceed $25,000.00 per Texan harmed by any of Farmers' practices that the Court determines violate Tex. Ins. Code art. 21.21-8.

### Costs and Attorneys' Fees

50.    Under Tex. Gov't Code Ann. § 402.006 and Tex. Ins. Code art. 21.21 §17(b)(1), the State seeks all costs incurred in this proceeding, as well as reasonable attorneys' fees, investigative costs, and court costs.

### Jury Demand

51.    Plaintiffs request a trial by jury in this cause under Rule 216 of the Texas Rules of Civil Procedure. The State of Texas is not required to prepay jury fees. See Tex. Civ. Prac. & Rem. Code § 6.001.

### Conclusion and Prayer

For these reasons, Plaintiffs pray that:

    a.    the Court grant a Permanent Injunction, after due notice and hearing, restraining and enjoining Defendants;

    b.    no bond be required of the State;

23

c.    the Court order Farmers and the Automobile Insurers to restore all
      excessive premium payments and provide compensatory damages to
      aggrieved Texas policyholders;

d.    the court determine that this action be maintained as a class action;

e.    Plaintiffs be awarded civil penalties;

f.    the Court award Plaintiffs all costs incurred in this proceeding along with
      reasonable attorneys' fees, investigative costs, and court costs; and

g.    Plaintiffs be awarded any and all other and further relief, both general and
      specific, in law and in equity, to which they may be entitled.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

BARRY R. McBEE
First Assistant Attorney General

JEFFREY S. BOYD
Deputy Attorney General for Litigation

PAUL CARMONA
Chief, Consumer Protection Division

DAVID C. MATTAX
Chief, Financial Litigation Division

CHRISTOPHER D. LIVINGSTON
State Bar No. 24007559
Assistant Attorney General
Financial Litigation Division
JAMES R. WENZEL
State Bar No. 21179370
Assistant Attorney General
Consumer Protection Division
Insurance Practices Section
P.O. Box 12548
Austin, TX 78711-2548
Telephone: (512) 463-2018
Telecopier: (512) 477-2348

*Attorneys for The State of Texas, on behalf of the Texas Commissioner of Insurance, the Texas Department of Insurance*

25

# VERIFICATION

STATE OF TEXAS             §
                          §
COUNTY OF TRAVIS          §

Before me, the undersigned notary, on this day, personally appeared Sara Shiplet Waitt, a person whose identity is known to me. After I administered an oath to her, upon her oath, she stated that she had read *Plaintiffs' Second Amended Petition* and that the facts stated in paragraphs 13, 14, and 17 through 29 are within her personal knowledge or information obtained from other persons and are true and correct to the best of her knowledge and belief.

_____
Sara Shiplet Waitt

Subscribed and sworn to before me by Sara Shiplet Waitt on this ___17th___ day of February, 2003.

SYLVIA R. LAFUENTE
Notary Public. State of Texas
My Commission Expires
DECEMBER 21, 2004

_____
Notary Public in and for the State of Texas

27

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing PLAINTIFFS' SECOND AMENDED PETITION has been served on the following attorneys of record by facsimile this __19 th__ day of __February__, 2003.

Mr. Richard N. Carrell
FULBRIGHT & JAWORSKI, L.L.P.
1301 McKinney, Suite 5100
Houston, TX  77010-3095
FAX: (713) 651-5246

M. Scott Incerto
FULBRIGHT & JAWORSKI, L.L.P.
600 Congress Avenue, Ste. 2400
Austin, TX  78701
FAX: (512) 536-4598

Joe K. Longley
Phillip K. Maxwell
LONGLEY & MAXWELL, L.L.P.
1609 Shoal Creek Blvd #100
PO Box 12667
Austin, Texas  78711
FAX: (512) 477-4470

STEPHEN MCCLEERY
Attorney at Law
3212 Bonnie Road
Austin, Texas  78703
FAX: (512) 482-9257

John A. Davis, Jr.
Steven R. Davis
R. Martin Weber, Jr.
DAVIS & DAVIS
5847 San Felipe, Suite 3275
Houston, Texas  77057
FAX: (713) 781-2235

Joe W. Redden, Jr.
W. Curt Webb
BECK, REDDEN, & SECREST
1221 McKinney Street, Suite 4500
Houston, Texas  77010-2010
FAX: (713) 951-3720

David Burrow
Alice Parrot
BURROW & PARROTT, L.L.P.
1301 McKinney, Suite 3500
Houston, Texas   77010-3092
FAX:  (713) 650-6333

