22

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAY 27 2003

Michael N. Milby
Clerk of Court

ALBERT PULLEN ET AL., Plaintiffs, § § § V. § C. A. NO. B-02-206 § FARMERS GROUP, INC., ET AL., Defendants. § §

**SUPPLEMENT TO JOINT DISCOVERY/CASE MANAGEMENT PLAN**
**UNDER RULE 26(f) FEDERAL RULES OF CIVIL PROCEDURE**

Pursuant to the Court's October 25, 2002 Order Setting Conference, March 25, 2003 Scheduling Order, and Federal Rule of Civil Procedure 26, plaintiffs and defendants file this their Supplement to their Joint Conference Report, as directed by the Court in light of the Preliminary Approval Hearing for the Attorney General class action pending in Travis County, Austin, Texas:

3. **Briefly describe what this case is about.**

*Plaintiffs' Statement:*

Plaintiffs assert that the defendants failed to properly disclose to Texas policyholders that they used their credit history to increase premiums or give discounts and the right of policyholders to contest their scores. Plaintiffs further assert that the defendants improperly used credit history to switch policyholders into higher, unregulated companies. Plaintiffs have requested that this matter be certified as a class action.

*Defendants' Statement:*

Defendants deny plaintiffs' allegations and do not believe that a class should be certified or that this matter should be litigated. As defendants explained at the Scheduling Conference held before this Court on March 17, 2003 and in their Motion to Dismiss (Dkt. No. 16), the

issues raised by plaintiffs' suit have already been fully litigated and resolved in a class action suit brought by the Attorney General and Commissioner of Insurance on behalf of Texas policyholders against defendants, which was filed before this action.

The Attorney General and defendants entered into a class settlement agreement which has an estimated value of $117.5 million. The Court in Travis County Austin, Texas recently held a preliminary approval hearing on May 19, 2003, which concluded on May 22, 2003. The Court heard testimony from various witnesses, including representatives from the Texas Department of Insurance, including Commissioner Jose Montemayor and Karina Casari, former deputy Commissioner, and Jeff Body, Deputy Attorney General, Stephen Leaman, former Executive Vice-President for Farmers Group, Inc., Professor Samuel Issacharoff, a class action expert from Columbia Law School, formerly with the University of Texas School of Law, and David Appel, an actuary expert. The Court also received documentary evidence from the State and Farmers. Intervenors, representing other class members, were provided an opportunity to cross examine witnesses and offer evidence challenging the propriety and adequacy of the settlement. After a full hearing in which the Court considered all of the evidence presented, the Court preliminarily certified settlement classes and preliminarily approved the class settlement. *See* Settlement Approval Hearing Transcript, Attached as Exhibit A.

In light of the Court's approval of the class settlement in the Attorney General suit, defendants believe that this matter should be dismissed. In the alternative, defendants believe that the Court should, at a minimum, stay this action pending the final approval hearing, which will likely be held in September 2003.

**20. List pending motions that could be ruled on at the initial pretrial and scheduling conference.**

*Plaintiffs' Statement:*

Plaintiffs' Motion for Leave to File Fourth Amended Complaint (Dkt. No. 5).

*Defendants' Statement:*

Defendants' Motion for Leave to File Sur-Reply in Support of Opposition to Plaintiffs' Motion for Leave to File Fourth Amended Complaint (Dkt. No. 12).

Defendants' Motion to Dismiss, or Alternatively, for Judgment and Brief in Support (Dkt No. 16).

Defendant Jose Gutierrez's Motion to Dismiss, or Alternatively, for Judgment and Brief in Support (Dkt. No. 17).

**22. Indicate other matters peculiar to this case, including discovery, that deserve the special attention of the Court at the conference.**

In light of the Court's approval of the class action settlement, the parties have agreed to submit amended deadlines concerning the time for plaintiff to respond to defendants Farmers and Jose Gutierrez's Motions to Dismiss and for submission of an amended Scheduling Order following the conclusion of the final approval hearing on the class settlement in the Attorney General lawsuit, which will likely occur in September 2003. *See* Amended Scheduling Order attached at Exhibit B.

