

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of ~. . .
**FILED**

JUN 1 6 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| **ALBERT PULLEN ET AL.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| | § | |
| **V.** | § | **C.A. NO. B-02-206** |
| | § | |
| **FARMERS GROUP, INC., FARMERS** | § | |
| **UNDERWRITERS ASSOCIATION,** | § | |
| **FIRE     UNDERWRITERS** | § | |
| **ASSOCIATION, FARMERS** | § | |
| **INSURANCE   EXCHANGE,   FIRE** | § | |
| **INSURANCE   EXCHANGE,   AND** | § | |
| **JOSE GUTIERREZ,** | § | |
| | § | |
| **Defendants.** | § | |

**UNOPPOSED MOTION FOR CONTINUANCE ON PLAINTIFFS' RESPONSE DATE**
**FOR DEFENDANTS' MOTIONS TO DISMISS, OR ALTERNATIVELY,**
**FOR SUMMARY JUDGMENT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

    **COME NOW PLAINTIFFS Albert Pullen and Zonia Pullen, on behalf of themselves**

**and others similarly situated,** (hereinafter referred to as *"Plaintiffs"*) in the above-styled and

numbered cause, and files this their Unopposed Motion for Continuance on Response Date for

Defendants' Motions to Dismiss, or Alternatively, For Summary Judgment ("Motions to Dismiss")

In support of their Motion, Plaintiffs would respectfully show the Court the following:

**I.**

**BACKGROUND**

    Plaintiffs, Texas residents, filed a class action lawsuit in the 107th Judicial District Court,

Cameron County, Texas against the Defendant Farmers Group, Inc. and its affiliates, member exchanges, subordinates, d/b/a and Farmers Group related entities, including Farmers Underwriters Association, Fire Underwriters Association, Farmers Insurance Exchange, Fire Insurance Exchange, and Defendant Jose Gutierrez, as Plaintiffs' agent.

In the lawsuit, Plaintiffs, individually and on behalf of other Texas consumers similarly situated, alleged that, as part of the process of insuring their policyholders, Defendants Farmers and Defendant Gutierrez used the credit history of their policyholders as a significant factor in calculating premiums. Plaintiffs also allege, among other things, that the Defendants Farmers along with its agents used the credit information as part of a credit scoring system that was used as basis for determining premiums and the amount of coverage.

On October 25, 2002, this action was removed to this court by the Defendants. On March 17, 2003, a status conference was held in front of this Honorable Court. At that time, the Court ordered that the deadlines be reset until after the certification hearing in the lawsuit brought by the Texas Attorney General ("State Action") to be held in May 2003. The preliminary approval hearing was held on May 19, 2003.   At the conclusion of a three day hearing, the Court preliminarily certified the settlement class and preliminarily approved the proposed class settlement.  The final approval hearing on the class settlement has not yet been held. Until such hearing has been held, Plaintiffs are unable to respond to Defendant's Motion.

## II.

### PLAINTIFFS' MOTION FOR CONTINUANCE
### ON RESPONSE DATE TO DEFENDANTS' MOTION TO DISMISS

The Defendants in this case have filed Motions to Dismiss based on theories including that the State's class action settlement will have a preclusive effect on this litigation.

Plaintiffs are unable to respond fully at this time to such Motion because, while a hearing has been held in the State Action, there has been no final approval of the class settlement. In the Supplement to Joint Discovery/Case Management Plan Under Rule 26 (f) Federal Rules of Civil Procedure, filed on May 27, 2003, the Plaintiffs and Defendants requested that the Court reset the hearing on Defendants' Motions to Dismiss as well as other deadlines until after the final approval hearing. In such Plan, question 22, the Plaintiffs and Defendants stated and represented the following:

> In light of the Court's approval of the class action settlement, the parties have agreed to submit amended deadlines concerning the time for plaintiff to respond to defendants Farmers and Jose Gutierrez's Motions to Dismiss and for submission of an amended Scheduling Order following the conclusion of the final approval hearing on the class settlement in the Attorney General lawsuit, which will likely occur in September 2003.

*See* Supplement Joint Discovery / Case Management Plan Under Rule 26 (f) Federal Rules of Civil Procedure, a true and correct copy of which is attached here to as Exhibit "A."

As part of the Plan, the Plaintiffs and Defendants prepared and filed an Amended Scheduling Order, requesting that the deadline for Plaintiffs to respond to Defendants' Motions to Dismiss be reset to October 10, 2003. A copy of such Amended Scheduling Order is attached as Exhibit "B."

Thus, Plaintiffs request that the deadline for their response to Defendants' Motions to Dismiss be continued until October 10, 2003.

## III.

### CERTIFICATE OF CONFERENCE

On June 12, 2003, the attorney for the Defendants in the above-referenced matter was contacted regarding the Motion for Continuance, and he stated that the Defendants were not opposed

to the Motion.  This Motion is therefore presented as unopposed.

## IV.

## CONCLUSION

Since the fairness hearing in the State's Action has not been heard, the Plaintiffs request that the deadline to respond to Defendants' Motions be reset to October 10, 2003.