Pat Maloney, Jr.
MALONEY, JEFFERSON & DUGAS
The Maloney Bldg
239 East Commerce Street
San Antonio, Texas   78205
FAX:  (210) 222-8477

Dwight Jefferson
MALONEY, JEFFERSON & DUGAS
12 Greenway Plaza, Suite 1550
Houston, Texas   77046
FAX:  (713) 993-0533

Curt L. Cukjati
Trey Martin
Conry Davidson
MARTIN & CUKJATI, L.L.P.
333 Convent Street
San Antonio, Texas   78205
FAX:  (210) 223-5052

William J. Skepnek
SKEPNEK LAW FIRM, P.A.
900 Massachusetts, Suite 601
Lawrence, Kansas   66044
FAX:  (785) 331-0303

Steven M. Smoot
LAW OFFICES OF STEVEN M. SMOOT
5847 San Felipe, Suite 3275
Houston, Texas   77057
FAX:  (713) 781-2235

_____
CHRISTOPHER D. LIVINGSTON

# Exhibit E

CERTIFIED COPY

CAUSE NO. 2002-09-3153-A

| | | |
|---|---|---|
| ALBERT PULLEN AND ZONIA PULLEN, on behalf of themselves and others similarly situated | § § § § | IN THE DISTRICT COURT OF |
| VS. | § § § | CAMERON COUNTY, TEXAS |
| FARMERS GROUP, INC., FARMERS UNDERWRITERS ASSOCIATION, FIRE UNDERWRITERS ASSOCIATION FARMERS INSURANCE EXCHANGE, and FIRE INSURANCE EXCHANGE | § § § § § | |

FILED 11:10 O'CLOCK ___ M
AURORA DE LA GARZA DIST. CLERK
SEP 23 2002
DISTRICT COURT OF CAMERON COUNTY
107 JUDICIAL COURT

## PLAINTIFFS' ORIGINAL CLASS ACTION PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, PLAINTIFFS, each individually, by and through their attorneys of record, complaining of and against Defendants Farmers Group, Inc., Farmers Underwriters Association, Fire Underwriters Association, Farmers Insurance Exchange, and Fire Insurance Exchange, and in support thereof, respectfully files this Petition showing the Court and Jury as follows:

I.

### JURISDICTION

The relief sought by the Plaintiffs is subject to the jurisdiction of this Texas District Court. The damages suffered and sought to be recovered by the Plaintiffs in this class exceed the minimum jurisdictional limits of this Court.

II.

### VENUE

Venue is proper in Cameron County, Texas as all or a substantial part of the events or

CERTIFIED COPY

omissions giving rise to the claim occurred in such county. Furthermore, venue is proper in Cameron County, Texas, because the Plaintiffs resided in Cameron County, Texas, at the time their breach of express and implied warranties accrued, pursuant Sections 15.032 and 15.033 of the Texas Civil Practice and Remedies Code and Section 17.56 of the Texas Business and Commerce Code.

**III.**

**PARTIES**

**Plaintiffs**

Plaintiffs Albert Pullen and Zonia Pullen are residents of Cameron County, Texas, and bring this action both in their individual capacity and on behalf of all Texas residents who had insurance with Defendants during the last eighteen (18) months. This action is brought by Plaintiffs as a class action on their own behalf, and on behalf of all others similarly situated under Texas Rules of Civil Procedure Rule 42 and Texas Insurance Code Section 21.21.

There are common questions of law and fact in the action that relate to affect the rights of each member of the class and the relief sought is common to the entire class.

The claims of the named plaintiffs are typical of the claims of the class, in that the claims of all members of the class depend on the showing of the acts of omissions of defendant giving rise to the right of plaintiffs to the relief sought here. There is no conflict between any individual named plaintiffs and other members of the class with respect to this action, or with respect to the class for relief here set forth. Accordingly, the name plaintiffs will fairly and adequately protect the interests of the class. Furthermore, the class is so numerous that joinder of all members is impracticable, there are questions of law or fact common to the class, the claims or defenses of the representative parties are typical of the claims or defenses of the class and the representative parties will fairly and adequately protect the interests of the class.

CERTIFIED COPY

### Defendants

Defendant Farmers Group, Inc. is a Nevada corporation and the parent company of Farmers Underwriters Association, which is the attorney-in-fact of the Farmers Insurance Exchange. Its principal place of business is 4680 Wilshire Boulevard, Los Angeles, California 90010 and it may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because this suit is being brought by the State of Texas.

Defendant Farmers Underwriters Association is the attorney-in-fact of the Farmers Insurance Exchange. Its principal place of business if 4680 Wilshire Boulevard, Los Angeles, California 90010 and it may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because this suit is being brought by the State of Texas.