Respectfully submitted,

Suzanne M. Schwarz
State Bar No. 17872300
LAW OFFICES OF SUZANNE SCHWARZ, P.C.
P.O. Box 532044
Harlingen, Texas 78553
Telephone: 956.440.0340
Telecopier: 956.440.8252

Benigno "Trey" Martinez
State Bar No. 00797011
Federal I.D. No. 23945
MARTINEZ, BARRERA & MARTINEZ, L.L.P.
1201 E. Van Buren
Brownsville, Texas 78520
Telephone: 956.546.715
Telecopier: 956.544.0602

Attorneys-in-Charge for Plaintiffs

Eduardo Rodriguez

By SMS w/permission from Carlos Rainer

Eduardo Roberto Rodriguez
State Bar No. 17144000
Robert Patrick Rodriguez
State Bar No. 24002861
1201 East Van Buren
RODRIGUEZ, COLVIN & CHANEY, L.L.P.
Brownsville, Texas 78520 and/or
P.O. Box 2155
Brownsville, Texas 78522
Telephone: 956.542.7441
Telecopier: 956.541.2170

FULBRIGHT & JAWORSKI L.L.P.

Layne E. Kruse
State Bar No. 11742550
Richard N. Carrell
State Bar No. 03871000
Gerard G. Pecht
State Bar No. 15701800
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: 713-651-5151
Telecopier: 713-651-5246

Attorneys-in-Charge for Defendants

**CERTIFICATE OF SERVICE**

This pleading was served in compliance with Rule 5 of the Federal Rules of Civil Procedure on May 27, 2003.

Suzanne M. Schwarz

REPORTER'S RECORD
VOLUME 1 OF 1 VOLUME
TRIAL COURT CAUSE NO. GV202501

| | |
|---|---|
| THE STATE OF TEXAS and THE TEXAS COMMISSIONER OF INSURANCE, Plaintiffs, | ) IN THE DISTRICT COURT |
| VS. | ) TRAVIS COUNTY, TEXAS |
| FARMERS GROUP, INC., FARMERS UNDERWRITERS ASSOCIATION, FIRE UNDERWRITERS ASSOCIATION, FARMERS INSURANCE EXCHANGE and FIRE INSURANCE EXCHANGE, Defendants. | ) 261ST JUDICIAL DISTRICT |

---

TRIAL COURT CAUSE NO. GN203156

| | |
|---|---|
| FARMERS INSURANCE EXCHANGE and FIRE INSURANCE EXCHANGE, Plaintiffs, | ) IN THE DISTRICT COURT |
| VS. | ) TRAVIS COUNTY, TEXAS |
| JOSE MONTEMAYOR, INDIVIDUALLY and in his capacity as TEXAS COMMISSIONER OF INSURANCE, and TEXAS DEPARTMENT OF INSURANCE, Defendants. | ) 353RD JUDICIAL DISTRICT |

******************************************************

COURT'S RULING
FROM THE HEARING ON PRELIMINARY APPROVAL OF SETTLEMENT
MAY 22, 2003

******************************************************

COPY

EXHIBIT A

On the 22nd day of May, 2003 the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Scott H. Jenkins, Judge presiding, held in Austin, Travis County, Texas:

Proceedings reported by machine shorthand.

**APPEARANCES**

ATTORNEYS FOR THE STATE OF TEXAS and THE TEXAS COMMISSIONER OF INSURANCE:

DAVID MATTAX
SBOT NO. 13201600
CHRISTOPHER D. LIVINGSTON
SBOT NO. 24007559
JAMES R. WENZEL
SBOT NO. 21179370
JEFFREY BOYD
SBOT NO. 02772150
OFFICE OF THE ATTORNEY GENERAL - STATE OF TEXAS
P. O. Box 12548
Austin, TX 78711-2548
(512) 463-2018

ATTORNEYS FOR FARMERS GROUP, INC., FARMERS UNDERWRITERS ASSOCIATION, FIRE UNDERWRITERS ASSOCIATION, FARMERS INSURANCE EXCHANGE and FIRE INSURANCE EXCHANGE:

RICHARD N. CARRELL
SBOT NO. 03871000
LAYNE E. KRUSE
SBOT NO. 11742550
GERARD G. PECHT
SBOT NO. 15701800
FULBRIGHT & JAWORSKI
1301 McKinney Street
Suite 5100
Houston, Texas 77010-3031
(713) 651-5568