Respectfully submitted,

Suzanne M. Schwarz
State Bar No. 17872300
Federal I.D. No. 16557

**OF COUNSEL:**

**LAW OFFICES OF SUZANNE M. SCHWARZ, P.C.**
Suzanne M. Schwarz
State Bar No. 17872300
Federal I.D. No. 16557
P.O. Box 532044
Harlingen, Texas  78553
Tel: (956) 440-0340
Fax: (956) 440-8252
**ATTORNEYS IN CHARGE FOR PLAINTIFFS**

**MARTINEZ, BARRERA, & MARTINEZ, L.L.P.**
Benigno "Trey" Martinez
State Bar No. 00797011
1201 E. Van Buren
Brownsville, Texas 78520
Tel: (956) 546-7159
Fax: (956) 544-0602
**ATTORNEYS FOR PLAINTIFFS**

## *CERTIFICATE OF CONFERENCE*

I hereby certify that on June 12, 2003, Trey Martinez and I contacted Carlos Rainer, the attorney for the Defendants in the above-referenced matter, regarding this Motion for Continuance on Plaintiffs' Response Date for Defendants' Motion to Dismiss or Alternatively for Summary Judgment. He stated that the Defendants were not opposed to the Motion. This Motion is therefore presented to the Court as unopposed.

Suzanne M. Schwarz

## *CERTIFICATE OF SERVICE*

I hereby certify that a true and correct copy of the foregoing document has been forwarded to counsel of record by either facsimile, hand-delivery or certified mail, return receipt requested, on _____, as follows:

Eduardo Roberto Rodriguez, Esq.
Roberto Patrick Rodriguez, Esq.
RODRIGUEZ, COLVIN & CHANEY, L.L.P.
1201 East Van Buren
Brownsville, Texas    78520

Layne E. Kruse, Esq.
Richard N. Carrell, Esq.
Gerard G. Pecht, Esq.
Carlos Rainer, Esq.
FULBRIGHT & JAWORSKI L.L.P.
1301 McKinney, Suite 5100
Houston, Texas    77010

Suzanne M. Schwarz

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ALBERT PULLEN  ET AL.,                  §
        Plaintiffs,                      §
                            §
V.                                      §    C. A. NO. B-02-206
                            §
FARMERS GROUP, INC., ET AL.,            §
        Defendants.                      §

**SUPPLEMENT TO JOINT DISCOVERY/CASE MANAGEMENT PLAN
UNDER RULE 26(f) FEDERAL RULES OF CIVIL PROCEDURE**

Pursuant to the Court's October 25, 2002 Order Setting Conference, March 25, 2003

Scheduling Order, and Federal Rule of Civil Procedure 26, plaintiffs and defendants file this

their Supplement to their Joint Conference Report, as directed by the Court in light of the

Preliminary Approval Hearing for the Attorney General class action pending in Travis County,

Austin, Texas:

    3.     **Briefly describe what this case is about.**

*Plaintiffs' Statement:*

Plaintiffs assert that the defendants failed to properly disclose to Texas policyholders that

they used their credit history to increase premiums or give discounts and the right of

policyholders to contest their scores.  Plaintiffs further assert that the defendants improperly used

credit history to switch policyholders into higher, unregulated companies.  Plaintiffs have

requested that this matter be certified as a class action.

*Defendants' Statement:*

Defendants deny plaintiffs' allegations and do not believe that a class should be certified

or that this matter should be litigated.  As defendants explained at the Scheduling Conference

held before this Court on March 17, 2003 and in their Motion to Dismiss (Dkt. No. 16), the



FALCON•DALLAS, TX    **EXHIBIT**    "A"

issues raised by plaintiffs' suit have already been fully litigated and resolved in a class action suit brought by the Attorney General and Commissioner of Insurance on behalf of Texas policyholders against defendants, which was filed before this action.

The Attorney General and defendants entered into a class settlement agreement which has an estimated value of $117.5 million. The Court in Travis County Austin, Texas recently held a preliminary approval hearing on May 19, 2003, which concluded on May 22, 2003. The Court heard testimony from various witnesses, including representatives from the Texas Department of Insurance, including Commissioner Jose Montemayor and Karina Casari, former deputy Commissioner, and Jeff Body, Deputy Attorney General, Stephen Leaman, former Executive Vice-President for Farmers Group, Inc., Professor Samuel Issacharoff, a class action expert from Columbia Law School, formerly with the University of Texas School of Law, and David Appel, an actuary expert. The Court also received documentary evidence from the State and Farmers. Intervenors, representing other class members, were provided an opportunity to cross examine witnesses and offer evidence challenging the propriety and adequacy of the settlement. After a full hearing in which the Court considered all of the evidence presented, the Court preliminarily certified settlement classes and preliminarily approved the class settlement. *See* Settlement Approval Hearing Transcript, Attached as Exhibit A.

In light of the Court's approval of the class settlement in the Attorney General suit, defendants believe that this matter should be dismissed. In the alternative, defendants believe that the Court should, at a minimum, stay this action pending the final approval hearing, which will likely be held in September 2003.

> **20.    List pending motions that could be ruled on at the initial pretrial and scheduling conference.**

> *Plaintiffs' Statement:*

30417085.4                                          -2-

Plaintiffs' Motion for Leave to File Fourth Amended Complaint (Dkt. No. 5).

*Defendants' Statement:*

Defendants' Motion for Leave to File Sur-Reply in Support of Opposition to Plaintiffs'
Motion for Leave to File Fourth Amended Complaint (Dkt. No. 12).

Defendants' Motion to Dismiss, or Alternatively, for Judgment and Brief in Support (Dkt
No. 16).