Defendant Fire Underwriters Association is the attorney-in-fact of the Fire Insurance Exchange. Its principal place of business is 4680 Wilshire Boulevard, Los Angeles, California 90010 and it may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because this suit is being brought by the State of Texas.

Defendant Farmers Insurance Exchange is a foreign insurance carrier organized and existing under the laws of California and authorized to conduct a homeowners-insurance business in this State. Its principal place of business is 4680 Wilshire Boulevard, Los Angeles, California 90010 and it may be served with process by serving its agent for service, Gerald Galvan, Farmers Insurance Exchange, 100 Farmers Circle, Round Rock, Texas 78728.

Defendant Fire Insurance Exchange is a foreign insurance carrier organized and existing under the laws of California and authorized to conduct a homeowners-insurance business in this State. Its principal place of business is 4680 Wilshire Boulevard, Los Angeles, California 90010 and it may be served with process by serving its agent for service, Fred B. Wekenthin, Jackson Walker, L.L.P., 100 Congress Avenue, Suite 1100, Austin, Texas 78768, as its agent for service.

CERTIFIED COPY

IV.

FACTS AND CAUSES OF ACTION

At all relevant times, Defendants were in the business of providing homeowners' insurance in Texas through itself or as part of a reciprocal exchange. Defendants had a fiduciary duty to their homeowners to act with good faith and fair dealing toward its homeowners. As part of the process of insuring such homeowners, however, during approximately the last eighteen (18) months, Defendants have been using the credit history of their homeowners as a significant factor in calculating premiums for such homeowners. Defendants accessed and used such credit information without notifying homeowners of the effect of doing so. Defendants used the credit information as part of a credit scoring system that was used as a basis for determining premiums and the amount of coverage. Defendants contracted with Fair, Isaac & Co. to obtain such credit score and, based on such score, placed each homeowner into a category between "A" and "Z." Based on such category, Defendants then calculated the policyholder's premium.

Defendants failed to adequately disclose to policyholders that it used their credit history to increase premiums or give discounts and failed to disclose the effect of the policyholder's score and credit history on the amount of premiums charged or coverage obtained. Defendants further failed to adequately disclose that the policyholders had the right to contest or update their score or the effect of their credit history on their score. Additionally, Defendants, without the consent of the homeowners, accessed and utilized such information from Fair, Isaac & Co. and the Defendants shared such information, all to the Plaintiffs' detriment. As a result of Defendants' actions, their homeowners were damaged and discriminated against.

Defendants further discriminated against Texas homeowners by charging them for catastrophes that occur in other states and also charging them disproportionately for catastrophes nationwide. Such charges resulted in increased premiums for Texas homeowners. Additionally, the

CERTIFIED COPY

Defendants failed to notify homeowners in the Exchanges that they charge a management fee based on the percentage of premiums collected, the terms of such fees, and that such fees benefit Defendants to the detriment of the Exchanges and the homeowners.

This action is properly maintained as a class action in that the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class.

By their conduct, the Defendants engaged in an unconscionable action or course of action. The Defendants took advantage of their position to a grossly unfair degree and are therefore liable to the Plaintiffs. The conduct of the Defendants resulted in a gross disparity between the value actually received and the value promised.

The Defendants' conduct constitutes false, misleading and deceptive acts in violation of the Texas Deceptive Trade Practices/Consumer Protection Act (The "DTPA"). Furthermore, Plaintiffs are "consumers" with the meaning of the DTPA, and Defendants, through their acts and omissions, violated the terms of the DTPA including one or more of the following respects:

   a.    Falsely representing that goods or services are of a particular standard, quality, or grade;

   b.    Failing to disclose information concerning goods or services that was known at the time of the transaction if the failure to disclose was intended to induce the consumer into a transaction the consumer would not have entered into had the information been disclosed;

   c.    Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

CERTIFIED COPY

d.    Misrepresenting the authority of a salesman, representative or agent to negotiate the final terms of a consumer transaction;

e.    Engaging in an unconscionable action or course of action that was a producing cause of damages.  Plaintiffs also allege Defendants committed unlisted deceptive trade practices.

The foregoing representations violate Section 17.46(b) of the DTPA and are actionable.

Plaintiffs also bring this action against Defendants for breach of contract, breach of the duty of good faith and fair dealing, and breach of Articles 21.21 of the Texas Insurance Code in connection with the insurance policies sold by Defendants.  Plaintiffs have a direct cause of action against under Article 21.21 of the Texas Insurance Code, including, but not limited to, violations of Article 21.21, Sections 4 (1), (2), (7), and (11) of the Texas Insurance Code.