- AND -

SCOTT INCERTO
SBOT NO. 10388950
MARY SCHAERDEL DIETZ
SBOT NO. 03741500
MARCY GREER
SBOT NO. 08417650
FULBRIGHT & JAWORSKI
600 Congress Avenue
Suite 2400
Austin, TX 78701
(512) 474-5201

**APPEARANCES CONTINUED**

ATTORNEYS FOR THE INTERVENOR JAN LUBIN:

JOE K. LONGLEY
SBOT NO. 12542000
PHILIP K. MAXWELL
SBOT NO. 13254000
LONGLEY & MAXWELL
1609 Shoal Creek Boulevard
Suite 100
Austin, Texas 78701
(512) 476-2722

\- AND -

STEPHEN McCLEERY
SBOT NO. 13395500
3212 Bonnie Road
Austin, Texas 78703
(512) 482-9257

\- AND -

DANIEL M. DOWNEY
SBOT NO. 06085400
GALLAGHER, LEWIS, DOWNEY & KIM
700 Louisiana, 40th Floor
Houston, Texas 77002

ATTORNEY FOR INTERVENORS GERALD HOOKS AND LESLY HOOKS:

JOSEPH C. BLANKS
SBOT NO. 02456770
P.O. Box 999
Doucette, Texas 75942
(409) 837-9707

APPEARANCES CONTINUED

ATTORNEYS FOR THE INTERVENORS VILLANUEVA AND PALADINO:

DAVID H. BURROW
SBOT NO. 03468000
BURROW & PARROTT
3500 Chevron Tower
1301 McKinney
Houston, Texas 77010
(713) 222-6333

- AND -

DAVID W. JONES
SBOT NO. 00790980
BECK, REDDEN & SECREST
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700

- AND -

STEVEN L. CLACK
SBOT NO. 04257500
P.O. Drawer 290952
Kerrville, Texas 78029
(830) 895-0477

- AND -

R. MARTIN WEBER
SBOT NO. 00791895
DAVIS & DAVIS
5847 San Felipe, Suite 3275
Houston, Texas 77057
(713) 781-5200

COURT'S RULING

THE COURT: Well, you've made me think very hard. Professor Issacharoff -- I found the most enjoyable part of the entire proceeding sitting here listening to Professor Issacharoff. And both he and Professor Ratliff cannot be right, just as both of you cannot be right. It doesn't mean the arguments are not well thought out, thoroughly briefed, professionally argued, artfully argued. One of them has to be right. And in my view, Professor Issacharoff is right, in every jot and tittle, to use your phrase, of his analysis of the law. He was a -- he has a commanding comprehension of this area of the law, truly impressive, and I embrace fully his analysis.

I note with interest -- I read Professor Ratliff last night. And the reason I wanted to go ahead and read him was to make sure that I understood his report, make sure I wasn't missing something on the legal analysis. This could have been done in the form of, I guess, briefing by Professor Issacharoff and briefing by Professor Ratliff. It came in the form of testimony, which is fine. I kind of had some questions about that procedurally, but it's a fine way to do it. And in addition to giving me legal advice, they were also -- I presume Professor Ratliff would have been

asked to do this and was ready to do it -- looking at the propriety of approving the settlement.

But let me start with the legal analysis first, because I think it goes to Mr. Longley's objection that this case does not meet the burdens of Rule 42 or 21.21-18. Professor Issacharoff believes it does, and I do as well.

I think the State Attorney General can bring this action and can conclude this case. I don't know whether typicality is collapsed into adequacy or not. We can get into, you know, some fairly esoteric discussions of the language of the rules. But when I first read them months ago, I think I told you my first reaction to it, which was there is a very heavy presumption of adequacy in Section 17 of 21.21 giving authority to the Attorney General's Office that no other private individual has to bring this class action without, I believe, a class representative. I do not believe they are required, just as Professor Issacharoff says, to go out hunting for a class representative and then meet the typicality requirement with that particular individual. That's just not what the statutes meant. I don't think that was their intent. And I forget how he put it, but it's what got me through law school, what was the purpose of this. Because when

you try to figure out the purpose of it, usually you get it right. And it's clear to me that his explanation was correct. The purpose was to do what it was with all the Hart-Rodino legislation; that is, to enable and empower attorneys general around the nation to bring these parens patriae and now class action causes of action on behalf of the class.