Defendant Jose Gutierrez's Motion to Dismiss, or Alternatively, for Judgment and Brief
in Support (Dkt. No. 17).

22.    **Indicate other matters peculiar to this case, including discovery, that deserve
the special attention of the Court at the conference.**

In light of the Court's approval of the class action settlement, the parties have agreed to

submit amended deadlines concerning the time for plaintiff to respond to defendants Farmers and

Jose Gutierrez's Motions to Dismiss and for submission of an amended Scheduling Order

following the conclusion of the final approval hearing on the class settlement in the Attorney

General lawsuit, which will likely occur in September 2003. *See* Amended Scheduling Order

attached at Exhibit B.

30417085.4

Respectfully submitted,


Suzanne M. Schwarz
State Bar No. 17872300
LAW OFFICES OF SUZANNE SCHWARZ, P.C.
P.O. Box 532044
Harlingen, Texas 78553
Telephone:  956.440.0340
Telecopier:  956.440.8252

Benigno "Trey" Martinez
State Bar No. 00797011
Federal I.D. No. 23945
MARTINEZ, BARRERA & MARTINEZ, L.L.P.
1201 E. Van Buren
Brownsville, Texas 78520
Telephone:  956.546.715
Telecopier:  956.544.0602

Attorneys-in-Charge for Plaintiffs

_Eduardo Rodriguez_

Eduardo Roberto Rodriguez
State Bar No. 17144000
Robert Patrick Rodriguez
State Bar No. 24002861
1201 East Van Buren

*By DRD*
*w/ permission*
*from Carlos Reiser*

RODRIGUEZ, COLVIN & CHANEY, L.L.P.
Brownsville, Texas 78520  and/or
P.O. Box 2155
Brownsville, Texas 78522
Telephone: 956.542.7441
Telecopier: 956.541.2170

FULBRIGHT & JAWORSKI L.L.P.

Layne E. Kruse
State Bar No. 11742550
Richard N. Carrell
State Bar No. 03871000
Gerard G. Pecht
State Bar No. 15701800
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone:  713-651-5151
Telecopier:  713-651-5246

**Attorneys-in-Charge for Defendants**

30417085.4

-5-

## CERTIFICATE OF SERVICE

This pleading was served in compliance with Rule 5 of the Federal Rules of Civil Procedure on May 27, 2003.

Suzanne M. Schwarz

1

```
 1                    REPORTER'S RECORD
                     VOLUME 1 OF 1 VOLUME
 2            TRIAL COURT CAUSE NO. GV202501

 3   THE STATE OF TEXAS and  ) IN THE DISTRICT COURT
     THE TEXAS COMMISSIONER   )
 4   OF INSURANCE,            )
                  Plaintiffs, )
 5                            )
                              )
 6   VS.                      ) TRAVIS COUNTY, TEXAS
                              )
 7                            )
     FARMERS GROUP, INC.,     )
 8   FARMERS UNDERWRITERS     )
     ASSOCIATION, FIRE        )
 9   UNDERWRITERS ASSOCIATION,)
     FARMERS INSURANCE        )
10   EXCHANGE and FIRE        )
     INSURANCE EXCHANGE,      )
11            Defendants.     ) 261ST JUDICIAL DISTRICT

12   _____

13            TRIAL COURT CAUSE NO. GN203156

14   FARMERS INSURANCE        ) IN THE DISTRICT COURT
     EXCHANGE and FIRE        )
15   INSURANCE EXCHANGE,      )
                  Plaintiffs, )
16                            )
                              )
17   VS.                      ) TRAVIS COUNTY, TEXAS
                              )
18                            )
     JOSE MONTEMAYOR,         )
19   INDIVIDUALLY and in his  )
     capacity as TEXAS        )
20   COMMISSIONER OF          )
     INSURANCE, and TEXAS     )
21   DEPARTMENT OF INSURANCE, )
              Defendants.     ) 353RD JUDICIAL DISTRICT

22   ***********************************************************

23                      COURT'S RULING
24   FROM THE HEARING ON PRELIMINARY APPROVAL OF SETTLEMENT
                        MAY 22, 2003
25   ***********************************************************
```

COPY

EXHIBIT
A

2

1

2          On the 22nd day of May, 2003 the following

3    proceedings came on to be heard in the above-entitled

4    and numbered cause before the Honorable Scott H.

5    Jenkins, Judge presiding, held in Austin, Travis County,

6    Texas:

7          Proceedings reported by machine shorthand.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
 1                    APPEARANCES

 2
    ATTORNEYS FOR THE STATE OF TEXAS and THE TEXAS
 3  COMMISSIONER OF INSURANCE:

 4       DAVID MATTAX
         SBOT NO. 13201600
 5       CHRISTOPHER D. LIVINGSTON
         SBOT NO. 24007559
 6       JAMES R. WENZEL
         SBOT NO. 21179370
 7       JEFFREY BOYD
         SBOT NO. 02772150
 8       OFFICE OF THE ATTORNEY GENERAL - STATE OF TEXAS
         P. O. Box 12548
 9       Austin, TX  78711-2548
         (512) 463-2018
10

11  ATTORNEYS FOR FARMERS GROUP, INC., FARMERS UNDERWRITERS
    ASSOCIATION, FIRE UNDERWRITERS ASSOCIATION,
12  FARMERS INSURANCE EXCHANGE and FIRE INSURANCE EXCHANGE:

13       RICHARD N. CARRELL
         SBOT NO. 03871000
14       LAYNE E. KRUSE
         SBOT NO. 11742550
15       GERARD G. PECHT
         SBOT NO. 15701800
16       FULBRIGHT & JAWORSKI
         1301 McKinney Street
17       Suite 5100
         Houston, Texas 77010-3031
18       (713) 651-5568

19       - AND -

20       SCOTT INCERTO
         SBOT NO. 10388950
21       MARY SCHAERDEL DIETZ
         SBOT NO. 03741500
22       MARCY GREER
         SBOT NO. 08417650
23       FULBRIGHT & JAWORSKI
         600 Congress Avenue
24       Suite 2400
         Austin, TX  78701
25       (512) 474-5201
```

4

```
 1                    APPEARANCES CONTINUED

 2
     ATTORNEYS FOR THE INTERVENOR JAN LUBIN:
 3
         JOE K. LONGLEY
 4       SBOT NO. 12542000
         PHILIP K. MAXWELL
 5       SBOT NO. 13254000
         LONGLEY & MAXWELL
 6       1609 Shoal Creek Boulevard
         Suite 100
 7       Austin, Texas  78701
         (512) 476-2722
 8
         - AND -
 9
         STEPHEN McCLEERY
10       SBOT NO. 13395500
         3212 Bonnie Road
11       Austin, Texas  78703
         (512) 482-9257
12
         - AND -
13
         DANIEL M. DOWNEY
14       SBOT NO. 06085400
         GALLAGHER, LEWIS, DOWNEY & KIM
15       700 Louisiana, 40th Floor
         Houston, Texas  77002
16

17
     ATTORNEY FOR INTERVENORS GERALD HOOKS AND LESLY HOOKS:
18
         JOSEPH C. BLANKS
19       SBOT NO. 02456770
         P.O. Box 999
20       Doucette, Texas  75942
         (409) 837-9707
21

22

23

24

25
```

5

```
1                    APPEARANCES CONTINUED

2

3   ATTORNEYS FOR THE INTERVENORS VILLANUEVA AND PALADINO:

4        DAVID H. BURROW
         SBOT NO. 03468000
         BURROW & PARROTT
5        3500 Chevron Tower
         1301 McKinney
6        Houston, Texas   77010
         (713) 222-6333
7
         - AND -
8
         DAVID W. JONES
9        SBOT NO. 00790980
         BECK, REDDEN & SECREST
10       1221 McKinney Street, Suite 4500
         Houston, Texas   77010
11       (713) 951-3700

12       - AND -

13       STEVEN L. CLACK
         SBOT NO. 04257500
14       P.O. Drawer 290952
         Kerrville, Texas   78029
15       (830) 895-0477

16       - AND -

17       R. MARTIN WEBER
         SBOT NO. 00791895
18       DAVIS & DAVIS
         5847 San Felipe, Suite 3275
19       Houston, Texas   77057
         (713) 781-5200

20

21

22

23

24

25
```

6

1    <u>COURT'S RULING</u>

2         THE COURT:  Well, you've made me think

3    very hard.  Professor Issacharoff -- I found the most

4    enjoyable part of the entire proceeding sitting here

5    listening to Professor Issacharoff.  And both he and

6    Professor Ratliff cannot be right, just as both of you

7    cannot be right.  It doesn't mean the arguments are not

8    well thought out, thoroughly briefed, professionally

9    argued, artfully argued.  One of them has to be right.

10   And in my view, Professor Issacharoff is right, in every

11   jot and tittle, to use your phrase, of his analysis of

12   the law.  He was a -- he has a commanding comprehension

13   of this area of the law, truly impressive, and I embrace

14   fully his analysis.

15         I note with interest -- I read Professor

16   Ratliff last night.  And the reason I wanted to go ahead

17   and read him was to make sure that I understood his

18   report, make sure I wasn't missing something on the

19   legal analysis.  This could have been done in the form

20   of, I guess, briefing by Professor Issacharoff and

21   briefing by Professor Ratliff.  It came in the form of

22   testimony, which is fine.  I kind of had some questions

23   about that procedurally, but it's a fine way to do it.

24   And in addition to giving me legal advice, they were

25   also -- I presume Professor Ratliff would have been

7

1    asked to do this and was ready to do it -- looking at
2    the propriety of approving the settlement.
3              But let me start with the legal analysis
4    first, because I think it goes to Mr. Longley's
5    objection that this case does not meet the burdens of
6    Rule 42 or 21.21-18. Professor Issacharoff believes it
7    does, and I do as well.
8              I think the State Attorney General can
9    bring this action and can conclude this case. I don't
10   know whether typicality is collapsed into adequacy or
11   not. We can get into, you know, some fairly esoteric
12   discussions of the language of the rules. But when I
13   first read them months ago, I think I told you my first
14   reaction to it, which was there is a very heavy
15   presumption of adequacy in Section 17 of 21.21 giving
16   authority to the Attorney General's Office that no other
17   private individual has to bring this class action
18   without, I believe, a class representative. I do not
19   believe they are required, just as Professor Issacharoff
20   says, to go out hunting for a class representative and
21   then meet the typicality requirement with that
22   particular individual. That's just not what the
23   statutes meant. I don't think that was their intent.
24   And I forget how he put it, but it's what got me through
25   law school, what was the purpose of this. Because when

8