## V.

## DAMAGES

The conduct of Defendants, as described herein, was a producing cause of damages to the Plaintiffs.  In addition, because such conduct involved knowing violations of the DTPA, Plaintiffs are entitled to recover additional statutory damages and treble damages in an amount exceeding the minimum jurisdictional limits of this court.

Plaintiffs also seek the amount of their actual damages plus court costs and reasonable and necessary attorneys' fees. Plaintiffs also seek treble damages as to Defendants' conduct that was knowingly committed in violation of the Texas Insurance Code.

Plaintiffs seek as damages monetary compensation for all actual, special, out-of-pocket losses, mental stress, consequential, punitive, and other pecuniary damages or losses which they may be justly entitled, including, but not limited to a refund of the insurance premium charged.

**CERTIFIED COPY**

Plaintiffs further seek punitive damages against the Defendants for the Defendants' willful actions. Defendants, their agents, employees, and assignees knew or had actual subjective awareness of their actions but nevertheless proceeded with conscious indifference in an effort to maximize sales and profits at the expense of homeowners and in conscious disregard of the foreseeable harm caused by their actions. This conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, or willful and intentional disregard of an extreme degree of risk that the Plaintiffs would incur substantial injury. The Plaintiffs as well as others similarly situated therefore, are entitled to punitive damages for such malice. Because of all of the above and foregoing, the Plaintiffs have been damaged jointly ad severally, and against Defendants for exemplary damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request the following relief for themselves and all other members of the class:

1. Compensatory damages in an amount to be proven at trial, including any economic and pecuniary damages such as a refund of premiums charged and other losses to which they show themselves justly entitled;

2. Punitive Damages;

3. Reasonable and necessary attorneys fees;

4. Taxable costs of suit;

5. Pre and post judgment interest; and

6. Such other and further relief as the Court may deem necessary or appropriate.



**CERTIFIED COPY**

Respectfully Submitted,

Suzanne M. Schwarz
State Bar No. 17872300
**LAW OFFICES OF SUZANNE SCHWARZ, P.C.**
P.O. Box 532044
Harlingen, Texas 78553
Tel: (956) 440-0340
Fax: (956) 440-8252


Benigno "Trey" Martinez
State Bar No. 00797011
**MARTINEZ, BARRERA,& MARTINEZ, L.L.P.**
1201 E. Van Buren
Brownsville, Texas 78520
Tel: (956) 546-7159
Fax: (956) 544-0602
**ATTORNEY FOR PLAINTIFFS**

A TRUE COPY I CERTIFY
AURORA DE LA GARZA, CLERK
DISTRICT COURT CAMERON COUNTY TEX.
DATE 10-18-02
BY _____ DEPUTY

# Exhibit F

CERTIFIED COPY

CAUSE NO. 2002-09-3752-A

| | | |
|---|---|---|
| ALBERT PULLEN AND ZONIA | § | IN THE DISTRICT COURT OF |
| PULLEN, on behalf of themselves and | § | |
| others similarly situated | § | |
| | § | |
| VS. | § | CAMERON COUNTY, TEXAS |
| | § | |
| | § | |
| FARMERS GROUP, INC., FARMERS | § | |
| UNDERWRITERS ASSOCIATION, | § | |
| FIRE UNDERWRITERS ASSOCIATION | § | |
| FARMERS INSURANCE EXCHANGE, | § | |
| FIRE INSURANCE EXCHANGE, and | § | |
| JOSE GUTIERREZ, as agent | § | 107th JUDICIAL COURT |

FILED 2:00 O'CLOCK P M
AURORA DE LA GARZA DIST. CLERK

OCT 0 1 2002

DISTRICT COURT OF CAMERON COUNTY, TEXAS
DEPUTY

## PLAINTIFFS' THIRD AMENDED CLASS ACTION PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, PLAINTIFFS, each individually, by and through their attorneys of record, complaining of and against Defendants Farmers Group, Inc., Farmers Underwriters Association, Fire Underwriters Association, Farmers Insurance Exchange, Fire Insurance Exchange, and Jose Gutierrez as agent, and in support thereof, respectfully files this Petition showing the Court and Jury as follows:

### I.

### JURISDICTION

The relief sought by the Plaintiffs is subject to the jurisdiction of this Honorable Court. The damages suffered and sought to be recovered by the Plaintiffs in this class exceed the minimum jurisdictional limits of this Court.