I did note with interest all the points made by Deputy Attorney General Boyd. And I had great concern about these allegations of collusion and, in fact, I think, as you know, gave Mr. Longley and others a rough time about that, where's the evidence, where's the evidence. And at the end of the day, I think what we had was a good-faith suspicion and belief for whatever reasons -- and we can talk about people's motives until the end of the day, but everyone comes to these cases with their own background and experiences and suspicions and concerns, and I believe everyone in this case is a person of goodwill and good intent. And while we may occasionally go over the top because of our fervent and heartfelt beliefs in our advocacy, I believe at the time they were made they were believed and that there was suspicion given the timing of the settlement, et cetera. Much was written about this. It was certainly worthy of scrutiny, and this has been

thoroughly scrutinized by superb counsel.

But at the end of the day, Mr. Boyd is exactly right. There is not, in my view, a scintilla of evidence of collusion. And the Bloyed case, which Mr. Longley has encouraged me or urged me or implored me to follow from the beginning, requires that I make a determination under the Ball factors. In fact, he distills the Ball factors into essentially a two-prong view, whether the terms of the settlement are fair, adequate and reasonable, and whether the settlement was the product of honest negotiations or of collusion. And I believe I'm required to make that finding. And I find it was not the result of collusion. I have seen no evidence to indicate, not a shred, that it was the result of collusion.

The reason I wanted to read Professor Ratliff is, having read his report, it seems to me at the end of the day he makes a rather technical argument, as Mr. Boyd points out, that there's a conflict of interest, that the Attorney General cannot simultaneously concern himself or herself with the public interest, at the same time be advocating zealously for a particular class which is a subset of the public, and that that's just an inherent conflict that can't be reconciled and it makes this settlement

flawed from the beginning.

Professor Issacharoff says I've seen no cases to suggest that that's true, that that's a correct analysis. And if you adopted that analysis, that would completely eviscerate all of these laws because it's hard to conceive of a case where the Attorney General would not at least have some consideration of the public interest simultaneously with the Attorney General's representation of a class under Section 17 or any other Hart-Rodino type class action, which is, of course, as Mr. Longley points out, something that was drafted in order to empower the Attorney General to go and represent classes and the public interest in these matters.

Like Professor Issacharoff who, I must add, is no consistent cheerleader of the Texas Attorney General's Office, I am very impressed with the representation by the Attorney General's Office in this case. He is not bashful, as evidenced by his participation in the Hopwood case and his statements to this date criticizing the position taken by the Attorney General's Office in the Hopwood case -- he's not at all bashful about criticizing the Attorney General's Office when he believes that they're taking a position which he believes is not consistent with their duties or

consistent with the law. And, frankly, his reputation precedes him. He is known to be a fervent pro consumer advocate, a zealous guardian of consumer rights, civil liberties, a rather progressive fellow, and one who I've always been impressed with, at least from afar. I wish I could have taken a class from him, but I left law school long before he was there. He believes that the Attorney General's Office has done a superb job, a zealous job in pursuing this, and he does not believe that even if they had the public interest concern simultaneously with pursuing this class, that that creates a conflict, nor do I.

Having said that, even Professor Ratliff, though he postulates essentially at the end of his deposition hypothetically that were I to conclude, having heard all the evidence, that the Attorney General was concerned with the public interest and was, as Mr. Longley just said, considering its number one goal keeping Farmers in the state, if I concluded at the end of the evidence that that was the motivation of the Attorney General's Office, then and only then would Professor Ratliff believe there to be a fatal conflict. In fact, when push comes to shove, at least twice in the deposition, in his testimony, he says I'm not ultimately offering an opinion even on this technical conflict of

interest or conflict point of view; the judge will have to hear that evidence and determine whether the Attorney General's Office was primarily or largely or at all concerned with other groups of people separate and apart from or to the detriment of the zealous representation of the class.

And at the end of the day, even if you adopted Professor Ratliff's view on this conflict, which I don't, I don't find that that was a strong motivation of this particular Attorney General's Office at all. In fact, they seem to run counter to the fervent concerns of Senator Duncan that we've got to keep Farmers in the state.

I don't see any evidence that they were swayed by Senator Duncan's views, that they were intimidated by Senator Duncan's views or any views from the Governor's Office if they held views similar to Senator Duncan's.