```
1  you try to figure out the purpose of it, usually you get
2  it right.  And it's clear to me that his explanation was
3  correct.  The purpose was to do what it was with all the
4  Hart-Rodino legislation; that is, to enable and empower
5  attorneys general around the nation to bring these
6  parens patriae and now class action causes of action on
7  behalf of the class.
8            I did note with interest all the points
9  made by Deputy Attorney General Boyd.  And I had great
10 concern about these allegations of collusion and, in
11 fact, I think, as you know, gave Mr. Longley and others
12 a rough time about that, where's the evidence, where's
13 the evidence.  And at the end of the day, I think what
14 we had was a good-faith suspicion and belief for
15 whatever reasons -- and we can talk about people's
16 motives until the end of the day, but everyone comes to
17 these cases with their own background and experiences
18 and suspicions and concerns, and I believe everyone in
19 this case is a person of goodwill and good intent.  And
20 while we may occasionally go over the top because of our
21 fervent and heartfelt beliefs in our advocacy, I believe
22 at the time they were made they were believed and that
23 there was suspicion given the timing of the settlement,
24 et cetera.  Much was written about this.  It was
25 certainly worthy of scrutiny, and this has been
```

9

1  thoroughly scrutinized by superb counsel.

2        But at the end of the day, Mr. Boyd is

3  exactly right.  There is not, in my view, a scintilla of

4  evidence of collusion.  And the Bloyed case, which

5  Mr. Longley has encouraged me or urged me or implored me

6  to follow from the beginning, requires that I make a

7  determination under the Ball factors.  In fact, he

8  distills the Ball factors into essentially a two-prong

9  view, whether the terms of the settlement are fair,

10 adequate and reasonable, and whether the settlement was

11 the product of honest negotiations or of collusion.  And

12 I believe I'm required to make that finding.  And I find

13 it was not the result of collusion.  I have seen no

14 evidence to indicate, not a shred, that it was the

15 result of collusion.

16        The reason I wanted to read Professor

17 Ratliff is, having read his report, it seems to me at

18 the end of the day he makes a rather technical argument,

19 as Mr. Boyd points out, that there's a conflict of

20 interest, that the Attorney General cannot

21 simultaneously concern himself or herself with the

22 public interest, at the same time be advocating

23 zealously for a particular class which is a subset of

24 the public, and that that's just an inherent conflict

25 that can't be reconciled and it makes this settlement

1    flawed from the beginning.

2            Professor Issacharoff says I've seen no

3    cases to suggest that that's true, that that's a correct

4    analysis.  And if you adopted that analysis, that would

5    completely eviscerate all of these laws because it's

6    hard to conceive of a case where the Attorney General

7    would not at least have some consideration of the public

8    interest simultaneously with the Attorney General's

9    representation of a class under Section 17 or any other

10   Hart-Rodino type class action, which is, of course, as

11   Mr. Longley points out, something that was drafted in

12   order to empower the Attorney General to go and

13   represent classes and the public interest in these

14   matters.

15           Like Professor Issacharoff who, I must

16   add, is no consistent cheerleader of the Texas Attorney

17   General's Office, I am very impressed with the

18   representation by the Attorney General's Office in this

19   case.  He is not bashful, as evidenced by his

20   participation in the Hopwood case and his statements to

21   this date criticizing the position taken by the Attorney

22   General's Office in the Hopwood case -- he's not at all

23   bashful about criticizing the Attorney General's Office

24   when he believes that they're taking a position which he

25   believes is not consistent with their duties or

11

1  consistent with the law.  And, frankly, his reputation

2  precedes him.  He is known to be a fervent pro consumer

3  advocate, a zealous guardian of consumer rights, civil

4  liberties, a rather progressive fellow, and one who I've

5  always been impressed with, at least from afar.  I wish

6  I could have taken a class from him, but I left

7  law school long before he was there.  He believes that

8  the Attorney General's Office has done a superb job, a

9  zealous job in pursuing this, and he does not believe

10  that even if they had the public interest concern

11  simultaneously with pursuing this class, that that

12  creates a conflict, nor do I.

13             Having said that, even Professor Ratliff,

14  though he postulates essentially at the end of his

15  deposition hypothetically that were I to conclude,

16  having heard all the evidence, that the Attorney General

17  was concerned with the public interest and was, as

18  Mr. Longley just said, considering its number one goal

19  keeping Farmers in the state, if I concluded at the end

20  of the evidence that that was the motivation of the

21  Attorney General's Office, then and only then would

22  Professor Ratliff believe there to be a fatal conflict.

23  In fact, when push comes to shove, at least twice in the

24  deposition, in his testimony, he says I'm not ultimately

25  offering an opinion even on this technical conflict of

1  interest or conflict point of view; the judge will have

2  to hear that evidence and determine whether the Attorney

3  General's Office was primarily or largely or at all

4  concerned with other groups of people separate and apart

5  from or to the detriment of the zealous representation

6  of the class.

7            And at the end of the day, even if you

8  adopted Professor Ratliff's view on this conflict, which

9  I don't, I don't find that that was a strong motivation

10  of this particular Attorney General's Office at all.  In

11  fact, they seem to run counter to the fervent concerns

12  of Senator Duncan that we've got to keep Farmers in the

13  state.

14            I don't see any evidence that they were

15  swayed by Senator Duncan's views, that they were

16  intimidated by Senator Duncan's views or any views from

17  the Governor's Office if they held views similar to

18  Senator Duncan's.

19            So I think there was zealous

20  representation.  I also think that the Attorney

21  General's Office had powers that no private lawyer has,

22  along with TDI, and that there was considerable leverage

23  and that this is very different from the Beneficial

24  Finance case, as pointed out by Professor Issacharoff,

25  or the concerns articulated by Justice Ginsberg in the

1   Amchem case where you have a potentially disarmed

2   plaintiff with whom the defendant is settling, thereby