### II.

### VENUE

Venue is proper in Cameron County, Texas as all or a substantial part of the events or

CERTIFIED COPY

omissions giving rise to the claim occurred in such county. Furthermore, venue is proper in Cameron

County, Texas, because the Plaintiffs resided in Cameron County, Texas, at the time their breach of

express and implied warranties accrued, pursuant to Sections 15.032 and 15.033 of the Texas Civil

Practice and Remedies Code and Section 17.56 of the Texas Business and Commerce Code.

### III.

### PARTIES

### Plaintiffs

Plaintiffs Albert Pullen and Zonia Pullen are residents of Cameron County, Texas, and bring

this action both in their individual capacity and on behalf of all Texas residents who had insurance

with Defendants during the last eighteen (18) months. This action is brought by Plaintiffs as a class

action on their own behalf, and on behalf of all others similarly situated under Texas Rules of Civil

Procedure Rule 42 and Texas Insurance Code Section 21.21.

There are common questions of law and fact in the action that relate to affect the rights of

each member of the class and the relief sought is common to the entire class.

The claims of the named plaintiffs are typical of the claims of the class, in that the claims of

all members of the class depend on the showing of the acts of omissions of defendant giving rise to

the right of plaintiffs to the relief sought here. There is no conflict between any individual named

plaintiffs and other members of the class with respect to this action, or with respect to the class for

relief here set forth. Accordingly, the name plaintiffs will fairly and adequately protect the interests

of the class. Furthermore, the class is so numerous that joinder of all members is impracticable, there

are questions of law or fact common to the class, the claims or defenses of the representative parties

are typical of the claims or defenses of the class and the representative parties will fairly and

adequately protect the interests of the class.

CERTIFIED COPY

**Defendants**

Defendant Farmers Group, Inc. is a Nevada corporation with its principal place of business at 4680 Wilshire Boulevard, Los Angeles, California 90010, and it may be served with process by serving its registered agent C.T. Corporation, 350 N. St. Paul Street, Dallas, Texas 75201.

Defendant Farmers Underwriters Association is the attorney-in-fact of Farmers Insurance Exchange with its principal place of business at 4680 Wilshire Boulevard, Los Angeles, California 90010. It may be served with process by serving its registered agent C.T. Corporation, 350 N. St. Paul Street, Dallas, Texas 75201.

Defendant Fire Underwriters Association is the attorney-in-fact of Fire Insurance Exchange with its principal place of business at 4680 Wilshire Boulevard, Los Angeles, California 90010. It may be served with process by serving its registered agent C.T. Corporation, 350 N. St. Paul Street, Dallas, Texas 75201.

Defendant Farmers Insurance Exchange is a foreign insurance carrier organized and existing under the laws of California with its principal place of business is 4680 Wilshire Boulevard, Los Angeles, California 90010. It may be served with process by serving its registered agent Gerald Galvan, Farmer's Insurance Exchange, 198 Farmers Circle, Round Rock, Texas 78728.

Defendant Fire Insurance Exchange is a foreign insurance carrier organized and existing under the laws of California with its principal place of business is 4680 Wilshire Boulevard, Los Angeles, California 90010. It may be served with process by serving its registered agent for service, Fred B. Wekenthin, Jackson Walker, L.L.P., 100 Congress Avenue, Suite 1100, Austin, Texas 78768.

Defendant Jose Gutierrez is in an insurance agent for the Defendants and is an adult individual who may be served with process at his place of business located at 1514 E. Los Ebanos, Brownsville, Texas 78520.

CERTIFIED COPY

IV.

FACTS AND CAUSES OF ACTION

At all relevant times, Defendants were in the business of providing insurance in Texas through itself or as part of a reciprocal exchange. Defendants had a fiduciary duty to their policyholders to act with good faith and fair dealing toward its policyholders. As part of the process of insuring their policyholders, however, during approximately the last eighteen (18) months, Defendants have been using the credit history of their policyholders as a significant factor in calculating premiums for such policyholders. Defendants accessed and used such credit information without notifying policyholders of the effect of doing so. Defendants used the credit information as part of a credit scoring system that was used as a basis for determining premiums and the amount of coverage. Defendants contracted with Fair, Isaac & Co. to obtain such credit score and, based on such score, placed each policyholder into a category between "A" and "Z." Based on such category, Defendants then calculated the policyholder's premium.