So I think there was zealous representation. I also think that the Attorney General's Office had powers that no private lawyer has, along with TDI, and that there was considerable leverage and that this is very different from the Beneficial Finance case, as pointed out by Professor Issacharoff, or the concerns articulated by Justice Ginsberg in the

Amchem case where you have a potentially disarmed plaintiff with whom the defendant is settling, thereby creating, if not collusion, at least inadequacy of representation. I don't find any of that.

So I embrace Professor Issacharoff's view. I find that to the extent Rule 42 and 18 do apply in this case, it has been met fully. And it takes me to the fairness of the settlement, which is what I've grappled with mostly, frankly.

I don't have a choice about changing the settlement, as everyone knows, tweaking the settlement, sweetening the settlement, changing it in any way, shape or form, other than the language of the forms, the definition of the class, and that only by agreement, only if it's proposed to me. In other words, as one of my senior judges has pointed out to me on occasion when I get balled up about all the different possibilities in a case, this is binary decision making; it's yes or it's no; it's granted or it's denied, which is sometimes helpful to me to remember. And that's the case here. I either approve this and allow the Farmers policyholders to make their own decision about whether they want to accept this settlement or I deny them that opportunity by concluding that it is not within the range of reason, that the settlement is simply not within a range that I

could consider approving at the final settlement approval hearing, which is not where we're at now. And I believe this settlement is within the range of that which can be approved.

I take very seriously the arguments advanced by the intervenors, and that's why I wanted to read the cases that they have in their brief, the Tran case, the breach of fiduciary duty. I went back and read, which I already had, the Burrow vs. Arce case. I'm sure Mr. Burrow wishes it was Humphrey vs. Arce or -- but in any event --

I hope you don't mind me saying that.

I don't think that on the facts of this case -- I am not -- and I started to say this perhaps inartfully last night, and I'll maybe say it again inartfully. I am not very sanguine about the plaintiff's prospects in the private cause of action basis on the causes you're advancing. And I say that because I think there is a good FCRA defense that Farmers has that potentially, you know, eliminates the cause of action advanced. And at this stage, as to actual damages, as pointed out by Professor Issacharoff, under the FCRA, anyone damaged by incorrect information in their credit is going to be compensated 100 percent.

I wish as a trial lawyer I could have more

often gotten 100 percent recovery from my clients. And it is, as Professor Issacharoff points out, quite unusual. In fact, I think he said I've never seen cases settle on a ratio like this where you get this degree of recovery on the various causes of action being asserted, 100 percent recovery on the actual damages on the Fair Credit Reporting Act, 100 percent recovery on the discrimination claim; that is, the disparity between how different credit scores were used for different people. As I pointed out with Mr. Leaman, somewhat critically, I guess, people with bad credit seem to be treated much more poorly or poorer, if that's the way to say it, not as generously, as people with good credit. That was the disparity. There's much greater disparity between their credit score and the discount they got and people who had good credit. That's going to be fully reconciled now, 100 percent. And that's an extraordinary recovery.

The main argument I think advanced by the intervenors is that the 6.8 percent discount is inadequate in light of the fact that some of those folks who had good credit and won't get anything for the adjustment of credit now and won't get anything because, obviously if it was a mistake on their credit report, it certainly inured to their benefit because they were in the good credit class. There will be some people who

only get the 6.8 percent reduction backward and then going forward, which, of course, amplifies the discount going forward because it's based on the discount they already get going backward.

If I didn't approve this settlement, it would require the Attorney General's Office to continue litigating and see if they could get a higher percentage. I'm convinced, based on everything I've read, that it is extraordinarily unlikely any other settlement will be reached and, therefore, they're going forward on what I consider to be a fairly creative use of the law to get the relief they got. We begin, after all, with an agency that has no authority to regulate the rates of this company. That has been thoroughly briefed. And I think for both the private plaintiffs on the breach of fiduciary cause of action, as well as the State on all of their causes of action, nobody's on very thick ice, to wear that phrase out. In fact, it's fairly thin ice on most of these causes of action given the current state of the law and the likelihood that the Texas Supreme Court is going to advance that.

So where am I? I think in light of the facts, in light of the only evidence in the record before me -- and, after all, the intervenors have offered no evidence that the actuarial studies done by

the State or by Farmers are in any way wrong or that the margins of overcharging at the end of the day are in any way wrong. We have a possible fee forfeiture case which, according to the only record before me, may approach 11 percent. But, after all, in Burrow vs. Arce, that's an equitable remedy. And if you get some of the benefit of that fee, you don't necessarily forfeit the entire fee. So what do they get? What percentage of the 11 percent at the end of the day? I don't know. Is it much more than 6.8 percent? I don't know.