3   creating, if not collusion, at least inadequacy of

4   representation.  I don't find any of that.

5           So I embrace Professor Issacharoff's view.

6   I find that to the extent Rule 42 and 18 do apply in

7   this case, it has been met fully.  And it takes me to

8   the fairness of the settlement, which is what I've

9   grappled with mostly, frankly.

10          I don't have a choice about changing the

11  settlement, as everyone knows, tweaking the settlement,

12  sweetening the settlement, changing it in any way, shape

13  or form, other than the language of the forms, the

14  definition of the class, and that only by agreement,

15  only if it's proposed to me.  In other words, as one of

16  my senior judges has pointed out to me on occasion when

17  I get balled up about all the different possibilities in

18  a case, this is binary decision making; it's yes or it's

19  no; it's granted or it's denied, which is sometimes

20  helpful to me to remember.  And that's the case here.  I

21  either approve this and allow the Farmers policyholders

22  to make their own decision about whether they want to

23  accept this settlement or I deny them that opportunity

24  by concluding that it is not within the range of reason,

25  that the settlement is simply not within a range that I

14

1  could consider approving at the final settlement

2  approval hearing, which is not where we're at now.  And

3  I believe this settlement is within the range of that

4  which can be approved.

5            I take very seriously the arguments

6  advanced by the intervenors, and that's why I wanted to

7  read the cases that they have in their brief, the Tran

8  case, the breach of fiduciary duty.  I went back and

9  read, which I already had, the Burrow vs. Arce case.

10 I'm sure Mr. Burrow wishes it was Humphrey vs. Arce

11 or -- but in any event --

12           I hope you don't mind me saying that.

13           I don't think that on the facts of this

14 case -- I am not -- and I started to say this perhaps

15 inartfully last night, and I'll maybe say it again

16 inartfully.  I am not very sanguine about the

17 plaintiff's prospects in the private cause of action

18 basis on the causes you're advancing.  And I say that

19 because I think there is a good FCRA defense that

20 Farmers has that potentially, you know, eliminates the

21 cause of action advanced.  And at this stage, as to

22 actual damages, as pointed out by Professor Issacharoff,

23 under the FCRA, anyone damaged by incorrect information

24 in their credit is going to be compensated 100 percent.

25           I wish as a trial lawyer I could have more

1  often gotten 100 percent recovery from my clients.  And

2  it is, as Professor Issacharoff points out, quite

3  unusual.  In fact, I think he said I've never seen cases

4  settle on a ratio like this where you get this degree of

5  recovery on the various causes of action being asserted,

6  100 percent recovery on the actual damages on the Fair

7  Credit Reporting Act, 100 percent recovery on the

8  discrimination claim; that is, the disparity between how

9  different credit scores were used for different people.

10 As I pointed out with Mr. Leaman, somewhat critically, I

11 guess, people with bad credit seem to be treated much

12 more poorly or poorer, if that's the way to say it, not

13 as generously, as people with good credit.  That was the

14 disparity.  There's much greater disparity between their

15 credit score and the discount they got and people who

16 had good credit.  That's going to be fully reconciled

17 now, 100 percent.  And that's an extraordinary recovery.

18          The main argument I think advanced by the

19 intervenors is that the 6.8 percent discount is

20 inadequate in light of the fact that some of those folks

21 who had good credit and won't get anything for the

22 adjustment of credit now and won't get anything because,

23 obviously if it was a mistake on their credit report, it

24 certainly inured to their benefit because they were in

25 the good credit class.  There will be some people who

16

1  only get the 6.8 percent reduction backward and then

2  going forward, which, of course, amplifies the discount

3  going forward because it's based on the discount they

4  already get going backward.

5         If I didn't approve this settlement, it

6  would require the Attorney General's Office to continue

7  litigating and see if they could get a higher

8  percentage. I'm convinced, based on everything I've

9  read, that it is extraordinarily unlikely any other

10  settlement will be reached and, therefore, they're going

11  forward on what I consider to be a fairly creative use

12  of the law to get the relief they got. We begin, after

13  all, with an agency that has no authority to regulate

14  the rates of this company. That has been thoroughly

15  briefed. And I think for both the private plaintiffs on

16  the breach of fiduciary cause of action, as well as the

17  State on all of their causes of action, nobody's on very

18  thick ice, to wear that phrase out. In fact, it's

19  fairly thin ice on most of these causes of action given

20  the current state of the law and the likelihood that the

21  Texas Supreme Court is going to advance that.

22         So where am I? I think in light of the

23  facts, in light of the only evidence in the record

24  before me -- and, after all, the intervenors have

25  offered no evidence that the actuarial studies done by

1    the State or by Farmers are in any way wrong or that the

2    margins of overcharging at the end of the day are in

3    any way wrong.  We have a possible fee forfeiture case

4    which, according to the only record before me, may

5    approach 11 percent.  But, after all, in Burrow vs.

6    Arce, that's an equitable remedy.  And if you get some

7    of the benefit of that fee, you don't necessarily

8    forfeit the entire fee.  So what do they get?  What

9    percentage of the 11 percent at the end of the day?  I

10   don't know.  Is it much more than 6.8 percent?  I don't

11   know.

12              I mean, I can go on and on and on

13   analyzing the details of the various causes of action.

14   You've briefed it thoroughly and everyone's done a

15   wonderful job.  But suffice it to say that I think when

16   you study all the law, the creative way in which the

17   State -- and aggressive way, very aggressive way, in

18   which the State has tried to pursue this cause of action

19   to get an extraordinarily high percentage of recovery on

20   the claims that were asserted and the creative way in

21   which these very talented intervenor counsel are trying

22   to use what law does exist to advance private causes of

23   action and you weigh all that, I do not think either the

24   private plaintiffs or the State bear much likelihood of

25   getting a better result even with a trial after all the

18