Defendants failed to adequately disclose to policyholders that they used their credit history to increase premiums or give discounts and failed to disclose the effect of the policyholder's score and credit history on the amount of premiums charged or coverage obtained. Defendants further failed to adequately disclose that the policyholders had the right to contest or update their score or the effect of their credit history on their score. Defendants used such credit history as a means to switch policyholders into higher, unregulated companies and did so without full disclosure. Additionally, Defendants, without the consent of the policyholders, accessed and utilized such information from Fair, Isaac & Co. and the Defendants shared such information, all to the Plaintiffs' detriment. As a result of Defendants' actions, their policyholders were damaged and discriminated against.

Defendants further discriminated against Texas policyholders by charging them for

CERTIFIED COPY

catastrophes that occur in other states and also charging them disproportionately for catastrophes nationwide. Such charges resulted in increased premiums for Texas policyholders. Additionally, the Defendants failed to notify policyholders in the Exchanges that they charge a management fee based on the percentage of premiums collected, the terms of such fees, and that such fees benefit Defendants to the detriment of the Exchanges and the policyholders.

This action is properly maintained as a class action in that the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class.

By their conduct, the Defendants engaged in an unconscionable action or course of action. The Defendants took advantage of their position to a grossly unfair degree and are therefore liable to the Plaintiffs. The conduct of the Defendants resulted in a gross disparity between the value actually received and the value promised.

The Defendants' conduct constitutes false, misleading and deceptive acts in violation of the Texas Deceptive Trade Practices/Consumer Protection Act (The "DTPA"). Furthermore, Plaintiffs are "consumers" with the meaning of the DTPA, and Defendants, through their acts and omissions, violated the terms of the DTPA including one or more of the following respects:

a.    Falsely representing that goods or services are of a particular standard, quality, or grade;

b.    Failing to disclose information concerning goods or services that was known at the time of the transaction if the failure to disclose was intended to induce the consumer into a transaction the consumer would not have entered into had the information been disclosed;



CERTIFIED COPY

c.    Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

d.    Misrepresenting the authority of a salesman, representative or agent to negotiate the final terms of a consumer transaction;

e.    Engaging in an unconscionable action or course of action that was a producing cause of damages.  Plaintiffs also allege Defendants committed unlisted deceptive trade practices.

The foregoing representations violate Section 17.46(b) of the DTPA and are actionable.

Plaintiffs also bring this action against Defendants for breach of contract, breach of the duty of good faith and fair dealing, and breach of Article 21.21 of the Texas Insurance Code in connection with the insurance policies sold by Defendants.  Plaintiffs have a direct cause of action against under Article 21.21 of the Texas Insurance Code, including, but not limited to, violations of Article 21.21 Sections 4 (1), (2), (7), and (11) of the Texas Insurance Code.

## V.

## DAMAGES

The conduct of Defendants, as described herein, was a producing cause of damages to the Plaintiffs.  In addition, because such conduct involved knowing violations of the DTPA, Plaintiffs are entitled to recover additional statutory damages and treble damages in an amount exceeding the minimum jurisdictional limits of this court.

Plaintiffs also seek the amount of their actual damages plus court costs and reasonable and necessary attorneys' fees. Plaintiffs also seek treble damages as to Defendants' conduct that was knowingly committed in violation of the Texas Insurance Code.

Plaintiffs seek as damages monetary compensation for all actual, special, out-of-pocket losses,

CERTIFIED COPY

mental stress, consequential, punitive, and other pecuniary damages or losses which they may be

justly entitled, including, but not limited to a refund of the insurance premium charged.

Plaintiffs further seek punitive damages against the Defendants for the Defendants' willful

actions. Defendants, their agents, employees, and assignees knew or had actual subjective awareness

of their actions but nevertheless proceeded with conscious indifference in an effort to maximize sales

and profits at the expense of policyholders and in conscious disregard of the foreseeable harm caused

by their actions. This conduct exhibits such an entire want of care as to establish that their actions

were a result of fraud, ill will, recklessness, or willful and intentional disregard of an extreme degree

of risk that the Plaintiffs would incur substantial injury. The Plaintiffs as well as others similarly

situated therefore, are entitled to punitive damages for such malice. Because of all of the above and

foregoing, the Plaintiffs have been damaged jointly ad severally, and against Defendants for exemplary

damages.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully request the following

relief for themselves and all other members of the class:

1.  Compensatory damages in an amount to be proven at trial, including any economic
    and pecuniary damages such as a refund of premiums charged and other losses to
    which they show themselves justly entitled;