I mean, I can go on and on and on analyzing the details of the various causes of action. You've briefed it thoroughly and everyone's done a wonderful job. But suffice it to say that I think when you study all the law, the creative way in which the State -- and aggressive way, very aggressive way, in which the State has tried to pursue this cause of action to get an extraordinarily high percentage of recovery on the claims that were asserted and the creative way in which these very talented intervenor counsel are trying to use what law does exist to advance private causes of action and you weigh all that, I do not think either the private plaintiffs or the State bear much likelihood of getting a better result even with a trial after all the

appeals are done and the dust has settled. And given the amount of time that would take and the risk attendant with that pursuit, I think this is well within the range of the settlement that should be considered for approval, for final approval.

So I may have talked more than I needed to. Those are some of my thoughts. I haven't given you all of them or we'd be here all afternoon probably. And I want to thank you. I do need to have orders. I do want the intervenors to look at proposed changes. I, of course, take counsel at his word about Professor Issacharoff's representations and note, Mr. Carrell, that you have consulted with Professor Issacharoff on all these changes, and I know these are some that he actually came up with live on the stand. So I want all that circulated before I will consider signing anything, but I am prepared to sign an order preliminarily approving the settlement. Thank you all.

THE STATE OF TEXAS )

COUNTY OF TRAVIS )

I, Chavela V. Prince, Official Court Reporter in and for the 53rd District Court of Travis County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

WITNESS MY OFFICIAL HAND this the 22nd day of May, 2003.

CHAVELA V. PRINCE
Texas CSR 3064, RPR,CM-CRR
Expiration Date: 12/31/03
Official Court Reporter
53rd District Court
Travis County, Texas
P. O. Box 1748
Austin, TX 78767
(512) 854-9322

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **ALBERT PULLEN ET AL.,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **C. A. NO. B-02-206** |
| | § | |
| **FARMERS GROUP, INC., ET AL.,** | § | |
| **Defendants.** | § | |

**AMENDED SCHEDULING ORDER**

In accordance with Local Rule CV-16 (S.D. Tex.), the parties submitted proposed scheduling order deadlines. The Court enters the following ORDER:

In accordance with the foregoing, the following pretrial deadlines are established:

| | |
|---|---|
| October 3, 2003 | Parties will file an amended Rule 26f Conference Report with an amended proposed Scheduling Order, which will report on the status of the approval of the class action settlement in the State Attorney General Suit |
| October 10, 2003 | Plaintiffs' Response to Defendants' Motions to Dismiss |
| October _____, 2003 | Scheduling Conference |

Other deadlines will be reset after the amended report and new scheduling conference. This Scheduling Order shall not be modified, except by leave of Court upon a showing of good cause, and shall be binding on all parties.

Signed this ___ day of ________________, 2003.

______________________________
UNITED STATES DISTRICT JUDGE

30417085.4



AGREED:

Suzanne M. Schwarz
State Bar No. 17872300
LAW OFFICES OF SUZANNE SCHWARZ, P.C.
P.O. Box 532044
Harlingen, Texas 78553
Telephone: 956.440.0340
Telecopier: 956.440.8252
AND
Benigno "Trey" Martinez
State Bar No. 00797011
Federal I.D. No. 23945
MARTINEZ, BARRERA & MARTINEZ, L.L.P.
1201 E. Van Buren
Brownsville, Texas 78520
Telephone: 956.546.715
Telecopier: 956.544.0602
ATTORNEYS-IN-CHARGE FOR PLAINTIFFS

Eduardo Roberto Rodriguez By SMS w/ permission from Carlos Kader
State Bar No. 17144000
Robert Patrick Rodriguez
State Bar No. 24002861
1201 East Van Buren
RODRIGUEZ, COLVIN & CHANEY, L.L.P.
Brownsville, Texas 78520 and/or
P.O. Box 2155
Brownsville, Texas 78522
Telephone: 956.542.7441
Telecopier: 956.541.2170
AND
Layne E. Kruse
State Bar No. 11742550
FULBRIGHT & JAWORSKI L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: 713-651-5151
Telecopier: 713-651-5246
ATTORNEYS-IN-CHARGE FOR DEFENDANTS