```
 1    appeals are done and the dust has settled.  And given
 2    the amount of time that would take and the risk
 3    attendant with that pursuit, I think this is well within
 4    the range of the settlement that should be considered
 5    for approval, for final approval.
 6                   So I may have talked more than I needed
 7    to.  Those are some of my thoughts.  I haven't given you
 8    all of them or we'd be here all afternoon probably.  And
 9    I want to thank you.  I do need to have orders.  I do
10    want the intervenors to look at proposed changes.  I, of
11    course, take counsel at his word about Professor
12    Issacharoff's representations and note, Mr. Carrell,
13    that you have consulted with Professor Issacharoff on
14    all these changes, and I know these are some that he
15    actually came up with live on the stand.  So I want all
16    that circulated before I will consider signing anything,
17    but I am prepared to sign an order preliminarily
18    approving the settlement.  Thank you all.
19
20
21
22
23
24
25
```

19

1 THE STATE OF TEXAS          )

2 COUNTY OF TRAVIS            )

3       I, Chavela V. Prince, Official Court Reporter in

4 and for the 53rd District Court of Travis County, State

5 of Texas, do hereby certify that the above and foregoing

6 contains a true and correct transcription of all

7 portions of evidence and other proceedings requested in

8 writing by counsel for the parties to be included in

9 this volume of the Reporter's Record, in the

10 above-styled and numbered cause, all of which occurred

11 in open court or in chambers and were reported by me.

12       I further certify that this Reporter's Record of

13 the proceedings truly and correctly reflects the

14 exhibits, if any, admitted by the respective parties.

15       WITNESS MY OFFICIAL HAND this the 22nd day of May,

16 2003.

17

18

19                         CHAVELA V. PRINCE
                          Texas CSR 3064, RPR,CM-CRR
20                        Expiration Date:  12/31/03
                          Official Court Reporter
21                        53rd District Court
                          Travis County, Texas
22                        P. O. Box 1748
                          Austin, TX  78767
23                        (512) 854-9322

24

25

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ALBERT PULLEN  ET AL., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | C. A. NO. B-02-206 |
| | § | |
| FARMERS GROUP, INC., ET AL., | § | |
| Defendants. | § | |

## AMENDED SCHEDULING ORDER

In accordance with Local Rule CV-16 (S.D. Tex.), the parties submitted proposed scheduling order deadlines.  The Court enters the following ORDER:

In accordance with the foregoing, the following pretrial deadlines are established:

October 3, 2003        Parties will file an amended Rule 26f Conference Report with an amended proposed Scheduling Order, which will report on the status of the approval of the class action settlement in the State Attorney General Suit

October 10, 2003       Plaintiffs' Response to Defendants' Motions to Dismiss

October _____, 2003  Scheduling Conference

Other deadlines will be reset after the amended report and new scheduling conference.

This Scheduling Order shall not be modified, except by leave of Court upon a showing of good cause, and shall be binding on all parties.

Signed this ___ day of _____, 2003.

_____
UNITED STATES DISTRICT JUDGE

30417085.4

AGREED:


_Suzanne Schwarz_ (signature)
Suzanne M. Schwarz
State Bar No. 17872300
LAW OFFICES OF SUZANNE SCHWARZ, P.C.
P.O. Box 532044
Harlingen, Texas 78553
Telephone: 956.440.0340
Telecopier: 956.440.8252
AND
Benigno "Trey" Martinez
State Bar No. 00797011
Federal I.D. No. 23945
MARTINEZ, BARRERA & MARTINEZ, L.L.P.
1201 E. Van Buren
Brownsville, Texas 78520
Telephone: 956.546.715
Telecopier: 956.544.0602
ATTORNEYS-IN-CHARGE FOR PLAINTIFFS


_Eduardo Rodriguez_ (signature)    By-SMS
Eduardo Roberto Rodriguez         W permission
State Bar No. 17144000            from Candelario
Robert Patrick Rodriguez
State Bar No. 24002861
1201 East Van Buren
RODRIGUEZ, COLVIN & CHANEY, L.L.P.
Brownsville, Texas 78520  and/or
P.O. Box 2155
Brownsville, Texas 78522
Telephone: 956.542.7441
Telecopier: 956.541.2170
AND
Layne E. Kruse
State Bar No. 11742550
FULBRIGHT & JAWORSKI L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: 713-651-5151
Telecopier: 713-651-5246
ATTORNEYS-IN-CHARGE FOR DEFENDANTS