2.  Punitive Damages;

3.  Reasonable and necessary attorneys fees;

4.  Taxable costs of suit;

5.  Pre and post judgment interest; and

6.  Such other and further relief as the Court may deem necessary or appropriate.

CERTIFIED COPY

Respectfully Submitted,

Suzanne M. Schwarz
State Bar No. 17872300
**LAW OFFICES OF SUZANNE SCHWARZ, P.C.**
P.O. Box 532044
Harlingen, Texas  78553
Tel: (956) 440-0340
Fax: (956) 440-8252

Benigno "Trey" Martinez
State Bar No. 00797011
**MARTINEZ, BARRERA,& MARTINEZ, L.L.P.**
1201 E. Van Buren
Brownsville, Texas 78520
Tel: (956) 546-7159
Fax: (956) 544-0602
**ATTORNEY FOR PLAINTIFFS**



No Transmission Information Available  in  on line [0] for AM08402 Printed 10/08/2002  17:55 • Pg 3/12
OC--09-2002  11:20          FARMERS GROUP INC                              3239648093    P.03

Citation for Personal Service  - BY CERTIFIED MAIL      Lit. Seq. # 5.006.01

No. 2002-09-003753-A

T H E   S T A T E   O F   T E X A S

      NOTICE TO DEFENDANT: You have been sued.  You may employ an attorney.  If
you or your attorney do not file a written answer with the clerk who issued this
citation by 10:00 a.m. on the Monday next following the expiration of twenty
days after you were served this citation and petition, a default judgment may be
taken against you.

TO: FARMERS INSURANCE EXCHANGE
    SERVING REGISTERED AGENT
    GERALD GALVEN
    100 FARMERS CIRCLE
    ROUND ROCK  TEXAS  78728

the _____DEFENDANT_____, GREETING:

      You are commanded to appear by filing a written answer to the

PLAINTIFFS' THIRD AMENDED CLASS ACTION PETITION

at or before 10:00 o'clock a.m. of the Monday next after the expiration of 20
days after the date of service of this citation before the Honorable District
Court 107th Judicial District of Cameron County, Texas at the Courthouse of said
county in Brownsville, Texas.  Said THIRD AMENDED PETITION  was filed on
OCTOBER 01, 2002 .  A copy of same accompanies this citation.

The file number of said suit being No. 2002-09-003753-A.

The style of the case is:

          ALBERT PULLEN AND ZONIA PULLEN, ON BEHALF OF THEM
                              VS.
          FARMERS GROUP, INC., FARMERS UNDERWRITERS ASSOCIAT

Said petition was filed in said court by _____SUZANNE M. SCHWARZ_____
(Attorney for _____PLAINTIFF_____), whose address is
P.O. BOX 532044 HARLINGEN, TEXAS  78533

      The nature of the demand is fully shown by a true and correct copy of the
Petition accompanying this citation and made a part hereof.

      The officer executing this writ shall promptly serve the sama according to
requirements of law, and the mandates thereof, and make due return as the law
directs.

      Issued and given under my hand and seal of said Court at Brownsville,
Texas, this the 2nd day of OCTOBER , A.D. 2002.

                          AURORA DE LA GARZA , DISTRICT CLERK
                          Cameron County, Texas
                          974 E. Harrison St.
                          Brownsville, Texas 78521
                          by _____ , Deputy

No Transmission Information Available  in  on line [0] for AM08402 Printed 10/08/2002  17:55 * Pg 4/12
OCT-08-2002  11:20          FARMERS GROUP INC                          3239648093      P.04

CERTIFICATE OF DELIVERY OF MAIL

I hereby certify that on the  2nd of

OCTOBER  2002,  I mailed to

FARMERS INSURANCE EXCHANGE

by registered mail or certified mail, with
delivery restricted to addressee only,
return receipt requested, a true copy of
this citation with a copy of the petition
attached hereto.

CERTIFIED MAIL NO.    61479701
RETURN RECEIPT REQUESTED
DELIVER TO ADDRESSEE ONLY

AURORA DE LA GARZA    , District Clerk
Cameron County, Texas

By  Estela Sala    , Deputy

---

**ATTACH RETURN RECEIPTS WITH
ADDRESSEE'S SIGNATURE**

Rule 106 (a)(2):  The citation
shall be served by mailing to
the defendant by Certified Mail.
Return Receipt Requested, a true
copy of the citation.

Sec. 17.027, Rules of Civil
Practice and Remedies Code, if
not prepared by Clerk of Court.

NAME OF PREPARER                TITLE

ADDRESS

CITY              STATE

# Exhibit G

CAUSE No. GV202501

| | | |
|---|---|---|
| THE STATE OF TEXAS, THE TEXAS DEPARTMENT OF INSURANCE, AND THE TEXAS COMMISSIONER OF INSURANCE, | § § § § | IN THE DISTRICT COURT |

PLAINTIFFS,

v.