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ALBERT PULLEN  ET AL.,          §
         Plaintiffs,             §
                                 §
v.                               §         C. A. NO. B-02-206
                                 §
FARMERS GROUP, INC., ET AL.,     §
         Defendants.             §

## AMENDED SCHEDULING ORDER

In accordance with Local Rule CV-16 (S.D. Tex.), the parties submitted proposed scheduling order deadlines. The Court enters the following ORDER:

In accordance with the foregoing, the following pretrial deadlines are established:

October 3, 2003      Parties will file an amended Rule 26f Conference Report with an amended proposed Scheduling Order, which will report on the status of the approval of the class action settlement in the State Attorney General Suit

October 10, 2003     Plaintiffs' Response to Defendants' Motions to Dismiss

October _____, 2003  Scheduling Conference

Other deadlines will be reset after the amended report and new scheduling conference.

This Scheduling Order shall not be modified, except by leave of Court upon a showing of good cause, and shall be binding on all parties.

Signed this ___ day of _____, 2003.

_____
UNITED STATES DISTRICT JUDGE

30417085.4



EXHIBIT
"B"
FALCON DALLAS, TX

AGREED:


*[signature]*
Suzanne M. Schwarz
State Bar No. 17872300
LAW OFFICES OF SUZANNE SCHWARZ, P.C.
P.O. Box 532044
Harlingen, Texas 78553
Telephone: 956.440.0340
Telecopier: 956.440.8252
AND
Benigno "Trey" Martinez
State Bar No. 00797011
Federal I.D. No. 23945
MARTINEZ, BARRERA & MARTINEZ, L.L.P.
1201 E. Van Buren
Brownsville, Texas 78520
Telephone: 956.546.715
Telecopier: 956.544.0602
ATTORNEYS-IN-CHARGE FOR PLAINTIFFS


*[signature]*
Eduardo Roberto Rodriguez  *By BM)*
State Bar No. 17144000       *W permission*
Robert Patrick Rodriguez     *upon La nos later*
State Bar No. 24002861
1201 East Van Buren
RODRIGUEZ, COLVIN & CHANEY, L.L.P.
Brownsville, Texas 78520  and/or
P.O. Box 2155
Brownsville, Texas 78522
Telephone: 956.542.7441
Telecopier: 956.541.2170
AND
Layne E. Kruse
State Bar No. 11742550
FULBRIGHT & JAWORSKI L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: 713-651-5151
Telecopier: 713-651-5246
ATTORNEYS-IN-CHARGE FOR DEFENDANTS


30417085.4                                    -2-

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ALBERT PULLEN  ET AL., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | C. A. NO. B-02-206 |
| | § | |
| FARMERS GROUP, INC., ET AL., | § | |
| Defendants. | § | |

### AMENDED SCHEDULING ORDER

In accordance with Local Rule CV-16 (S.D. Tex.), the parties submitted proposed scheduling order deadlines.  The Court enters the following ORDER:

In accordance with the foregoing, the following pretrial deadlines are established:

October 3, 2003          Parties will file an amended Rule 26f Conference Report with an amended proposed Scheduling Order, which will report on the status of the approval of the class action settlement in the State Attorney General Suit

October 10, 2003         Plaintiffs' Response to Defendants' Motions to Dismiss

October _____, 2003  Scheduling Conference

Other deadlines will be reset after the amended report and new scheduling conference.

This Scheduling Order shall not be modified, except by leave of Court upon a showing of good cause, and shall be binding on all parties.

Signed this ___ day of _____, 2003.

_____
UNITED STATES DISTRICT JUDGE

30417085.4



EXHIBIT
"B"

AGREED:


_Suzanne M. Schwarz (signature)_
Suzanne M. Schwarz
State Bar No. 17872300
LAW OFFICES OF SUZANNE SCHWARZ, P.C.
P.O. Box 532044
Harlingen, Texas 78553
Telephone:  956.440.0340
Telecopier:  956.440.8252
AND
Benigno "Trey" Martinez
State Bar No. 00797011
Federal I.D. No. 23945
MARTINEZ, BARRERA & MARTINEZ, L.L.P.
1201 E. Van Buren
Brownsville, Texas 78520
Telephone:  956.546.715
Telecopier:  956.544.0602
ATTORNEYS-IN-CHARGE FOR PLAINTIFFS


_Eduardo Rodriguez (signature)_
Eduardo Roberto Rodriguez    _By BM)_
State Bar No. 17144000    _w/ permission_
Robert Patrick Rodriguez    _upon Dallas later_
State Bar No. 24002861
1201 East Van Buren
RODRIGUEZ, COLVIN & CHANEY, L.L.P.
Brownsville, Texas 78520  and/or
P.O. Box 2155
Brownsville, Texas 78522
Telephone: 956.542.7441
Telecopier: 956.541.2170
AND
Layne E. Kruse
State Bar No. 11742550
FULBRIGHT & JAWORSKI L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone:  713-651-5151
Telecopier:  713-651-5246
ATTORNEYS-IN-CHARGE FOR DEFENDANTS

30417085.4                                -2-