FARMERS GROUP, INC., FARMERS
UNDERWRITERS ASSOCIATION, FIRE
UNDERWRITERS ASSOCIATION, FARMERS
INSURANCE EXCHANGE, FIRE
INSURANCE EXCHANGE, TEXAS
FARMERS INSURANCE COMPANY, MID-
CENTURY INSURANCE COMPANY OF
TEXAS, MID-CENTURY INSURANCE
COMPANY, TRUCK INSURANCE
EXCHANGE, TRUCK UNDERWRITERS
ASSOCIATION AND FARMERS TEXAS
COUNTY MUTUAL INSURANCE COMPANY,

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

OF TRAVIS COUNTY, TEXAS

261ST JUDICIAL DISTRICT

DEFENDANTS.

## NOTICE OF HEARING

Please take notice that Plaintiffs' Motion for Settlement Class Certification, Preliminary

Approval of Proposed Class Settlement, and Approval of Notice Plan has been set for hearing

beginning Monday, May 19, 2003, at 9:00 a.m. and continuing through Wednesday, May 21,

2003 in the 261" Judicial District Court of Travis County, Texas at the Travis County

Courthouse, 1000 Guadalupe Street, Austin, Texas.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

BARRY R. McBEE
First Assistant Attorney General

JEFFREY S. BOYD
Deputy Attorney General for Litigation

DAVID MATTAX
Chief, Financial Litigation Division


CHRISTOPHER D. LIVINGSTON
State Bar No. 24007559
Assistant Attorney General
Financial Litigation Division
JAMES R. WENZEL
State Bar No. 21179370
Assistant Attorney General
Consumer Protection Division
Insurance Practices Section
P.O. Box 12548
Austin, TX 78711-2548
Telephone: (512) 463-2018
Telecopier: (512) 477-2348
*Attorneys for The State of Texas, on behalf of the*
*Texas Commissioner of Insurance, the Texas*
*Department of Insurance*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **NOTICE OF HEARING** has been served on the following attorneys of record by facsimile this 12th day of March, 2003.

Mr. Richard N. Carrell
FULBRIGHT & JAWORSKI, L.L.P.
1301 McKinney, Suite 5100
Houston, TX  77010-3095
FAX: (713) 651-5246

M. Scott Incerto
FULBRIGHT & JAWORSKI, L.L.P.
600 Congress Avenue, Ste. 2400
Austin, TX  78701
FAX: (512) 536-4598

Joe K. Longley
Phillip K. Maxwell
LONGLEY & MAXWELL, L.L.P.
1609 Shoal Creek Blvd #100
PO Box 12667
Austin, Texas  78711
FAX: (512) 477-4470

David Burrow
Alice Parrot
BURROW & PARROTT, L.L.P.
1301 McKinney, Suite 3500
Houston, Texas  77010-3092
FAX: (713) 650-6333

STEPHEN MCCLEERY
Attorney at Law
3212 Bonnie Road
Austin, Texas  78703
FAX: (512) 482-9257

Pat Maloney, Jr.
MALONEY, JEFFERSON & DUGAS
The Maloney Bldg
239 East Commerce Street
San Antonio, Texas  78205
FAX: (210) 222-8477

John A. Davis, Jr.
Steven R. Davis
R. Martin Weber, Jr.
DAVIS & DAVIS
5847 San Felipe, Suite 3275
Houston, Texas  77057
FAX: (713) 781-2235

Dwight Jefferson
MALONEY, JEFFERSON & DUGAS
12 Greenway Plaza, Suite 1550
Houston, Texas  77046
FAX: (713) 993-0533

Curt L. Cukjati
Trey Martin
Conry Davidson
MARTIN & CUKJATI, L.L.P.
333 Convent Street
San Antonio, Texas  78205
FAX: (210) 223-5052

Joe W. Redden, Jr.
W. Curt Webb
BECK, REDDEN, & SECREST
1221 McKinney Street, Suite 4500
Houston, Texas  77010-2010
FAX: (713) 951-3720

William J. Skepnek
SKEPNEK LAW FIRM, P.A.
900 Massachusetts, Suite 601
Lawrence, Kansas   66044
FAX:  (785) 331-0303

Steven M. Smoot
LAW OFFICES OF STEVEN M. SMOOT
5847 San Felipe, Suite 3275
Houston, Texas   77057
FAX:  (713) 781-2235

_____
CHRISTOPHER D. LIVINGSTON